## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| NATALIA CEBOLLERO-BERTRAN | ) CIVIL NO. 3:19-cv-1412(CCC) |
| | ) |
| | ) |
| Plaintiff, | ) VIOLATIONS OF CLEAN WATER |
| | ) NEGLIGENCE; RIPARIAN RIGHTS |
| v. | ) |
| | ) |
| | ) JURY TRIAL DEMANDED |
| PUERTO RICO AQUEDUCT AND SEWER AUTHORITY, | ) |
| | ) |
| Defendant | ) |
| | ) |
| | ) |

### DEFENDANT's MOTION TO DISMISS

NOW COMES the defendant Puerto Rico Aqueduct and Sewer Authority ("PRASA") through the undersigned attorney pursuant to Rules 12(b) (1) and 12(b) (6) of the Federal Rules of Civil Procedure and very respectfully pleads, prays and requests:

### I.

### INTRODUCTION

Natalia Cebollero-Bertran ("Plaintiff") filed a Complaint against PRASA pursuant to the citizen suit provision of the Federal Water Pollution Control Act ("Clean Water Act" or "CWA"), 33 U.S.C. § 1365(a) (1)[1].

---

[1] 33 U.S.C. § 1365(a) Authorization; jurisdiction Except as provided in subsection (b) of this section, any citizen may commence a civil action on his own behalf—(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality of agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation...

In the Complaint, the Plaintiff alleges overflows in two (2) separate locations of the wastewater collection system[2] associated with PRASA's Puerto Nuevo Regional Wastewater Treatment Plant ("Puerto Nuevo RWWTP").  One location is at a street in *Villa Nevarez* and the second in the *Centro Médico* area.  Specifically, Plaintiff alleges that when it rains heavily, rainwater infiltrates the sewage system and manholes overflow into an adjacent rainwater drain[3] that convey the commingled sewage and rainwater into the Buena Vista Creek, a tributary of the Puerto Nuevo River, at the same location identified by GPS coordinate near Plaintiff's residence.

PRASA hereby respectfully submits to this Honorable Court that the Complaint should be dismissed because: (1) the complaint is barred by the approved Consent Decree and judgment entered in *U.S. District Court, District Court of Puerto Rico (San Juan), Civil Docket for Case #3:15-cv-02283-JAC, #10 and #11, respectively),* and; (2) Plaintiff failed to meet the jurisdictional pre-requirements prescribed at 33 USC § 1365 (b)(1)(A) and 40 CFR Part 135.3 by not giving adequate notice to PRASA.

II.

## APPLICABLE LAW AND ARGUMENT

**Standard of Evaluation of a motion to dismiss:**

Pursuant to Rule 12(b) (1) of the Federal Rules of Civil Procedure ("FRCP"), a litigant's claims must be dismissed if the court lacks jurisdiction over the subject matter of

---

[2] For purpose of this Motion to Dismiss, the term wastewater collection system and sewer system are used interchangeably and mean the same.

[3] PRASA does not own or operate Municipal Separate Stormwater Sewer Systems (MS4).  A MS4 is a conveyance or system of conveyance owned or operated by a state, city, town, county, village, or other public entity designed to collect or convey stormwater by way of drains, pipes, ditches, not a combined sewer or part of a POTW, and discharges to waters of the United States.

the claim. *Barrios-Velazquez v. AEELA*, 84 F.3d 487, 489-90 (1st Cir. 1996). Fed. R. Civ. P. 12(b) (1) is the proper vehicle for challenging a court's subject matter jurisdiction. *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 362-63 (1st Cir. 2001). When faced with a jurisdictional challenge, the court must "give weight to well-pleaded factual averments in the operative pleadings … and indulge every reasonable inference in the pleader's favor." *Aguilar v. U.S. Immigration and Customs Enforcement Div. of Dept. of Homeland Sec.*, 510 F.3d 1, 8 (1st Cir. 2007).

Under FRCP 12(b) (6), a court must dismiss a Complaint if it fails to state a claim for which relief may be granted. In reviewing a challenge under both Rules 12(b)(1) and 12(b)(6), the court views the well-pleaded facts in the light most favorable to plaintiff and draws all reasonable inferences in Plaintiff's favor. *IOM Corp. v. Brown Forman Corp.*, 627 F.3d 440, 443 (1st Cir. 2010). However, "the tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must allege a plausible entitlement to relief in order to survive dismissal. *Rodríguez Ortíz v. Margo Caribe, Inc.*, *490 F.3d 92, 95 (1st Cir.2007)* (citing *Bell Atl. Corp. v. Twombly, 550 U.S. at 544).*

Both FRCP 12(b) (1) and FRCP 12(b) (6) mandate dismissal in this case.

**CWA Citizen Suit Provision**

The CWA provides for enforcement by EPA, state agencies and allows citizens to file "citizen suits" to enforce the CWA. 33 U.S.C. § 1319 and § 1365. Citizen suits are authorized "against any person . . . who is alleged to be in violation of (A) an effluent

standard or limitation under [the CWA] or (B) an order issued by the [EPA] or a State with respect to such a standard or limitation." 33 U.S.C. § 1365(a) (1). However, the authority given comes with prescribed limitations set forth under Section 1365(b) that preclude a citizen suit. These limitations are:

> **"(b) Notice** No action may be commenced —
>
> (1) under subsection (a) (1) of this section —
>
> (A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the [EPA], (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or
>
> (B) if the [EPA] or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.
>
> * * * *
>
> Notice under this subsection shall be given in such manner as the [EPA] shall prescribe by regulation."  33 U.S.C. § 1365(b)

**Proper Notice**

The content of the notice is prescribed by regulation promulgated by the EPA. 33 U.S.C. § 1365 (b).  *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 950 (9th Cir. 2002).  The EPA prescribes at 40 C.F.R. Part 135.3(a) that notice provide "sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a

violation, the person or persons responsible for the alleged violation, the location of the alleged violation, [and] the date or dates of such violation."

In the instant case, the Plaintiff's Notice did not provide sufficient information of the activity alleged to constitute a violation to permit PRASA the opportunity to correct or a reasonable basis upon which to take action regarding the *Centro Medico* area nor dates of such activity that constitutes a violation.  No information was given traceable to PRASA that the alleged sewage from the hospitals and mental hospitals of the *Centro Médico* area during heavy rains are attributable to or result from PRASA's actions or installations.  *See Ex. No. 1 of the Complaint - 60 Day Notice Letter, page 4.*

In doing so, the Notice does not give PRASA a clear understanding of the alleged violation to address it and bring itself into compliance.  Notice serves the purpose to give violator an opportunity to bring itself into complete compliance with the CWA and thus render unnecessary a citizen suit.  *Laidlaw*, 528 U.S 167, 175 (2000). Furthermore, the notice must be sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will know what corrective actions will avert the lawsuit.  *See Atl. States Legal Found, Inc. v. Stroh Dir Casting Co.*, 116 F.3d 814, 819 (7th Cir. 1997).

Plaintiffs shortcoming in fulfilling the EPA regulatory mandatory prescribed notice content requirements is a jurisdictional defect and clearly ground for dismissal under 33 U.S.C § 1365 of the *Centro Médico* area grievance of the Complaint.

**Diligent Prosecution Bar**

The CWA gives primary enforcement authority to the EPA and state enforcement agencies.  Under 33 U.S.C. § 1365 (g)(6)(A)(i), citizen suits must be dismissed for lack of

subject matter jurisdiction when EPA has commenced and is diligently prosecuting a civil action in a court against an alleged violator.  Pursuant to 33 U.S.C. § 1365(b)(1)(B) of the CWA, a citizen cannot bring a private action to enjoin violations of the CWA "if the [EPA] or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order."  "Section 1365(b) (1) (B) does not require government prosecution to be far-reaching or zealous. It requires only diligence."   *Karr v. Hefner*, 475 F.3d 1192, 1197 (10th) Cir 2007).

*EPA filed on September 15, 2015 a complaint against PRASA* in case 3:15-cv-02283-JAG in the U.S. District Court for the District of Puerto Rico (San Juan) concurrently with the lodging of a Consent Decree between United States of America and PRASA ("EPA Complaint").  *See U.S. District Court, District Court of Puerto Rico (San Juan), Civil Docket for Case #3:15-cv-02283-JAC, #1.* The EPA Complaint sought injunctive relief and civil penalties for CWA violations at some of PRASA's wastewater treatment plants ("WWTPs"), sludge treatment systems ("STS") at water treatment plants ("WTPs") and WWTP pump stations.  Specifically, the Complaint alleged effluent limit violations at certain WTPs and WWTPs, overflows from certain WWTP pump stations and the wastewater collection system of the Puerto Nuevo Regional Wastewater Treatment Plant ("Puerto Nuevo RWWTP"), and violation of the condition in National Pollution Discharge Elimination System permits to properly operate and maintain the WWTPs.

As for violations of the nature alleged by Plaintiff in the Compliant, EPA Complaint also alleged that EPA inspectors conducted numerous inspections of portions of the wastewater collection system of the Puerto Nuevo RWWTP.  The EPA inspectors allegedly found examples of improper operation and maintenance in the Puerto Nuevo RWWTP wastewater collection system, as well as unauthorized discharges of pollutants from manholes into waters of the United States, stormwater collection systems, streets, sidewalks, and buildings. Some of the EPA inspections were alleged to be in response to citizen complaints.  *See Paragraphs 39-64 of the EPA Complaint.*

Additionally, alleged was that PRASA self-reported many unauthorized discharges to waters of the United States from its Puerto Nuevo RWWTP collection system from 2010-2014 and failed to report others in violation of the CWA and its NPDES permit. *See Paragraph 81 of the EPA Complaint.*

On October 8, 2015, a Notice of the Consent Decree between EPA and PRASA was published in the Federal Register (80 Fed. Reg. 60, 931), announcing that a proposed Consent Decree had been lodged September 15, 2015 with the United States District Court for the District of Puerto Rico and that the United States Department of Justice (DOJ) would be accepting public comment on the Consent Decree for the next 30 days.  See 80 Fed. Reg. 60,931 (October 8, 2015).  The comment period ended and the United States received four sets of comments: three from citizens and one from a non-governmental organization (collectively Commenters) regarding the proposed Consent Decree.  The Commenters did not oppose entry of the Consent Decree, but did raise

questions about certain provisions. No comments raised concerned the locations identified in the Notice and Complaint.

After carefully considering the comments and concluding that the Consent Decree was fair, reasonable and consistent with goals of the CWA, the United States of America sought approval of the Court by motion titled *Plaintiff's Unopposed Motion to enter Consent Decree* filed on May 12, 2016. *See U.S. District Court, District Court of Puerto Rico (San Juan), Civil Docket for Case #3:15-cv-02283-JAC, #10.* The Court entered its approval of the Consent Decree on May 23, 2016. *See U.S. District Court, District Court of Puerto Rico (San Juan), Civil Docket for Case #3:15-cv-02283-JAC, #10.* A final judgment was entered pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. *See U.S. District Court, District Court of Puerto Rico (San Juan), Civil Docket for Case #3:15-cv-02283-JAC, #11.*

The Consent Decree requires PRASA to bring its various facilities into compliance with its NPDES permits and the CWA, and to bear the costs required to accomplish this legal mandate. It imposes on PRASA to comply with schedules of implementing remedial actions at its facilities. It also requires that PRASA comprehensively conduct studies of its sewers, perform necessary repairs and construction to correct the problems identified, and comply with the CWA and its Permits. Also required is the rendering of multiple reports to EPA detailing the works being carried out under the Consent Decree. For not complying with the Consent Decree obligations, PRASA is subject to stipulated penalties. *See Section XXII of the Decree.*

The injunctive relief required, in particular the Sewer System Operation and Maintenance Program ("S2OMP") and Sewer System Condition Assessment, tailored specifically for the Puerto Nuevo RWWTP sewer system will cause PRASA to go through its sewer system with a "fine-tooth comb".  In doing so, as PRASA proceeds through the sewer system in phases conducting inspections, observations and cleaning, eliminating blockages and overflows in accordance with the EPA approved Spill Response and Clean-up Plan ("SRCP"), identifying defects and interconnections, performing corrective actions, repairs and programming others on a prioritized basis, and collecting and retaining information concerning the general conditions of pipes, manholes and joints, including but not limited to blockages found, cracked, broken or ruptured pipes and the diameter and materials of the pipes, it will leave in place for the Puerto Nuevo RWWTP sewer system an operation and maintenance program that provides for preventive maintenance services by way of recurrent Sewer System Reconnaissance, Sewer Cleaning, Fats, Oil and Grease ("FOG") Control, and Sanitary Sewer Overflow ("SSO"), Dry Weather Overflow ("DWO") and Unauthorized Release Prevention and Control.

As the S2OMP evolves and improves as additional information is gathered about the sewer system, PRASA is to continue in the course of its daily operations to undertake FOG Control, SSOs, DWOs and Unauthorized Release Prevention and Control, SRCP, and the Areas of Concern activities.  These activities include performing programmed repair and replacement projects and responding, mitigating, cleaning, correcting, reporting and repairing collection system issues associated with complaints received or evaluations conducted in response to wastewater collection system issues reported or detected.

The objectives of the Consent Decree are consistent with the enunciated goals of the CWA "to restore and maintain the chemical, physical and biological integrity of the Nation's waters." See Section 101(a), 33 U.S.C. § 1251(a). Specifically, the CWA created the goal of eliminating all unpermitted discharges of pollutants into navigable waters, and established a national policy "that area wide waste treatment management planning processes be developed and implemented to assure adequate control of sources of pollutants in each State." See 33 U.S.C. § 1251(a) (1) and (5). The Consent Decree contains a comprehensive schedule of specific remedial measures designed to address effluent violations and illegal discharges from PRASA's facilities. The continued implementation of the comprehensive injunctive relief required under the Consent Decree should ensure better operation and maintenance of PRASA's facilities and will assist PRASA in addressing the CWA violations alleged in the EPA Complaint, as well as the Plaintiff's Complaint.  In particular, to name some, the implementation of remedial measure projects and PRASA EPA approved programs: Integrated Maintenance, Process Control System, Spill Response and Clean-up Plan, Training, Wastewater Treatment Capacity and Flow Management, and the S2OMP and too, identification of Areas of Concern in the collection system of Puerto Nuevo RWWTP.

In the case of *North and South Rivers Watershed Association, Inc. v. Town of Scituate*, the First Circuit, drawing on *Gwaltney of Smithfield, Ltd.*, 484 U.S. 49 at 60, sketched the interrelation between governmental and 33 U.S.C. § 1365 citizen enforcement actions:

The primary function of the provision for citizen suits is to enable private parties to assist in enforcement efforts where Federal and State authorities appear unwilling to act. Congress has found it necessary expressly to "recognize, preserve and protect the primary responsibility and rights of the States to prevent, reduce and eliminate pollution." 33 U.S.C. § 1251(b) (emphasis supplied). It follows that "the citizen suit [under section 505] is meant to supplement rather than to supplant governmental [enforcement] action." *Gwaltney of Smithfield v. Chesapeake Bay Foundation*, 484 U.S. 49, 60, 108 S.Ct. 376, 383, 98 L.Ed.2d 306 (1987). Presumably, then, when it appears that governmental action under either the Federal or comparable State Clean Water Acts begins and is diligently prosecuted, the need for citizen's suits vanishes. *See Gwaltney*, 484 U.S. at 60-61, 108 S.Ct. at 383-384." 949 F.2d 552, 555 (1st Cir. 1991).

EPA acted years before the Plaintiff's Complaint and prosecuted diligently the concerns of citizens and raised by Plaintiff in the Complaint.  The Consent Decree requires, among other things, compliance with comprehensive and substantive injunctive relief specific to the wastewater collection system of the Puerto Nuevo RWWTP to mitigate, reduce and eliminate all unpermitted discharges of pollutants into navigable waters, such as the ones identified in Plaintiff's Complaint.  Thus, as determined in *Gwaltney* and cited above, the need for Plaintiff's citizen suit "vanishes".

Plaintiff concludes that the Consent Decree between PRASA and EPA does not "speak of the alleged violations and the subject action raised in [the] [C]omplaint", because it does not mention the specific discharge identified by GPS coordinates in the

Complaint and Notice as it did against discharges of pollutants occurring on a street in the Villa Nevarez neighborhood 2,796 feet away.  *See Complaint, Paragraph 25 and 26.* Plaintiff's averments reflect a clear misunderstanding of the nature of the violations raised in the EPA Complaint and the breath of the Consent Decree, as well as to the specific injunctive relief items PRASA must implement to assure proper operation and maintenance of the Puerto Nuevo RWWTP sewer system and compliance with the CWA and NPDES permit.

The Consent Decree recognizes that remedial actions to address wastewater collection systems issues and overflows will take some time to complete.  Therefore, the Consent Decree requires reporting of overflows within twenty four (24) hours of discovery using an EPA Reporting Form, implementing and enforcing FOG Control, and response to overflows in accordance with the EPA approved Spill Response and Clean-up Plan, and particularly for the Puerto Nuevo RWWTP sewer system, the implementation of the S2OMP, SSOs, DWOs and Unauthorized Release Prevention and Control, Sewer System Condition Assessment Program, and Areas of Concern activities.

In such cases, where locations in the Puerto Nuevo RWWTP sewer system require recurrent, programmed and specific actions or the development of a project to alleviate the impacts of overflows until the Puerto Nuevo RWWTP sewer system is assessed at such location and the actions needed to resolve the issue are completed, the Consent Decree provides that such locations be tracked and addressed as part of the Areas of Concern Section (Section XII) of the Consent Decree.  With such forethought in mind under the Consent Decree, in the event a location needs be tracked and addressed as part of the

Areas of Concern Section (Section XII) of the Consent Decree, EPA and PRASA may add such location as an Area of Concern.  Furthermore, the Consent Decree provides that PRASA is subject to stipulated penalties if it fails to undertake the actions required at the locations identified at the time of lodging in Appendix R or actions required in any newly identified Areas of Concern.

On May 17, 2019, PRASA notified EPA that it added a new Area of Concern location based on the criteria identified in Areas of Concern Section (Section XII) of the Consent Decree.  A copy of the letter was electronically delivered to counsels of record for the Plaintiff to the email address provided on record in this case. PRASA informed EPA that the location was identified considering various complaints received and overflow events reported to EPA related to heavy rain events.  The area of the new location includes the one identified by Plaintiff in Villa Nevarez.  The points of location for new Area of Concern activities include 10th Street from 20th Street to 32nd Street and Gutemberg Street from 32nd Street to Galileo.  The activities to be performed involve the inspection and monitoring of the sewer system on a monthly basis; continuing efforts towards identifying the rainwater source(s) into the sewer system by conducting additional evaluations and camera inspections; and inspection every six (6) months of certain food service establishments in the area that may be contributing Fats, Oil and Grease to the sewer system of the Area of Concern and provide an education campaign to these establishments on best management practices to control and manage Fats, Oil and Grease to assure that grease accumulations are not restricting the capacity of the sewer system causing or contributing to overflows.

An EPA's prosecutorial strategy must not coincide with that of the Plaintiff. As expressed by the Sixth Circuit, "[S]econd guessing of the EPA's assessment of an appropriate remedy fails to respect the statute's careful distribution of enforcement authority among the federal EPA, the States and private citizens, all of which permit citizens to act where the EPA has 'failed' to do so, not where the EPA has acted but has not acted aggressively enough in the citizens' view." *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 477 (6th Cir.2004); see *N. & S. Rivers Watershed Ass'n v. Scituate*, 949 F.2d 552, 558 (1st Cir.1991) ("Merely because the State may not be taking the precise action Appellant wants it to or moving with the alacrity Appellant desires does not entitle Appellant to injunctive relief."); *Conn. Fund for Env't v. Contract Plating Co.*, 631 F. Supp. 1291, 1293 (D.Conn.1986) ("[A] federal court ought not to allow a citizens' suit to proceed merely because a prior pending state suit has not alleged as many separate violations of the Act as has the citizens' suit and therefore seeks to impose a less substantial civil penalty on the defendant."). Moreover, an unsatisfactory result does not necessarily imply lack of diligence. *See Scituate,* 949 F.2d at 558 ("[V]iolations may continue despite everything reasonably possible being done by the [government] . . . to correct them.  Thus, an enforcement action does not lose its 'diligence' if violations occur after the action is taken, as long as 'everything reasonable possible' is done to correct the violations"); When the EPA chooses to enforce the CWA through a consent decree, failure to defer to its judgment can undermine agency strategy. If a defendant is exposed to a citizen suit whenever the EPA grants it a concession, defendants will have little incentive to negotiate

consent decrees. The Supreme Court has recognized the importance of deference to the EPA's negotiations:

> Suppose . . . that the Administrator agreed not to assess or otherwise seek civil penalties on the condition that the violator take some extreme corrective action, such as to install particularly effective but expensive machinery, that it otherwise would not be obliged to take. If citizens could file suit . . . in order to seek the civil penalties that the Administrator chose to forgo, then the Administrator's discretion to enforce the Act in the public interest would be curtailed considerably. *Gwaltney,* 484 U.S. at 60-61, 108 S.Ct. 376.

As one court nicely put it, "An Administrator unable to make concessions is unable to obtain them." *Heritage Group,* 973 F.2d at 1324; *see Ark. Wildlife Fed'n v. ICI* [475 F.3d 1198] *Americas, Inc.,* 29 F.3d 376, 380 (8th Cir. 1994) ("It would be unreasonable and inappropriate to find failure to diligently prosecute simply because [defendants] prevailed in some fashion or because a compromise was reached."). In *Karr*, the Court found that EPA's prosecution was diligent because the agency investigated and reached a settlement with the defendants concerning essentially the same violations alleged in the plaintiff's complaint. *Karr*, 475 F.3d at 1198. In *Scituate*, an enforcement order and defendants' subsequent compliance with mandatory tasks were considered 'diligent prosecution'. *N. & S. Rivers Watershed Ass'n v. Scituate*, 949 F.2d 552, 557 (1st Cir.1991). The court should not interpret § 1365 of the CWA in a manner that would undermine the EPA's ability to reach voluntary settlements with defendants.

A Consent Decree accorded and lodged in Court does divest citizens of their role in helping to bring about remedies for CWA violations. The Department of Justice's regulations entitle citizens to comment on pending environmental consent decrees. *See* 28 C.F.R. § 50.7 ("It is hereby established as the policy of the Department of Justice to consent to a proposed judgment in an action to enjoin discharges of pollutants into the environment only after or on condition that an opportunity is afforded persons (natural or corporate) who are not named as parties to the action to comment on the proposed judgment prior to its entry by the court.").

Citizen-plaintiffs must meet a high standard to demonstrate that EPA has failed to prosecute a violation diligently. *See, e.g., Scituate,* 949 F.2d at 557 ("Where an agency has specifically addressed the concerns of an analogous citizen's suit, deference to the agency's plan of attack should be particularly favored."); *Comty. of Cambridge Envtl. Health Cmty. & Dev. Group v. City of Cambridge,* 115 F.Supp.2d 550, 554 (D.Md.2000) ("Most courts considering the diligence of a state or federal prosecution have exhibited substantial deference for the agency's process.")

For all of the foregoing reasons, the diligent prosecution statutory bar requires dismissal of the Complaint, since the alleged violations committed by PRASA are being currently prosecuted by the EPA pursuant to the court approved Consent Decree in *U.S. District Court, District Court of Puerto Rico (San Juan), Civil Docket for Case #3:15-cv-02283-JAC.*

WHEREFORE, PRASA requests that this Honorable Court grant *Defendant's Motion to Dismiss* of Plaintiff's Complaint.

RESPECTFULLY SUBMITTED.  In San Juan, Puerto Rico, this 20th day of June 2019.

CERTIFICATE OF SERVICE: I hereby certify that on June 20, 2019, a copy of the foregoing *Defendant PRASA's Motion to Dismiss* was filed electronically with the Clerk of the Court using the CM/ECF system, which upon information and belief will send notification of such filing to all counsel of record.

_____
s/Jorge Marrero Narváez
**JORGE MARRERO NARVAEZ**
USDC PR Bar No. 202210
Counsel for Defendant

**Puerto Rico Aqueduct and Sewer Authority**
Office of General Counsel
PO BOX 7066
San Juan, Puerto Rico 00916-7066
Telephone: 787-620-2277, Extension 2659
Facsimile: 787-620-3785
Email: jorge.marrero@acueductospr.com

**BENNAZAR, GARCÍA & MILIÁN, C.S.P.**
Attorneys for PRASA and MAPFRE
P.O. Box 194000 No. 212
San Juan, Puerto Rico 00919-4000
Tel. 787-754-9191 Fax 787-764-3101


By:      s/A. J. BENNAZAR ZEQUEIRA
         A. J. BENNAZAR ZEQUEIRA
         USDC-PR No. 120907
         ajb@bennazar.org


By:      s/CARLOS R. RAMIREZ ISERN
         CARLOS R. RAMIREZ ISERN
         USDC-PR No. 305907
         carlos.ramirez@bennazar.org