# United States Court of Appeals
## For the First Circuit

---

No. 20-1096

NATALIA CEBOLLERO-BERTRAN,

Plaintiff, Appellant,

v.

PUERTO RICO AQUEDUCT AND SEWER AUTHORITY,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, Jr., U.S. District Judge]

---

Before

Howard, Chief Judge,
Lipez and Thompson, Circuit Judges.

---

Ana L. Toledo-Dávila, with whom Edelmiro Salas González and José L. Ramírez de León were on brief, for appellant.

Carlos R. Ramírez Isern, with whom A. J. Bennazar Zequeira, and Jorge Marrero Narváez were on brief, for appellee.

---

July 1, 2021

---

**LIPEZ, Circuit Judge**. Natalia Cebollero-Bertran filed this action against the Puerto Rico Aqueduct and Sewer Authority ("PRASA") under the citizen enforcement provision of the Federal Water Pollution Prevention and Control Act, also known as the Clean Water Act ("CWA"), 33 U.S.C. § 1365(a). Cebollero claims that PRASA is violating the CWA by discharging raw sewage, which flows into a creek near her home in San Juan.

In response to PRASA's motion to dismiss, the district court dismissed the case, finding that a citizen suit was barred because the United States Environmental Protection Agency ("EPA") had previously filed a suit against PRASA addressing the same violations, and was diligently prosecuting the case pursuant to a 2015 consent decree. In coming to that conclusion, the court failed to follow the correct standard for evaluating a motion to dismiss. Applying the standard applicable to a motion to dismiss, we find that Cebollero's complaint states a plausible claim that the EPA is not diligently prosecuting these violations. Thus, we vacate the district court's dismissal.

**I.**

**A. The Clean Water Act**

In 1972, Congress enacted the CWA with the goal of "restor[ing] and maintain[ing] the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a); see also EPA v. California ex rel. State Water Res. Control Bd.,

426 U.S. 200, 203-04 (1976). The Act gave the federal government more robust tools to control water pollution. It authorizes the EPA to set "effluent limitations," which restrict the quantities, rates, and concentrations of pollutants that a point source[1] may discharge into waterways. 33 U.S.C. §§ 1311, 1314. These limits are enforced through the National Pollutant Discharge Elimination System ("NPDES"), which makes it unlawful to discharge a pollutant without obtaining a permit and complying with its terms. Id. § 1342(b).

The EPA may enforce the CWA by issuing an order to comply or by bringing a civil action against an alleged polluter. Id. § 1319(a). Subject to certain limitations, a private citizen may also seek to enforce the CWA by filing a civil action. Id. § 1365. Citizens are required to give notice to relevant parties 60 days before filing suit. Id. § 1365(b)(1)(A).

CWA citizen suits have the "central purpose of permitting citizens to abate pollution when the government cannot or will not command compliance." Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 62 (1987). Because citizen suits are intended to "supplement rather than to supplant governmental action," id. at 60, the CWA does not permit a private

---

[1] A "point source" is "any discernible, confined and discrete conveyance . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

individual to bring a suit on her own behalf if the EPA "has commenced and is diligently prosecuting a civil or criminal action in a court of the United States[.]" 33 U.S.C. § 1365(b)(1)(B).

**B. The 2015 EPA Suit**

On September 15, 2015, the EPA filed a complaint against PRASA in the U.S. District Court for the District of Puerto Rico, seeking injunctive relief and civil penalties for violations of the CWA.[2] PRASA operates sanitary sewage systems in Puerto Rico, including sewers that flow into the Buena Vista Creek and Puerto Nuevo River.

The 2015 EPA complaint alleged CWA violations by PRASA that included: exceeding effluent limits at certain wastewater treatment plants ("WWTPs") and water treatment plants ("WTPs"), overflows from certain WWTP pump stations and the wastewater collection system of the Puerto Nuevo Regional WWTP, and a failure to properly operate and maintain the WWTPs in accordance with its NPDES permits. These allegations were based on numerous inspections of the PRASA wastewater treatment and collection system, which found instances of improper operation and

---

[2] We draw our summary of facts primarily from the appellant's complaint because we assume the truth of her allegations on a motion to dismiss. Doe v. Pawtucket Sch. Dep't, 969 F.3d 1, 8 (1st Cir. 2020). We also draw from public filings in United States v. PRASA, No. 3:15-cv-02283-JAG (D.P.R. 2015), as we can take judicial notice of such documents. See Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013).

maintenance, as well as discharges of pollutants from manholes into stormwater collection systems, streets, sidewalks, and buildings. Along with the complaint, the parties filed a proposed Consent Decree with the district court, which was published in the federal register for public comments, 80 Fed. Reg. 60931-02 (Oct. 8, 2015), and then approved by the court on May 23, 2016.

The Consent Decree requires PRASA to bring its WTP and WWTP facilities into compliance with its NPDES permits and the CWA on a designated timeline. In furtherance of this goal, it requires PRASA to conduct studies of its sewers and perform necessary repairs and construction. The Consent Decree details actions to be taken to remediate problems at specific facilities, including the Puerto Nuevo Regional WWTP.

PRASA is obligated to provide reports to the EPA regarding its compliance with the Consent Decree and is subject to stipulated penalties if it fails to comply. The Consent Decree identifies "Areas of Concern" that require specific interim actions to ameliorate urgent problems. The EPA or PRASA may add Areas of Concern based on "frequency of [unauthorized discharges]; health/safety effects on the residents of sewage overflows; environmental impacts to water body of sewage overflows; and complexity of the actions needed to resolve the issue."

### C. The Instant Case

Natalia Cebollero-Bertran is a Puerto Rico resident who lives in Villa Nevarez in San Juan. She owns a home next to Buena Vista Creek, a tributary of the Puerto Nuevo River and a part of the estuary of San Juan Bay.

On December 31, 2018, Cebollero, through her attorney, sent PRASA a letter giving notice of her intent to sue under the CWA for the discharge of raw sewage into the Buena Vista Creek and the Puerto Nuevo River. The notice stated that manholes located at Global Positioning System ("GPS") coordinates of 18° 23' 56.22" N and 66° 4' 1.81" W overflowed with sewage on several dates in 2018.[3] The parties and the district court refer to these manholes as the "Tenth Street Sewers." The sewage from the Tenth Street Sewers flowed onto the street and into a rainwater storm drain that directly leads into Buena Vista Creek at the GPS coordinates of 56.04" N, 66° 4' 3" W. The letter further stated that additional sewage discharges occurred near Cebollero's home at 18° 23' 56.04" N, 66° 4' 3" W. Cebollero alleged that the drainage was coming from the Centro Médico area.

On March 1, 2019, PRASA responded to the notice by stating that Cebollero's suit should be precluded by the Consent

[3] Cebollero stated these incidents occurred on May 27, 2018; September 25, 2018; October 17, 2018; October 23, 2018; November 3, 2018; November 4, 2018; and December 28, 2018.

Decree, which, as described above, required PRASA to implement "comprehensive remedial measures" to the entire Puerto Nuevo Regional WWTP. PRASA's response claimed that it had inspected the sewers at issue and found that they were "in good condition[.]"

On April 29, 2019, Cebollero filed this action under the citizen suit provision of the CWA, alleging that PRASA violated the CWA by discharging sewage in excess of permitted levels, discharging pollutants without a permit, failing to maintain and operate the sewage system, and failing to report these violations. She also asserted causes of action under Puerto Rico law for nuisance and riparian rights. Cebollero seeks, inter alia, an injunction enjoining the sewage discharges at the named GPS coordinates and compensatory and punitive damages.

According to the complaint, the discharges cause foul odors in Cebollero's backyard and may expose Cebollero and her children to disease-causing pathogens. Cebollero, an arborist, walks along the creek in the affected area for her aesthetic and recreational enjoyment, which is diminished by the presence of raw sewage. She now, and in the future, "cannot walk in or near the creek . . . [nor] even . . . in her neighborhood, feeling that she is walking on the eggshells of deadly pathogens." Prior to these sewage discharges, Cebollero did not notice any foul odors coming from the creek.

On May 17, 2019, PRASA identified an area including the Tenth Street Sewers as a new "Area of Concern" requiring special programming under the Consent Decree.

On June 20, 2019, PRASA filed a motion to dismiss arguing that Cebollero failed to provide adequate notice as required by § 1365(b)(1)(A) and that her citizen suit was barred by the CWA's "diligent prosecution" provision, § 1365(b)(1)(B). Cebollero opposed the motion. The district court rejected PRASA's notice argument, but dismissed the complaint as precluded by the "diligent prosecution" bar. On January 15, 2020, Cebollero filed this timely appeal.

**II.**

PRASA moved to dismiss under both Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Rule 12(b)(1) motions challenging subject-matter jurisdiction are divided into two categories: facial challenges and factual challenges. Torres-Negrón v. J & N Records, LLC, 504 F.3d 151, 162 (1st Cir. 2007). With facial challenges the movant raises a question of law without contesting the facts. See Justiniano v. Soc. Sec. Admin., 876 F.3d 14, 21 (1st Cir. 2017). The analysis is essentially the same as a Rule 12(b)(6) analysis: we accept the well-pleaded facts alleged in the complaint as true and ask whether the plaintiff has stated a plausible claim that

the court has subject matter jurisdiction. Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001). If a Rule 12(b)(1) motion contests factual allegations of the complaint, the court must engage in judicial factfinding to resolve the merits of the jurisdictional claim. Id. at 363-65.

Rule 12(b)(6) motions, on the other hand, are always facial, not factual, challenges to the complaint.[4] To survive a Rule 12(b)(6) motion to dismiss, the facts alleged in the complaint, taken as true by the court, which also draws all inferences in the pleader's favor, "must state a plausible, not merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662, 680-81 (2009)). This plausibility standard is "not akin to a 'probability requirement'" but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-57 (2007)). Evaluating whether a complaint states a plausible claim for relief is "a context-

[4] In general, motions to dismiss under Rule 12(b)(6) are decided based solely on the face of the complaint, without consideration of any other documents. Pawtucket Sch. Dep't, 969 F.3d at 8. Limited exceptions to this rule allow a court to consider documents that are incorporated into or attached to the complaint, as well as matters of public record subject to judicial notice. Id.; Freeman, 714 F.3d at 36.

specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

### III.

We must determine the appropriate rule for evaluating appellee's motion to dismiss: Rule 12(b)(1) or Rule 12(b)(6). If the statutory prerequisites at issue are jurisdictional, the Rule 12(b)(1) standard applies and judicial factfinding may be permitted if the facts alleged in the complaint are challenged. If the statutory requirements are non-jurisdictional claims-processing rules, Rule 12(b)(6) applies, and the court must accept the truth of the well-pleaded allegations in the complaint.

**A. Distinguishing Jurisdictional and Claims-Processing Rules**

The Supreme Court "has endeavored in recent years to 'bring some discipline' to the use of the term 'jurisdictional.'" Gonzalez v. Thaler, 565 U.S. 134, 141 (2012) (quoting Henderson ex rel. Henderson, v. Shinseki, 562 U.S. 428, 435 (2011)). To that end it has announced a "readily administrable bright line": a statutory provision is jurisdictional only if Congress has clearly stated that it is. Arbaugh v. Y & H Corp., 546 U.S. 500, 516 (2006). "[A]bsent such a clear statement . . . 'courts should treat the restriction as nonjurisdictional in character.'" Sebelius v. Auburn Reg'l Med. Ctr., 568 U.S. 145, 153 (2013) (quoting Arbaugh, 546 U.S. at 516). Nonjurisdictional limits on the availability of judicial review may be "claim-processing

rules" that serve the purpose of "promot[ing] the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." Henderson, 562 U.S. at 435. To decide whether a limitation is a jurisdictional rule or a claim-processing rule, we consider the statutory "condition's text, context, and relevant historical treatment." Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 166 (2010).

Historically, some courts have conflated a mandatory claims-processing rule with a jurisdictional rule. See Arbaugh, 546 U.S. at 511 ("On the subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy, this Court and others have been less than meticulous."). To avoid this confusion, the Supreme Court has explained, "a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction. Other rules, even if important and mandatory . . . should not be given the jurisdictional brand." Henderson, 562 U.S. at 435 (citations omitted). The Court has cautioned that cases which refer to a rule as jurisdictional without analysis should not be relied on as statements of law. Arbaugh, 546 U.S. at 511 ("We have described such unrefined dispositions as 'drive-by jurisdictional rulings' that should be accorded 'no precedential effect' on the question whether the federal court had authority to adjudicate the claim in

suit." (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 91 (1998)).

Designating a rule as jurisdictional can have important consequences. See Henderson, 562 U.S. at 434 ("Branding a rule as going to a court's subject-matter jurisdiction alters the normal operation of our adversarial system."). Indeed, as we have described, this designation changes the method of review applied to a motion to dismiss. Furthermore, parties may raise the issue of a lack of subject matter jurisdiction at any point during the litigation, and the court is obligated to dismiss a case sua sponte if it detects a jurisdictional defect. Id.

**B. The Diligent Prosecution Bar**

The primary issue in this appeal, and the ground for dismissal below, is PRASA's claim that Cebollero's citizen suit is not permitted because of the CWA's diligent prosecution bar. See 33 U.S.C. § 1365(b)(1)(B) (barring a citizen suit if the EPA "has commenced and is diligently prosecuting a civil or criminal action in a court of the United States."). The Fourth and Seventh Circuits have referred to the diligent prosecution bar as jurisdictional and treated it as such. Chesapeake Bay Found. v. Am. Recovery Co., 769 F.2d 207, 208 (4th Cir. 1985); Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist., 556 F.3d 603, 606 (7th Cir. 2009) (per curiam). But neither of those cases contains any analysis in support of that conclusion, and thus we

accord those opinions little weight. See Steel Co., 523 U.S. at 91 ("We have often said that drive-by jurisdictional rulings of this sort . . . have no precedential effect."). The Fifth Circuit, on the other hand, has undertaken a detailed analysis of § 1365(b)(1)(B) and concluded that it is a nonjurisdictional rule. La. Envtl. Action Network v. City of Baton Rouge, 677 F.3d 737, 749 (5th Cir. 2012).

We are persuaded by the Fifth Circuit's reasoning in support of its holding that Congress has not made a clear statement that the diligent prosecution bar is jurisdictional. As the court noted, the statutory text obviously does not include the word "jurisdiction" or any other language indicating an intent that the requirement be jurisdictional. Id. at 748. Further, the provision is located within a subsection titled "Notice," 33 U.S.C. § 1365(b), rather than in the CWA jurisdictional provision, 33 U.S.C. § 1365(a). Id. at 748-49. And the Supreme Court has never deemed the identical diligent prosecution bar in any of the several federal environmental statutes to be jurisdictional. Id. at 749. We agree with the Fifth Circuit that there is simply no reason to read a clear statement of jurisdictional intent into § 1365(b)(1)(B).

This conclusion is further supported by two circuit court decisions holding that identical diligent prosecution bars in other environmental statutes are not jurisdictional. Grp.

Against Smog & Pollution, Inc. v. Shenango Inc., 810 F.3d 116, 123–24 (3d Cir. 2016) (analyzing the diligent prosecution bar in the Clean Air Act, 42 U.S.C. § 7604(b)(1)(B)); Adkins v. VIM Recycling, Inc., 644 F.3d 483, 492 (7th Cir. 2011) (analyzing the diligent prosecution bar in the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6972(b)(1)(B)).[5] Both courts noted that the diligent prosecution bar does not contain a clear statement that it is intended to govern the courts' jurisdiction. Grp. Against Smog, 810 F.3d at 123 ("The language Congress used, 'No action may be commenced,' is mandatory, but it is not stated in terms of the court's adjudicatory capacity or jurisdiction." (quoting 42 U.S.C. § 7604(b))); Adkins, 644 F.3d at 492 ("RCRA's limits on citizen suits appear in separate provisions that do not 'speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.'" (quoting Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 394 (1982))).

For these reasons, we agree with the district court that the CWA's diligent prosecution bar is a mandatory claims-

[5] This decision appears to be in some tension with the Seventh Circuit's treatment of the CWA diligent prosecution bar as jurisdictional in Friends of Milwaukee's Rivers, 556 F.3d at 606. While the cases deal with two separate statutes, it is not clear why the diligent prosecution bar in the CWA would be treated differently from an identical provision in another environmental statute.

processing rule that does not implicate subject matter jurisdiction.

**C. The Notice Requirement**

PRASA also claims that Cebollero did not comply with the CWA's requirement that the plaintiff give sixty days' notice to the EPA and the alleged violator before filing suit. See 33 U.S.C. § 1365(b)(1)(A). The circuits are similarly divided on the question of whether this provision implicates subject matter jurisdiction.[6] The Third, Sixth, Seventh, Ninth, and Tenth Circuits treat § 1365(b)(1)(A) as a jurisdictional rule. Pub. Interest Research Grp. v. Windall, 51 F.3d 1179, 1189 n. 15 (3d Cir. 1995); Bd. of Trs. of Painesville Twp. v. City of Painesville, 200 F.3d 396, 400 (6th Cir. 1999); Atl. States Legal Found., Inc. v. Stroh Die Casting Co., 116 F.3d 814, 820 (7th Cir. 1997); Waterkeepers N. Cal. v. AG Indus. Mfg., Inc., 375 F.3d 913, 916 (9th Cir. 2004); Karr v. Hefner, 475 F.3d 1192, 1200 (10th Cir. 2007). The Fifth and Eleventh Circuits, on the other hand, have

[6] We have not yet meaningfully weighed in on this debate, though we have mentioned the question in passing. In a case decided twenty-five years ago, we assumed, without discussion, that § 1365(b)(1)(A) was a jurisdictional rule. Dubois v. U.S. Dep't of Agric., 102 F.3d 1273, 1295-96 (1st Cir. 1996). That assumption was not essential to the ultimate holding. More recently, we declined to take a position, stating "[w]hether we treat the CWA's notice requirements as strictly jurisdictional or not, they remain mandatory conditions precedent to the filing of a citizen suit." Paolino v. JF Realty, LLC, 710 F.3d 31, 36 n.4 (1st Cir. 2013).

held that § 1365(b)(1)(A) is a nonjurisdictional requirement. Lockett v. EPA, 319 F.3d 678, 682-83 (5th Cir. 2003); Am. Canoe Ass'n, Inc. v. City Of Attalla, 363 F.3d 1085, 1088 (11th Cir. 2004).

We side with the latter circuits and hold that the CWA notice requirement is not jurisdictional for the same reasons that we concluded that the diligent prosecution bar is not jurisdictional. Like the diligent prosecution bar, the statutory text at issue does not refer to jurisdiction, and it is located in the CWA notice subsection, rather than the jurisdiction subsection. There is no Supreme Court precedent holding that similar notice requirements are jurisdictional. See Hallstrom v. Tillamook Cty., 493 U.S. 20, 31 (1989) (stating that a comparable RCRA notice requirement is mandatory but declining to decide whether it is jurisdictional, noting that non-jurisdictional rules can also serve as "mandatory conditions precedent"). The sixty-day notice requirement is mandatory, but it is a procedural rule that does not implicate subject matter jurisdiction. Am. Canoe Ass'n, Inc., 363 F.3d at 1088; Lockett, 319 F.3d at 682-83; cf. Tapia-Tapia v. Potter, 322 F.3d 742, 745 n.4 (1st Cir. 2003) (stating that the Age Discrimination in Employment Act's "procedural requirements, while compulsory, are not jurisdictional").

Because we determine that neither the diligent prosecution bar nor the notice provision of the CWA are

jurisdictional, we treat PRASA's motion as a Rule 12(b)(6) motion to dismiss for failure to state a claim, rather than a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.

**IV.**

The district court concluded correctly that the Rule 12(b)(6) standard applied to PRASA's invocation of the diligent prosecution bar. It recited the standard of review applicable to a Rule 12(b)(6) motion, quoting the Iqbal plausibility standard that we have discussed. However, as we shall explain, the court did not actually apply the standard it cited and instead drew inferences in favor of the defendant.

The court stated that Cebollero "d[id] not plead sufficient facts to permit the Court to plausibly find that the EPA's prosecution has not been diligent." In the court's view, Cebollero's factual allegations of ongoing sewer overflows did not allege a lack of diligent prosecution because "[o]ngoing violation alone does not demonstrate lack of diligence."

The court appears to have relied on the 2015 Consent Decree as definitive proof of diligent prosecution, regardless of Cebollero's allegations to the contrary. The district court correctly summarized the terms of the Consent Decree, stating:

> The Consent Decree requires defendant to address issues within the PRASA system systematically over a period of time, and is structured to prevent future violations of the CWA, including sewage overflows. The Consent

> Decree also provides for the ongoing addition of "Areas of Concern" for locations that require "programmed and specific actions or the development of a project" to prevent CWA violations.

Given that the Consent Decree was attached to Cebollero's complaint and is subject to judicial notice as a public court document, the court was permitted to consider it. But the court should not have assumed that the existence of a Consent Decree from several years earlier was incontrovertible proof that the EPA was diligently prosecuting. This inference, drawn in the defendant's favor, not the plaintiff's, was improper on a motion to dismiss.

The district court also went on to consider defendant's claims that PRASA was taking active steps to comply with the consent decree, stating:

> Defendant, on the other hand, alleges that pursuant to the Consent Decree it has engaged in a number of activities, including implementation of a "Sewer System Operation and Maintenance Program," under which it performs "inspections, observations, cleaning, repairs, and investigations" of the sewer system; a Fats, Oil, and Grease Control Program to prevent blockages, obstructions, and overflows; and camera inspections of sewer lines, including at or near Tenth Street Sewers. Many other steps are required by the Consent Decree, and defendant may be penalized for failure to comply.

These claims appear in PRASA's March 1, 2019 letter in response to Cebollero's notice of intent to sue. This letter was included as an exhibit in Cebollero's complaint and, thus, the district court

was permitted to consider the letter as part of its Rule 12(b)(6) analysis. But it was not permitted to assume the truth of PRASA's factual claims in that letter. Instead, consistent with the Rule 12(b)(6) standard, the court should have assumed the truth of Cebollero's factual claims. By weighing the competing claims of both parties and finding that Cebollero's allegations were not supported by evidence, the district court strayed from the appropriate Rule 12(b)(6) analysis.

## V.

Despite the district court's legal error, we could affirm the decision on any basis available in the record. Williams v. United States, 858 F.3d 708, 714 (1st Cir. 2017). If, taking an appropriate view of the allegations in the complaint, we concluded that Cebollero has not stated a plausible claim that the EPA was not diligent in prosecuting the CWA violations she alleges, the district court's opinion could stand.

Cebollero argues that she has plausibly alleged a lack of diligent prosecution despite the existence of a consent decree for two reasons. First, she asserts that the consent decree does not specifically address the concerns in her complaint, and thus the EPA has not "commenced" an action as required by the diligent prosecution bar. Second, she asserts that even if the EPA has commenced an action, it is not diligently prosecuting it.

**A. Analogous Action**

The CWA's diligent prosecution bar is only relevant if a state or federal agency has commenced an action "analogous" to the citizen's suit. N. & S. Rivers Watershed Ass'n, Inc. v. Town of Scituate, 949 F.2d 552, 557 (1st Cir. 1991); see also Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc., 728 F.3d 868, 874 (9th Cir. 2013) (stating that the government enforcement action must be regarding "the same standard, limitation, or order that is the subject of the citizen suit"). Cebollero argues that the prior EPA action is not analogous because it does not mention the specific GPS coordinates she cites in her complaint.

We disagree. The Consent Decree need not single out the specific locations Cebollero states are the sources of unlawful discharge. The EPA suit is sufficiently analogous if the alleged unlawful discharges are within the ambit of its causes of action. The EPA action and subsequent consent decree apply broadly to PRASA's operation of the Puerto Nuevo WWTP, which includes the sewers at the coordinates Cebollero identifies. The Consent Decree requires reporting of overflows anywhere within that WWTP and allows for specific locations to be designated as special areas of concern. Cebollero has not made a plausible allegation that the EPA never commenced an action regarding her concerns.

**B. Diligent Prosecution**

The CWA's diligent prosecution bar emphasizes the primacy of government agencies in enforcing clean water standards. Gwaltney, 484 U.S. at 60 (stating that the "'the great volume of enforcement actions [are to] be brought by the State,' and that citizen suits are proper only 'if the Federal, State, and local agencies fail to exercise their enforcement responsibility.'" (quoting S. Rep. No. 92-414, p. 64 (1971), reprinted in 2 A Legislative History of the Water Pollution Control Act Amendments of 1972, p. 1482 (1973))). We grant considerable, although not unlimited, "deference to the agency's plan of attack." Scituate, 949 F.2d at 557.

However, the alleged polluter cannot immunize itself from CWA citizen suits by agreeing to a government agency's "plan of attack," such as a consent decree, without actually taking any subsequent remedial steps. As persuasively articulated in a recent court decision evaluating a similar CWA citizen suit, "[i]t is the Court's duty to probe the government's prosecutorial vigor and events transpiring post-entry of the Consent Decree." S. River Watershed All., Inc. v. DeKalb Cty., 484 F. Supp. 3d 1353, 1368 (N.D. Ga. 2020). While the entry of the consent decree is certainly relevant, it is not conclusive evidence of diligent prosecution that would categorically bar any citizen from

proceeding on a claim relating to the same violations addressed by the consent decree.

The "events transpiring post-entry of the Consent Decree" include whether the alleged polluter has continued to violate the CWA. An ongoing violation cannot, by itself, prove a lack of diligent prosecution sufficient to overcome the § 1365(b)(1)(B) bar on citizen suits. See Scituate, 949 F.2d at 558 ("[V]iolations may continue despite everything reasonably possible being done . . . to correct them."). In pursuing its "plan of attack," the agency is not required to "tak[e] the precise action Appellant wants it to or [to] mov[e] with the alacrity Appellant desires." Id. Diligent prosecution is something less than "far-reaching or zealous" prosecution. Karr, 475 F.3d at 1197. However, ongoing violations are not irrelevant to the question of diligent prosecution.

Cebollero's suit is based on a theory that the sewage overflows continue unabated because the EPA is not ensuring that PRASA complies with the consent decree. The complaint alleges that on May 27, 2018, September 25, 2018, October 17, 2018, October 23, 2018, November 3, 2018, November 4, 2018, and December 28, 2018 "three sewer manholes located on the GPS coordinates of 18° 23' 56.22" N and 66° 4' 1.81 W," were overflowing with sewage, onto the street and into an adjacent rainwater storm drain that collects the raw sewage and take[s] [it] directly into the Buena

Vista Creek" at GPS coordinates 56.04" N, 66° 4' 3" W. It further alleges that additional sewage discharges occur near Cebollero's home at GPS coordinates 18° 23' 56.04" N, 66° 4' 3" W as a result of overflow from PRASA sewage manholes in the Centro Médico area. The complaint states, "The violations of sewage discharges are ongoing and have occurred on several occasions after the sixty day letter was sent to the defendant PRASA." Cebollero's 60-day notice letter, which was attached to her complaint, stated that a PRASA engineer had "admitted that the PRASA had no maintenance plan or maintenance activity to correct sewage spills; not in Villa Nevarez, not in all San Juan." We accept all of these allegations as true and conclude that they state a plausible claim. In these circumstances, the ongoing violations support the allegation of a lack of diligence. Also, we find Cebollero's claim plausible because of the level of specificity and detail of her allegations, the severity of the problem she alleges, and the several years that have lapsed since the Consent Decree was ordered.

Our decision in Scituate, 949 F.2d 552, does not compel a different result. That case was decided on cross-motions for summary judgment. There, despite the opportunity to conduct discovery, the plaintiff could not counter the alleged polluter's detailed evidence of its efforts to comply with a state enforcement order to correct its violations of the Massachusetts Clean Waters

Act, a state law which parallels the CWA.[7] Id. at 557. The court found that there was no material dispute as to diligent prosecution based on both the state order and the alleged polluter's "subsequent action." Id. If PRASA has comparable evidence of subsequent corrective actions in this case, which will prove diligent prosecution despite the ongoing violations, it can provide that evidence during properly conducted summary judgment proceedings.[8]

---

[7] Scituate's corrective actions included "(1) the submission of monthly, weekly and daily test results from groundwater monitoring wells, effluent tanks and discharges to the tidal ditch; (2) the expenditure of close to one million dollars to plan the new treatment facility; and (3) enforcement of a sewer hookup moratorium." Scituate, 949 F.2d at 557. Scituate had also hired an engineering firm to "effectuate compliance with the State Order" by studying Scituate's wastewater treatment system, proposing upgrades, and evaluating the feasibility of those upgrades. Id. at 554.

[8] PRASA has offered one piece of evidence that it is acting in accordance with the Consent Decree. On May 17, 2019, it submitted a letter to the EPA stating that it had added the Tenth Street Sewers as an Area of Concern requiring special attention. PRASA submitted a copy of that letter as an attachment to its motion to dismiss. This proffer is irrelevant at this stage for two reasons. First, it is extrinsic evidence that cannot be considered in deciding a Rule 12(b)(6) motion. Second, even if it could be considered, that action was taken after this suit was filed, and therefore would not constitute diligent prosecution barring this citizen suit. We agree with our sister circuits that the EPA must be diligently prosecuting at the time of the filing of the citizen suit in order to trigger the diligent prosecution bar. See Cal. Sportfishing, 728 F.3d at 873; Friends of Milwaukee's Rivers, 382 F.3d at 752.

## VI.

As an alternative basis for affirmance, PRASA renews its argument that Cebollero provided insufficient notice. The CWA states that before a plaintiff initiates a citizen suit, she must provide sixty days' notice to the EPA and the alleged violator. 33 U.S.C. § 1365(b)(1)(A). This notice requirement allows the alleged violator "an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit." Gwaltney, 484 U.S. at 60; see also Paolino, 710 F.3d at 37 ("[N]otice must be sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit[.]" (quoting Atl. States Legal Found., 116 F.3d at 819)).

EPA regulations require that the notice "include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, [and] the date or dates of such violation." 40 C.F.R. § 135.3(a); see 33 U.S.C. § 1365(b) (authorizing the EPA to issue such regulations). Neither the CWA nor these regulations requires that "a citizen plaintiff 'list every specific aspect or detail of every alleged violation,' or 'describe every ramification of a violation.'" Paolino, 710 F.3d

at 38 (quoting Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Hercules, Inc., 50 F.3d 1239, 1248 (3d Cir. 1995)). Instead, we conduct a "functional, fact-dependent, and case-specific inquiry" as to whether the information provided in the notice "allows the putative defendants to identify and remedy the alleged violations." Id. at 34.

On December 31, 2018, well over sixty days before filing this suit, Cebollero provided notice of the alleged violations to PRASA and the other relevant parties. The notice letter states precise dates and GPS coordinates of seven instances of the discharge of "raw sewage from sanitary manholes flowing into rain drainage that flows into Buena Vista Creek [the Tenth Street Sewers]." She also claims that raw sewage from the hospitals in the Centro Médico area flows into the Buena Vista Creek at certain GPS coordinates near her home during times of heavy rain. Cebollero was unable to pinpoint the precise origin of the Centro Médico discharges, but states that this source of discharge was previously brought to PRASA's attention by an expert working on an EPA-PRASA task force.

These details identify the alleged violations with "reasonable specificity." Paolino, 710 F.3d at 38 (quoting San Francisco BayKeeper, Inc. v. Tosco Corp., 309 F.3d 1153, 1158 (9th Cir. 2002)). The only information that appears to be missing is the precise origin of the sewage overflow in Centro Médico. As

pointed out by the District Court, PRASA, unlike Cebollero, possesses "maps, plans, and investigative tools to trace the source of the raw sewage" and thus should be able to identify the source based on the location of the overflow Cebollero identified. See Paolino, 710 F.3d at 37 (noting legislative history stating that the CWA's notice requirement "should not . . . place[] impossible or unnecessary burdens on citizens" (quoting S. Rep. No. 92-414, at 80 (1971), reprinted in 1972 U.S.C.C.A.N. 3668, 3745)). Like the district court, we see no defect in the notice provided, and the suit need not be dismissed on this ground.

**VII.**

The judgment of the district court is hereby vacated. Costs to the appellant. So ordered.