**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| NATALIA CEBOLLERO-BERTRAN<br><br>Plaintiff<br><br>V.<br><br>PUERTO RICO AQUEDUCTS AND SEWER AUTHORITY<br><br>Defendant | CIVIL NO 3:19-CV-1412<br><br><br><br>VIOLATIONS OF CWA, NEGLIGENCE, RIPARIAN RIGHTS<br><br><br><br>JURY TRIAL DEMANDED |

**ANSWER TO COMPLAINT**

**TO THE HONORABLE COURT:**

**COME NOW**, defendants **P.R. AQUEDUCT AND SEWER AUTHORITY** (Autoridad de Acueductos y Alcantarillados de PR), hereafter **"PRASA"**, through their undersigned counsel, to answer the Complaint as follows:

1. Paragraph 1 does not require a responsive allegation from PRASA; as it refers to personal identity information of the Plaintiff, which shall be corroborated during discovery, if it does, it should be deemed DENIED.
2. Paragraph 2 does not require a responsive allegation from PRASA.
3. Paragraph 3 does not require a responsive allegation from PRASA.
4. Paragraph 4 does not require a responsive allegation from PRASA.
5. Paragraph 5 is DENIED as drafted. However, PRASA Affirmatively alleges that it received a letter from Plaintiff regarding overflows in the Villa Nevarez and Centro Medico. PRASA answered with details of PRASA's obligations under the consent decree reached with EPA and detailed its due diligence efforts.

6. Paragraph 6 does not require a responsive allegation from PRASA.

7. Paragraph 7 is DENIED as drafted. However, PRASA Affirmatively alleges that it received a letter from Plaintiff regarding overflows in the Villa Nevarez and Centro Medico. PRASA answered with details of PRASA's obligations under the consent decree reached with EPA and detailed its due diligence efforts.

8. Paragraph 8 is DENIED as drafted. However, PRASA Afirmatively alleges that it received a letter from Mr. Edelmiro Salas regarding overflows in the Villa Nevarez and Centro Medico. PRASA answered with details of PRASA's obligations under the consent decree reached with EPA and detailed its due diligence efforts. The GPS coordinates provided do not reference an intersection between Street 10 and Street 23 in Villa Nevarez. However, PRASA in response to complaints, in addition to reporting events to EPA pursuant to law and the Consent Decree, has undertaken actions in the vicinity, some contemporary to the dates mentioned in the letter.

9. Paragraph 9 is admitted only as of the location of the alleged overflows. PRASA in response to complaints, in addition to reporting events to EPA pursuant to law and the Consent Decree, has undertaken actions in the vicinity, some contemporary to dates mentioned in Plaintiff's letter, such as unclogged and cleansed sewer lines, and conducted inspections of manholes. Camera inspections were performed from Street 10 to Street 20 up to Street 10 and corner of Street 32 of Villa Nevarez. As of date the sewer lines investigated were found in good conditions and no interconnection from a MS4 in the areas investigated was identified.

10. Paragraph 10 is admitted as of the location of the alleged overflows. PRASA in response to complaints, in addition to reporting events to EPA pursuant to law and the Consent Decree, has undertaken actions in the vicinity, some contemporary to dates mentioned in Plaintiff's letter, such as unclogged and cleansed sewer lines, and conducted inspections of manholes. Camera inspections were performed from Street 10 to Street 20 up to Street 10 and corner of Street 32 of Villa Nevarez. As of date the sewer lines investigated were found in good conditions and no interconnection from a MS4 in the areas investigated was identified.

11. Paragraph 11 cannot be admitted or denied due to the way it is misarticulated. The referenced letter stated Plaintiff's intent to sue. However, the rest of the paragraph cannot be admitted as submitted. No information was given traceable to PRASA that the alleged sewage from the hospitals and mental hospitals of the Centro Médico area during heavy rains are attributable to or result from PRASA's actions or installations. In doing so, the Notice does not give PRASA a clear understanding of the alleged violation to address it and bring itself into compliance. Notice serves the purpose to give violator an opportunity to bring itself into complete compliance with the CWA and thus render unnecessary a citizen suit. Laidlaw, 528 U.S 167, 175 (2000). Furthermore, the notice must be sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will know what corrective actions will avert the lawsuit. See Atl. States Legal Found, Inc. v. Stroh Dir Casting Co., 116 F.3d 814, 819 (7th Cir. 1997).

12. Paragraph 12 is DENIED. The alleged overflow occurrences are not continuous, but incidental to heavy rain flows or possibly third-party interference with PRASA installations. See Scituate, 949 F.2d at 558 ("[V]iolations may continue despite everything reasonably possible being done by the [government] . . . to correct them. Thus, an enforcement action does not lose its 'diligence' if violations occur after the action is taken, as long as 'everything reasonable possible' is done to correct the violations");

13. Paragraph 13 is admitted only as to the mention that from "information and belief", overflows initiated from the Centro Medico area. However, PRASA is a public corporation created by law to provide water and sewer services for Puerto Rico. PRASA does not operate or own separate municipal storm sewer systems (MS4s) There is no support under CWA of interpretative case law that requires a party to obtain a CWA permit for discharge of pollutants from a sewer system which it neither owns or operates.

14. Paragraph 14 is DENIED for lack of information. PRASA retains the right to timely amend the present answer during the course of discovery in the present case.

15. Paragraph 15 is DENIED for lack of information. PRASA retains the right to timely amend the present answer during the course of discovery in the present case.

16. Paragraph 16 is DENIED for lack of information. PRASA retains the right to timely amend the present answer during the course of discovery in the present case.

17. Paragraph 17 is DENIED for lack of information. PRASA has learned that Plaintiff is not living in the alleged property at the moment, and is currently living in the Continental United States. PRASA retains the right to timely amend the present answer during the course of discovery in the present case.

18. Paragraph 18 is DENIED for lack of information. PRASA hereby objects this allegation inasmuch as it is based on speculation and not actual facts about how Plaintiff's future life will be like. PRASA retains the right to timely amend the present answer during the course of discovery in the present case.

19. Paragraph 19 is DENIED as drafted. It is affirmatively alleged that any alleged overflow occurrences are not continuous, but incidental to heavy rain flows or possibly third-party interference with PRASA installations. See Scituate, 949 F.2d at 558 ("[V]iolations may continue despite everything reasonably possible being done by the [government] . . . to correct them. Thus, an enforcement action does not lose its 'diligence' if violations occur after the action is taken, as long as 'everything reasonable possible' is done to correct the violations");

20. Paragraph 20 is DENIED. The alleged overflow occurrences are not continuous, but incidental to heavy rain flows or possibly third-party interference with PRASA installations. See Scituate, 949 F.2d at 558 ("[V]iolations may continue despite everything reasonably possible being done by the [government] . . . to correct them. Thus, an enforcement action does not lose its 'diligence' if violations occur after the action is taken, as long as 'everything reasonable possible' is done to correct the violations");

21. Paragraph 21 is DENIED. Plaintiff's complaint will not be "fixed" by a favorable decision of this Court "through a remedy the law provides". The corrective action required by the CWA is and was already underway at the moment of Plaintiff's notice by the approved Consent Decree and judgment entered in U.S. District Court, District Court of Puerto Rico (San Juan), Civil Docket for Case #3:15-cv-02283-JAC, #10 and #11. The CWA gives primary enforcement authority to the EPA and state enforcement agencies. Under 33 U.S.C. § 1365 (g)(6)(A)(i), citizen suits must be dismissed for lack of subject matter jurisdiction when EPA has commenced and is diligently prosecuting a civil action in a court against an alleged violator. Pursuant to 33 U.S.C. § 1365(b)(1)(B) of the CWA, a citizen cannot bring a private action to enjoin violations of the CWA "if the [EPA] or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order." "Section 1365(b) (1) (B) does not require government prosecution to be far-reaching or zealous. It requires only diligence." Karr v. Hefner, 475 F.3d 1192, 1197 (10th) Cir 2007). The Consent Decree requires PRASA to bring its various facilities into compliance with its NPDES permits and the CWA, and to bear the costs required to accomplish this legal mandate. It imposes on PRASA to comply with schedules of implementing remedial actions at its facilities. It also requires that PRASA comprehensively conduct studies of its sewers, perform necessary repairs and construction to correct the problems identified, and comply with the CWA and its Permits. Also required is the rendering of multiple reports to EPA detailing the works being carried out under

the Consent Decree. For not complying with the Consent Decree obligations, PRASA is subject to stipulated penalties. See Section XXII of the Decree. The injunctive relief required, in particular the Sewer System Operation and Maintenance Program ("S2OMP") and Sewer System Condition Assessment, tailored specifically for the Puerto Nuevo RWWTP sewer system will cause PRASA to go through its sewer system with a "fine-tooth comb". In doing so, as PRASA proceeds through the sewer system in phases conducting inspections, observations and cleaning, eliminating blockages and overflows in accordance with the EPA approved Spill Response and Clean-up Plan ("SRCP"), identifying defects and interconnections, performing corrective actions, repairs and programming others on a prioritized basis, and collecting and retaining information concerning the general conditions of pipes, manholes and joints, including but not limited to blockages found, cracked, broken or ruptured pipes and the diameter and materials of the pipes, it will leave in place for the Puerto Nuevo RWWTP sewer system an operation and maintenance program that provides for preventive maintenance services by way of recurrent Sewer System Reconnaissance, Sewer Cleaning, Fats, Oil and Grease ("FOG") Control, and Sanitary Sewer Overflow ("SSO"), Dry Weather Overflow ("DWO") and Unauthorized Release Prevention and Control. As the S2OMP evolves and improves as additional information is gathered about the sewer system, PRASA is to continue in the course of its daily operations to undertake FOG Control, SSOs, DWOs and Unauthorized Release Prevention and Control, SRCP, and the Areas of Concern activities. These activities include performing programmed

repair and replacement projects and responding, mitigating, cleaning, correcting, reporting and repairing collection system issues associated with complaints received or evaluations conducted in response to wastewater collection system issues reported or detected. The objectives of the Consent Decree are consistent with the enunciated goals of the CWA "to restore and maintain the chemical, physical and biological integrity of the Nation's waters." See Section 101(a), 33 U.S.C. § 1251(a). Specifically, the CWA created the goal of eliminating all unpermitted discharges of pollutants into navigable waters, and established a national policy "that area wide waste treatment management planning processes be developed and implemented to assure adequate control of sources of pollutants in each State." See 33 U.S.C. § 1251(a) (1) and (5). The Consent Decree contains a comprehensive schedule of specific remedial measures designed to address effluent violations and illegal discharges from PRASA's facilities. The continued implementation of the comprehensive injunctive relief required under the Consent Decree should ensure better operation and maintenance of PRASA's facilities and will assist PRASA in addressing the CWA violations alleged in the EPA Complaint, as well as the Plaintiff's Complaint. In particular, to name some, the implementation of remedial measure projects and PRASA EPA approved programs: Integrated Maintenance, Process Control System, Spill Response and Clean-up Plan, Training, Wastewater Treatment Capacity and Flow Management, and the S2OMP and too, identification of Areas of Concern in the collection system of Puerto Nuevo RWWTP.

In the case of North and South Rivers Watershed Association, Inc. v. Town of Scituate, the First Circuit, drawing on Gwaltney of Smithfield, Ltd., 484 U.S. 49 at 60, sketched the interrelation between governmental and 33 U.S.C. § 1365 citizen enforcement actions:

The primary function of the provision for citizen suits is to enable private parties to assist in enforcement efforts where Federal and State authorities appear unwilling to act. Congress has found it necessary expressly to "recognize, preserve and protect the primary responsibility and rights of the States to prevent, reduce and eliminate pollution." 33 U.S.C. § 1251(b) (emphasis supplied). It follows that "the citizen suit [under section 505] is meant to supplement rather than to supplant governmental [enforcement] action." Gwaltney of Smithfield v. Chesapeake Bay Foundation, 484 U.S. 49, 60, 108 S.Ct. 376, 383, 98 L.Ed.2d 306 (1987). Presumably, then, when it appears that governmental action under either the Federal or comparable State Clean Water Acts begins and is diligently prosecuted, the need for citizen's suits vanishes. See Gwaltney, 484 U.S. at 60-61, 108 S.Ct. at 383-384." 949 F.2d 552, 555 (1st Cir. 1991). EPA acted years before the Plaintiff's Complaint and prosecuted diligently the concerns of citizens and raised by Plaintiff in the Complaint. The Consent Decree requires, among other things, compliance with comprehensive and substantive injunctive relief specific to the wastewater collection system of the Puerto Nuevo RWWTP to mitigate, reduce and eliminate all unpermitted discharges of pollutants into navigable waters, such as the ones identified in

Plaintiff's Complaint. Thus, as determined in Gwaltney and cited above, the need for Plaintiff's citizen suit "vanishes".

22. Paragraph 22 is admitted as to the definition of "pollutant" contained in the CWA, the rest of the allegation is DENIED.

23. Paragraph 23 is denied. According to Plaintiff's own allegations, the alleged discharges spill into the Municipality of San Juan's (which is not a part in this case before the Court) storm water drains. It is admitted that PRASA's sewers and sanitary registers are discernible.

24. Paragraph 24 is admitted. However, PRASA has subscribed and is diligently prosecuting a consent decree which covers the alleged violations.

25. Paragraph 25 is DENIED. The 2015 Consent Decree covers the entire Puerto Nuevo combined sewer system and is being diligently prosecuted. The Consent Decree recognizes that remedial actions to address wastewater collection systems issues and overflows will take some time to complete. Therefore, the Consent Decree requires reporting of overflows within twenty-four (24) hours of discovery using an EPA Reporting Form, implementing and enforcing FOG Control, and response to overflows in accordance with the EPA approved Spill Response and Clean-up Plan, and particularly for the Puerto Nuevo RWWTP sewer system, the implementation of the S2OMP, SSOs, DWOs and Unauthorized Release Prevention and Control, Sewer System Condition Assessment Program, and Areas of Concern activities. In such cases, where locations in the Puerto Nuevo RWWTP sewer system require recurrent, programmed and specific actions or the development of a project to alleviate

the impacts of overflows until the Puerto Nuevo RWWTP sewer system is assessed at such location and the actions needed to resolve the issue are completed, the Consent Decree provides that such locations be tracked and addressed as part of the Areas of Concern Section (Section XII) of the Consent Decree. With such forethought in mind under the Consent Decree, in the event a location needs be tracked and addressed as part of the Areas of Concern Section (Section XII) of the Consent Decree, EPA and PRASA may add such location as an Area of Concern. Furthermore, the Consent Decree provides that PRASA is subject to stipulated penalties if it fails to undertake the actions required at the locations identified at the time of lodging in Appendix R or actions required in any newly identified Areas of Concern. On May 17, 2019, PRASA notified EPA that it added a new Area of Concern location based on the criteria identified in Areas of Concern Section (Section XII) of the Consent Decree. A copy of the letter was electronically delivered to counsels of record for the Plaintiff to the email address provided on record in this case. PRASA informed EPA that the location was identified considering various complaints received and overflow events reported to EPA related to heavy rain events. The area of the new location includes the one identified by Plaintiff in Villa Nevarez. The points of location for new Area of Concern activities include 10th Street from 20th Street to 32nd Street and Gutemberg Street from 32nd Street to Galileo. The activities to be performed involve the inspection and monitoring of the sewer system on a monthly basis; continuing efforts towards identifying the rainwater source(s) into the sewer system by conducting additional evaluations and

camera inspections; and inspection every six (6) months of certain food service establishments in the area that may be contributing Fats, Oil and Grease to the sewer system of the Area of Concern and provide an education campaign to these establishments on best management practices to control and manage Fats, Oil and Grease to assure that grease accumulations are not restricting the capacity of the sewer system causing or contributing to overflows.

26. Paragraph 26 is DENIED as to the absence of the subject action raised in the complaint. The 2015 Consent Decree covers the entire Puerto Nuevo combined sewer system and is being diligently prosecuted.

27. Paragraph 27 is DENIED. It is Plaintiff, not PRASA who has the burden of proving the absence of diligence, not the other way around. Citizen-plaintiffs must meet a high standard to demonstrate that EPA has failed to prosecute a violation diligently. See, e.g., Scituate, 949 F.2d at 557 ("Where an agency has specifically addressed the concerns of an analogous citizen's suit, deference to the agency's plan of attack should be particularly favored."); Comty. of Cambridge Envtl. Health Cmty. & Dev. Group v. City of Cambridge, 115 F.Supp.2d 550, 554 (D.Md.2000) ("Most courts considering the diligence of a state or federal prosecution have exhibited substantial deference for the agency's process.") An EPA's prosecutorial strategy must not coincide with that of the Plaintiff. As expressed by the Sixth Circuit, "[S]econd guessing of the EPA's assessment of an appropriate remedy fails to respect the statute's careful distribution of enforcement authority among the federal EPA, the States and private citizens, all of which permit citizens to act where the EPA has ‘failed' to

do so, not where the EPA has acted but has not acted aggressively enough in the citizens' view." Ellis v. Gallatin Steel Co., 390 F.3d 461, 477 (6th Cir.2004); see N. & S. Rivers Watershed Ass'n v. Scituate, 949 F.2d 552, 558 (1st Cir.1991) (“Merely because the State may not be taking the precise action Appellant wants it to or moving with the alacrity Appellant desires does not entitle Appellant to injunctive relief."); Conn. Fund for Env't v. Contract Plating Co., 631 F. Supp. 1291, 1293 (D.Conn.1986) ("[A] federal court ought not to allow a citizens' suit to proceed merely because a prior pending state suit has not alleged as many separate violations of the Act as has the citizens' suit and therefore seeks to impose a less substantial civil penalty on the defendant."). Moreover, an unsatisfactory result does not necessarily imply lack of diligence. See Scituate, 949 F.2d at 558 ("[V]iolations may continue despite everything reasonably possible being done by the [government] . . . to correct them. Thus, an enforcement action does not lose its ‘diligence’ if violations occur after the action is taken, as long as ‘everything reasonable possible’ is done to correct the violations"); When the EPA chooses to enforce the CWA through a consent decree, failure to defer to its judgment can undermine agency strategy. If a defendant is exposed to a citizen suit whenever the EPA grants it a concession, defendants will have little incentive to negotiate consent decrees. The Supreme Court has recognized the importance of deference to the EPA's negotiations: Suppose . . . that the Administrator agreed not to assess or otherwise seek civil penalties on the condition that the violator take some extreme corrective action, such as to install particularly effective but expensive machinery, that it otherwise

would not be obliged to take. If citizens could file suit . . . in order to seek the civil penalties that the Administrator chose to forgo, then the Administrator's discretion to enforce the Act in the public interest would be curtailed considerably. Gwaltney, 484 U.S. at 60-61, 108 S.Ct. 376. As one court nicely put it, "An Administrator unable to make concessions is unable to obtain them." Heritage Group, 973 F.2d at 1324; see Ark. Wildlife Fed'n v. ICI [475 F.3d 1198] Americas, Inc., 29 F.3d 376, 380 (8th Cir. 1994) ("It would be unreasonable and inappropriate to find failure to diligently prosecute simply because [defendants] prevailed in some fashion or because a compromise was reached."). In Karr, the Court found that EPA’s prosecution was diligent because the agency investigated and reached a settlement with the defendants concerning essentially the same violations alleged in the plaintiff’s complaint. Karr, 475 F.3d at 1198. In Scituate, an enforcement order and defendants’ subsequent compliance with mandatory tasks were considered ‘diligent prosecution’. N. & S. Rivers Watershed Ass'n v. Scituate, 949 F.2d 552, 557 (1st Cir.1991). The court should not interpret § 1365 of the CWA in a manner that would undermine the EPA's ability to reach voluntary settlements with defendants.

28. Paragraph 28 cannot be admitted or denied as articulated as it is vague and unprecise, intended to induce error of the Court. Scituate, 949 F.2d at 558 ("[V]iolations may continue despite everything reasonably possible being done by the [government] . . . to correct them. Thus, an enforcement action does not lose its ‘diligence’ if violations occur after the action is taken, as long as ‘everything reasonable possible’ is done to correct the violations")

## OTHER CAUSES OF ACTIONS

29. Paragraph 29 does not require a responsive allegation from PRASA, if it does, it should be deemed DENIED. PRASA reasserts all of its previous answers to the allegations included in the complaint and deny responsibility for any alleged cause of action.

30. Paragraph 30 is DENIED as drafted. The allegation seeks relief for damages under state law, but does not indicate legal authority that allow plaintiff to recover for any alleged such alleged damages under state law. Thus, preventing PRASA to formulate adequate response. Furthermore, PRASA hereby asserts that the Plaintiff has no cause of action under state law to recover damages for the facts alleged in the complaint.

31. Paragraph 31 is too general as to allow PRASA the opportunity to formulate an adequate answer. In the alternative it is hereby denied as drafted.

32. Paragraph 32 is DENIED.

33. Paragraph 33 is DENIED as written, PRASA has not breached its duty.

34. Paragraph 34 does not require a responsive allegation from PRASA, if it does, it should be deemed DENIED. PRASA reasserts all of its previous answers to the allegations included in the complaint and deny responsibility for any alleged cause of action.

35. Paragraph 35 Paragraph 35 is denied as drafted. The law, rules and regulations cited in the allegation do not provide a cause of action against PRASA under the alleged circumstances.

36. Paragraph 36 does not require a responsive allegation from PRASA, which is not mentioned in this allegation, if it does, it should be deemed DENIED.

37. Paragraph 37 is DENIED.

## AFFIRMATIVE AND ADDITIONAL DEFENSES

1. The Complaint fails to state a claim upon which relief can be granted against the PRASA and in favor of the Plaintiff.

2. The Complaint fails to state a claim under state law upon which relief can be granted in favor of plaintiff and against PRASA.

3. All claims included in the Complaint are time-barred by applicable statute of limitations.

4. All claims included in the complaint are barred by the doctrine of Collateral Estoppel.

5. The EPA exercised their enforcement responsibility against PRASA pursuant to the enforcement framework under the CWA and has obtained a court Approval Consent Decree with the United States District Court for the District of Puerto Rico under case number 2015 CV 02283 (JAG). The entry of said Consent Decree forecloses the allegations included in the complaint.

6. EPA's is diligently prosecuting PRASA's compliance with the terms and conditions of the Consent Decree and its implementation schedules.

7. The Plaintiff's lack standing to bring this action because she has failed to show causation between PRASA's alleged act or omission and her alleged damages.

8. The complaint fails to show that the alleged overflows constitute an Ongoing Violation preventing any citizen suit under CWA statutes.
9. The Plaintiffs fail to include indispensable parties to the claim.
10. PRASA's actions are within the scope of its NPDES permit.
11. Plaintiff's claim fails to state sufficient facts to show that PRASA is in violation of its NPDES permit.
12. Plaintiff has no right for recovery of private damages under the CWA.
13. Puerto Rico has no riparian rights laws, upon which the Plaintiff might recover damages. In the event, it might be interpreted that she has said rights under state law, her claims are insufficient and time-barred by the applicable statute of limitations.
14. Plaintiff, by her own acts, waived any claims against PRASA.
15. Plaintiffs were negligent by failing to promptly give notice and pose comments and claims during the period provided by the Department of Justice to accept public comments to the Consent Decree which covers the complete Puerto Nuevo area. Thus, any alleged damage is self-inflicted and is partially due to Plaintiff's own lack of diligence in reporting the issue.
16. The plaintiff has acted with unclean hands.
17. PRASA has not breached any legal duty to the plaintiff or any third party.
18. The claims for damages are insufficiently plead and speculative in nature, imaginary, fictitious, and grossly exaggerated.

19. The damages allegedly suffered by plaintiff were caused in whole or in part by acts or omissions by third parties which are not under the control or supervision of PRASA.
20. The storm sewer in question is property of the **MUNICIPALITY OF SAN JUAN**, who has absolute control over the area and the legal obligation of providing maintenance and repairs.
21. PRASA invokes the defense of Laches.
22. Plaintiff is not entitled to attorney's fees under the threshold requirement of the CWA for recovery of the same.
23. At all times PRASA has exercised reasonable care to prevent and promptly correct any overflow and spills that cause damage to all sources of water and may affect the Public Health and environment.
24. There is no causal relationship between any act or omission which may be attributed to PRASA and the damages claimed by the plaintiffs in the Complaint.
25. PRASA reserve the right to expand or modify the above affirmative defenses, if as a result of the process of discovery of evidence in the case PRASA become aware of additional facts or circumstances which are presently unknown.

In San Juan, Puerto Rico, September 27th of 2021.

**RESPECTFULLY SUBMITTED.**

**I HEREBY CERTIFY** that the above answer has been electronically filed with the Clerk of the Court using the CM/ECF system which in turn will simultaneously send notice of the filing to the other attorneys of record in the case.

**BENNAZAR, GARCÍA & MILIÁN, C.S.P.**
Attorneys for PRASA-PRASA
P.O. Box 194000 No. 212
San Juan, Puerto Rico 00919-4000
Tel. 787-754-9191 Fax 787-764-3101

By: /s/ A.J. BENNAZAR ZEQUEIRA
A.J. BENNAZAR ZEQUEIRA
USDC-PR NO. 120907
ajb@bennazar.org

/s/ CARLOS R. RAMIREZ ISERN
CARLOS R. RAMIREZ ISERN
USDC-PR NO. 305907
carlos.ramirez@bennazar.org

**PRASA'S LEGAL DIVISION**
P. O. BOX 7066,
San Juan, PR. 00916-7066
Tel. (787) 620-2277 Ext. 2336;
idalia.diaz@acueductospr.com

By: /s/Idalia Marie Díaz Pedrosa
IDALIA MARIE DIAZ-PEDROSA
USDC-PR 213409