UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

NATALIA CEBOLLERO-BERTRÁN,          )
                                    )
            Plaintiff,              )
                                    )
        v.                          )       No. 3:19-cv-01412-JAW
                                    )
PUERTO RICO AQUEDUCT AND SEWER      )
AUTHORITY,                          )
                                    )
            Defendant.              )
_____ )

NOEL I. REYES-MUÑOZ, et al.,        )
                                    )
            Plaintiffs,             )
                                    )
        v.                          )       No. 3:19-cv-02131-JAW
                                    )
PUERTO RICO AQUEDUCT AND SEWER      )
AUTHORITY,                          )
                                    )
            Defendant.              )
_____ )

**ORDER ON MOTION IN LIMINE AND MOTION FOR SUMMARY JUDGMENT IN *CEBOLLERO-BERTRÁN V. PRASA***

In a suit against the public water authority of the commonwealth of Puerto Rico for violations of the federal Clean Water Act and related state law claims, the defendant moves in limine for the court to dismiss the federal claim for lack of standing, and further moves for summary judgment on the ground that 33 U.S.C. § 1365(b)(1) bars the federal cause of action on account of diligent prosecution. Considering the record before it, the court concludes the plaintiff has failed to establish her federal claim remains a live dispute and thus grants the defendant's

motion in limine requesting dismissal of the plaintiff's federal claim for lack of standing.  Having dismissed her federal claim, the court declines to exercise supplemental jurisdiction and accordingly dismisses without prejudice her related state law claims.

## I.    BACKGROUND[1]

### A.    Procedural History

On April 29, 2019, Natalia Inés Cebollero-Bertrán filed a complaint against the Puerto Rico Aqueduct and Sewer Authority (PRASA), bringing a citizen suit for violations of the federal Clean Water Act (CWA) pursuant to 33 U.S.C. § 1365(a)(1), as well as related state law claims for nuisance, negligence, and violations of her riparian rights.[2]  *Compl.* (ECF No. 1).  On June 20, 2019, PRASA filed a motion to dismiss the complaint for lack of jurisdiction and failure to state a claim, which then Chief Judge Gustavo A. Gelpí granted on December 12, 2019, concluding "the Complaint does not contain sufficient factual matter to permit the Court to plausibly find that the [Environmental Protection Agency (EPA)] has not commenced or is not diligently prosecuting an action as to the violations identified by plaintiff."  *Def.'s Mot. to Dismiss* (ECF No. 10); *Op. and Order* at 10 (ECF No. 14).  However, on January 8, 2020, Plaintiff appealed the dismissal to the United States Court of Appeals for the

---

[1]    Unless otherwise noted, all citations to the docket in this order come from *Cebollero-Bertrán v. PRASA*, No. 3:19-cv-01412-JAW.

[2]    While Plaintiff includes negligence in the heading of her complaint, she does not allege facts specifically relating to negligence, nor does she raise her negligence claim in the "Other Causes of Action" section of her complaint.  *See Compl.* at 1, 6-7 (ECF No. 1).  In addition, while Plaintiff does not include nuisance in the heading of her complaint, she does assert a state law nuisance claim under "Other Causes of Action."  *See id.* at 1, 6.

First Circuit, *Notice of Appeal* (ECF No. 16), and on July 1, 2021, the First Circuit vacated the order and remanded the case to the District of Puerto Rico for further proceedings consistent with its ruling. *J.* (ECF No. 20); *see also Mandate* (ECF No. 22).

On September 27, 2021, PRASA answered the complaint. *Answer to Compl.* (ECF No. 38) (*Answer*). Then, on November 28, 2022, PRASA moved for summary judgment as a matter of law for failure to comply with procedural requirements, failure to state a claim, and as preempted by EPA's diligent prosecution. *PRASA's Mot. for Summ. J.* (ECF No. 43) (*PRASA's First Summ. J. Mot.*). Ms. Cebollero responded in opposition on February 23, 2023, *Pl.'s Consolidated Opp'n to Mot. for Summ. J.* (ECF No. 52) (*Pl.'s Opp'n to First Summ. J. Mot.*), and PRASA replied on March 29, 2023. *PRASA's Reply to Pl.'s Opp'n to Summ. J.* (ECF No. 56) (*PRASA's First Summ. J. Reply*). On April 17, 2023, District Judge Silvia L. Carreño-Coll[3] referred the summary judgment motion to United States Magistrate Judge Giselle López-Soler. *Order Referring Mots.* (ECF No. 58). Ms. Cebollero filed an additional motion requesting leave to file a sur-reply, which Magistrate Judge López-Soler granted on May 1, 2023. *Mot. Seeking Leave to File Sur[-]Reply* (ECF No. 61); *Order* (ECF No. 62).[4] On September 15, 2023, Magistrate Judge López-Soler denied PRASA's motion for summary judgment, concluding Plaintiff's expert witness was

---

[3]    Judge Gelpí transferred the case to the docket of Judge Carreño-Coll with her consent on October 18, 2021. *Order Reassigning Case* (ECF No. 39).

[4]    On April 17, 2023, District Judge Silvia L. Carreño-Coll, referred the summary judgment motion to Magistrate Judge López-Soler. *Order Referring Mots.* (ECF No. 58).

not announced prior to the close of discovery but dismissing the motion without prejudice to afford PRASA the opportunity to again move for summary judgment after the conclusion of discovery. *Order* (ECF No. 76) (*First. Summ. J. Order*).

### B.    Pending Motions

After proceeding with discovery, PRASA filed a second motion for summary judgment on May 31, 2024. *Mot. for Summ. J.* (ECF No. 118) (*PRASA's Second Summ. J. Mot.*). Ms. Cebollero responded in opposition on June 21, 2024, *Pl.'s Consolidated Opp'n to Mot. for Summ. J.* (ECF No. 127) (*Pl.'s Second Summ. J. Opp'n*), and, on July 10, 2024, PRASA replied. *Reply to Pl.'s Opp'n to PRASA's Mot. for Summ. J.* (ECF No. 135) (*PRASA's Second Summ. J. Reply*). After seeking and being granted leave to file a sur-reply, *Mot. Seeking Leave to File Sur[-]Reply* (ECF No. 140); *Order* (ECF No. 141), Plaintiff filed her sur-reply on July 22, 2024. *Pl.'s Sur[-]Reply to PRASA's Reply to Pl.'s Consolidated Opp'n to Mot. for Summ. J.* (ECF No. 148) (*Pl.'s Second Summ. J. Sur-reply*).

With the motion for summary judgment still pending, the parties engaged in pretrial preparation as well as settlement negotiations. On July 18, 2024, the parties jointly submitted a proposed pretrial order providing factual statements about each party's claim or defense, material and contested facts, stipulations regarding documentary evidence, and lists of witnesses. *Joint Proposed Pretrial Order* (ECF No. 144). Shortly thereafter, on August 2, 2024, PRASA filed a motion in limine to exclude the anticipated testimony of certain expert and fact witnesses, as well as documentary evidence, and further requesting the Court dismiss Ms. Cebollero's case in its entirety for lack of standing. *Mot. in Lim. to Exclude Evid. and Args. Relating*

to *Pl.'s Lack of Standing* (ECF No. 156) (*PRASA's Mot. in Lim.*).  Ms. Cebollero responded on August 19, 2024, opposing PRASA's requests for dismissal based on lack of standing and for exclusion of evidence, and moving in her own right to exclude the proposed testimony from one of PRASA's experts.  *Pl.'s Reply in Opp'n to PRASA's Mot. in Lim. to Exclude Evid. and Args. Relating to Pl.'s Lack of Standing, Pl.'s Mot. in Lim. to Exclude PRASA's Evid.* (ECF No. 174) (*Pl.'s Mot. in Lim. Opp'n*).

### C.    Status Order and Consolidation with *Reyes-Muñoz v. PRASA*

On August 9, 2024, Magistrate Judge López-Soler entered an order of recusal in both Ms. Cebollero's case and another citizen suit pending against PRASA, *Reyes-Muñoz v. PRASA*, No. 3:19-cv-02131-JAW.  *Order of Recusal*, No. 3:19-cv-01412-JAW (ECF No. 160); No. 3:19-cv-02131-JAW (ECF No. 184).  Accordingly, by order of District of Puerto Rico Chief Judge Raúl Arias-Marxuach, the cases were each randomly reassigned to this Judge that same day.  *Mem. of the Clerk*, No. 3:19-cv-01412-JAW (ECF No. 162); No. 3:19-cv-02131-JAW (ECF No. 188).

On August 15, 2025, the Court cancelled the previously scheduled jury trial, set to commence on August 19, 2024, *Order* (ECF No. 169), and, on September 3, 2024 held a videoconference with the counsel of both cases to discuss their status and the potential for consolidation.[5]  *Min. Entry*, No. 3:19-cv-01412-JAW (ECF No. 178); No. 3:19-cv-02131-JAW (ECF No. 205).  First, the Court noted that there are motions for summary judgment pending in both cases and confirmed with counsel that the cases

---

[5]     At the status conference, José Luis Ramírez de Leon, Esq. represented the Plaintiffs in both cases.  *Status Order* at 1, No. 3:19-cv-01412-JAW (ECF No. 179); No. 3:19-cv-02131-JAW (ECF No. 206).  PRASA was jointly represented in both cases by A.J. Bennazar-Zequeira, Esq. and Idalia M. Diaz-Pedrosa, Esq.  *Id.*

will not be ready for trial until the resolution of those dispositive motions. *Status Order* at 1, No. 3:19-cv-01412-JAW (ECF No. 179); No. 3:19-cv-02131-JAW (ECF No. 206). Second, the Court observed that PRASA's motion in limine seeking dismissal of Ms. Cebollero's case for lack of standing remained pending and, after discussing with counsel, deemed it prudent to issue an order on the standing issue PRASA raised, despite the postponement of trial, but to dismiss the evidentiary portion of the motion and allow PRASA to refile the motion on the evidentiary questions, if necessary, after the rescheduling of trial. *Id.* at 2. Third, the Court ordered counsel for the Plaintiffs in both cases to inform the Court of their position on formal consolidation. *Id.* at 1-2.

On September 9, 2024, the respective Plaintiffs filed an essentially identical motion in each case in favor of consolidation. *Mot. to Req. Consolidation*, No. 3:19-cv-01412-JAW (ECF No. 180); No. 3:19-cv-02131-JAW (ECF No. 207). In both cases, PRASA responded in opposition on September 16, 2024 and asked the Court to hold in abeyance the decision of whether to consolidate until after it resolved the pending motions for summary judgment and other pending matters. *Def. PRASA's Resp. to Pl.'s Req. for Consolidation*, No. 3:19-cv-01412-JAW (ECF No. 181); No. 3:19-cv-02131-JAW (ECF No. 208).

On October 21, 2024, the Court ordered the cases consolidated pursuant to Federal Rule of Civil Procedure 42 "[b]ased on common questions of law, representation by the same attorneys, anticipated presentation of similar, though not identical, facts, the apparent similarity of expert witnesses, and interests of

convenience and judicial economy." *Order on Mot. to Consolidate* at 1, No. 3:19-cv-01412-JAW (ECF No. 182); No. 3:19-cv-02131-JAW (ECF No. 209) (*Consolidation Order*).   Recognizing PRASA's concerns regarding the cases' differences, the Court also noted that "distinguishable facts underlie each respective case" and "consolidation does not purport to eliminate the significance of these differences because, '[e]ven when consolidated, . . . each case's individuality and distinctness will remain.'" *Id.* at 13-14 (first citing *Def. PRASA's Resp. to Pl.'s Req. for Consolidation* at 2) (then quoting *Norton Lilly Int'l v. P.R. Ports Auth.*, No. 18-1012 (GAG), 2019 U.S. Dist. LEXIS 2405245, at *4 (D.P.R. May 16, 2019)).

### D.   Oral Argument and Subsequent Filings

On February 21, 2025, the Court held an oral argument on PRASA's motions in limine asserting the respective Plaintiffs' lack of standing and motions for summary judgment in both consolidated cases, during which the Court identified several deficiencies in the filings and ordered the parties to file responsive briefs within fourteen days and any responses within an additional fourteen days thereafter. *Min. Entry*, No. 3:19-cv-01412-JAW (ECF No. 186).

In compliance with this order, on March 7, 2025, Plaintiffs' counsel filed a motion seeking leave to amend Ms. Cebollero's complaint to clarify her alleged injury. *Mot. Seeking Leave to File Am. Compl.* (ECF No. 190) (*Pl.'s Mot. to Amend*).   PRASA opposed Ms. Cebollero's motion to amend on March 21, 2025, also including in this filing additional arguments seeking dismissal for lack of standing.  *PRASA's Opp'n to Pls.' Belated Mot. to Amend and Req. to Dismiss for Insufficient Pleadings and*

7

*Continued Lack of Standing* (ECF No. 196) (*PRASA's Am. Compl. Opp'n*). Over PRASA's objection, the Court granted Plaintiff's request to file an amended complaint on March 26, 2025, *Order* (ECF No. 201), and Ms. Cebollero filed her amended complaint on May 6, 2025. *Am. Compl.* (ECF No. 204).

Separately, on March 7, 2025, PRASA filed a motion addressing the concerns the Court raised at oral argument. *PRASA's Mot. in Compliance with Order* (ECF No. 191) (*PRASA's Compliance Mot.*). Plaintiff's counsel responded to PRASA's motion on March 25, 2025. *Pls.' Mot. in Resp. to PRASA's Mot. in Compliance with Order* (ECF No. 200) (*Pl.'s Compliance Resp.*).

## II.   A PRELIMINARY NOTE ON THE COURT'S APPROACH

Due to the consolidation and the complicated procedural history of each case, the Court takes a moment to explain the approach it has taken for the purposes of this order. First, as the Court has previously recognized, "distinguishable facts underlie each respective case," *Consolidation Order* at 13-14, and, thus, in this order, the Court responds only to PRASA's pending motion in limine seeking dismissal of Ms. Cebollero's case for lack of standing and motion for summary judgment and entry of judgment against Ms. Cebollero as a matter of law.[6]

---

[6]     To be clear given the cases' recent consolidation, PRASA has filed similar, but distinct, motions for summary judgment and in limine seeking dismissal for lack of standing in *Reyes-Muñoz v. PRASA*, No. 3:19-cv-02131-JAW. *See Reyes-Muñoz v. PRASA*, No. 3:19-cv-02131-JAW, *Mot. and Mem. in Support of Summ. J.* (ECF No. 151); *Mot. in Lim. to Exclude Evid. and Args. Relating to Pls.' Lack of Standing* (ECF No. 185). To ensure "each case's individuality and distinctness [] remain[s]" intact, *Norton Lilly Int'l*, 2019 U.S. Dist. LEXIS 2405245, at *4, the Court contemporaneously issues a separate order to resolve the motions in *Reyes-Muñoz*.

Second, because "[s]tanding is a threshold issue in every federal case," *Me. Springs, LLC v. Nestlé Waters N. Am., Inc.*, No. 2:14-cv-00321-GZS, 2015 U.S. Dist. LEXIS 33259, at *12 (D. Me. Mar. 18, 2015) (citing *Pagan v. Calderon*, 448 F.3d 16, 26 (1st Cir. 2006)), after reviewing the factual record, the Court starts by considering PRASA's challenge to Ms. Cebollero's standing to bring this case.

## III.    FACTUAL BACKGROUND

### A.    Threshold Notes on State of the Record

Before describing the contents of the factual record before it on the pending motions, the Court addresses several unique aspects of the record stemming from the complicated procedural history of this case.  The Court begins by clarifying the state of the record with regard to: 1) misnumbered exhibits, 2) untranslated exhibits, 3) exhibits not disclosed during discovery, and 4) novel arguments and evidence presented by PRASA's self-titled motion in compliance.

First, in her opposition to PRASA's summary judgment motion, Ms. Cebollero objected to numerous facts presented by PRASA on the ground that its citations to numbered exhibits for particular facts did not correspond to the exhibits actually attached to PRASA's submissions on the ECF filing platform.  *Pl.'s Summ. J. Sur-reply* at 9-15.  For the implicated statements, Plaintiff requested the Court "disregard the unsupported facts or arguments."  *Id.*  (citing *Goodall v. N.Y. State Dep't of Corr.*, No. 9:19-CV-1359, 2024 U.S. Dist. LEXIS 57106, at *28 (N.D.N.Y. Mar. 26, 2024)).  As PRASA did not reply or file any supplementary notice to correct their misnumbered exhibits, the Court raised this issue at oral argument and directed PRASA to correct its misnumbered exhibits.  *Min. Entry.*  In its motion in compliance,

PRASA proposed a renumbering of its exhibits; however, on the Court's review, PRASA's proposed numbers remain out of sync with the exhibits' numeration on ECF by, in part, referring to numerous ECF attachments as a single exhibit. PRASA did not resubmit its exhibits in its proposed reorganization, instead relying on documents as previously submitted. However, because the Court was able to align PRASA's citations with its intended exhibits and because the First Circuit has indicated its preference for resolving claims on the merits rather than procedural technicalities, *see, e.g.*, *Kuehl v. FDIC*, 8 F.3d 905, 908 (1st Cir. 1994) (citing *Foman v. Davis*, 371 U.S. 178, 181-82 (1962)), the Court declines to disregard these facts based on misnumbering as Plaintiff requests and instead corrects PRASA's citations in this order, where necessary, to reflect their ECF designation.

Second, at oral argument, the Court remarked on the partial lack of English translations for depositions taken in Spanish and presented as evidence by Plaintiff, in violation of District of Puerto Rico Local Rule 5(c). *Min. Entry*; *see also* D.P.R. LOC. R. 5(c) ("All documents not in the English language which are presented or filed, whether as evidence or otherwise, must be accompanied by a certified translation into English"). In compliance with the Court's instructions, Plaintiff's counsel submitted translated versions of the depositions on March 18, 2025. *Mot. in Compliance with Order Concerning Corrected Translations* (ECF No. 194) (*Pl.'s Corrected Translations*).

Third, Ms. Cebollero objected to numerous facts as stated by PRASA on the basis that PRASA had failed to disclose the documentary evidence cited in support

during the discovery process. *Pl.'s Summ. J. Opp'n* at 6-14. PRASA replied that some evidence had been disclosed but concedes other evidence had not; for the latter, PRASA asserts such information was public knowledge or referenced in other documents. *PRASA's Summ. J. Reply* at 3-9. Ms. Cebollero requested the Court apply Federal Rule of Civil Procedure 37(c)(1) to bar PRASA from using the undisclosed evidence for the purposes of its summary judgment motion. *Pl.'s Summ. J. Sur-reply* at 1-5. At oral argument, the Court directed PRASA to clarify which evidence had been shared during discovery. *Min. Entry*; *accord PRASA's Compliance Mot.* at 1 ("Specifically, the Honorable Judge instructed PRASA to address the following: . . . (2) address whether or not exhibits which supported some of PRASA's statements of uncontested facts were previously disclosed to the Plaintiffs"). Despite acknowledging the Court's request, PRASA's motion in compliance largely fails or declines to address the evidence Ms. Cebollero claims had not been disclosed during the discovery period, other than a footnote conceding certain contested contracts were not produced and asserting the nondisclosed contracts are "not essential" to its legal defense. *Id.* at 2 n.1. Without a basis to conclude otherwise, the Court thus presumes all the evidence Ms. Cebollero challenges as undisclosed during discovery, unless contradicted by PRASA in its reply, was indeed not properly disclosed. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (claims or "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

The Court is not persuaded by PRASA's argument that publicly available information remedies a lack of disclosure during discovery. The United States District Court for the District of Puerto Rico has held that "[t]he Federal Rules of Civil Procedure **do not grant an automatic exception to disclosure rules for publicly available information**" because doing so "would require parties to 'scour the public domain' for information the opposing party could potentially use against them throughout litigation." *Est. of Rey v. Gonzalez*, No. 16-2769 (RAM), 2020 U.S. Dist. LEXIS 141089, at *10 (D.P.R. Aug. 4, 2020) (quoting *Shatsky v. Syrian Arab Republic*, 312 F.R.D. 219, 223 (D.D.C. 2015)) (emphasis in original).

Further, PRASA's claim that other documents in the record support the asserted facts does not carry the day; if PRASA wanted to base its statement of fact on this evidence, it should have done so in its statements of material fact submitted in support of its motion for summary judgment. It cannot now fix the problem by arguing other evidence, disclosed during discovery but not cited in its statement of material facts, is sufficient to support a particular fact. In *Estate of Rey*, the District of Puerto Rico concluded the appropriate sanction for failing to disclose relevant pieces of evidence was to exclude the evidence disclosed after the close of discovery from consideration. *Estate of Rey*, 2020 U.S. Dist. LEXIS 141089, at *10-11 ("the link between Rule 26 disclosure requirements and Rule 37 sanctions appropriately allows for the exclusion of late disclosed, publicly available documents") (citing *Martino v. Kiewit N.M. Corp.*, 600 Fed. Appx. 908, 911 (5th Cir. 2015)). The Court reaches the same conclusion here and, for the purposes of the summary judgment motion, will

not consider cited evidence not disclosed during discovery or cited in support of summary judgment.

Fourth and finally, PRASA leverages the Court's request for clarification on issues specified at oral argument as an opportunity to present original arguments, supported by novel evidence, in its motion in compliance. Specifically, PRASA launches an attack on Ms. Cebollero's standing by arguing, based on newly presented evidence, that she holds no proprietary interest in the real property that is the subject of the dispute. *PRASA's Compliance Mot.* at 7-9. PRASA also submits new evidence to support its claim that PRASA had invoked its contractual right to Force Majeure for the period relevant to this case. *Id.* at 13-16.

However, the Court's request for the parties to remedy deficiencies in the summary judgment motion sequence was not an invitation to supplement the summary judgment motions with entirely new evidence and lines of argument, especially when the new position directly contradicts a previously undisputed portion of the factual record. Courts within this Circuit have consistently denied litigants' attempts to inject new claims and evidence after the close of the summary judgment record. *See, e.g.*, *Cavanagh v. Taranto*, 95 F. Supp. 3d 220, 227 n.7 (D. Mass. 2015) ("The belated submittal of additional materials by plaintiff's counsel after the record on which summary judgment was sought and had been closed and contested in writing is of a piece with his litigation practice—and apparent strategy—of seeking to forestall timely and orderly resolution of the dispositive motion record by untimely submission of additional materials following the conclusion of briefing. I decline to

13

consider such vagrant submissions"); *cf. Gillis v. SPX Corp. Individual Account Ret. Plan*, 511 F.3d 58, 63 & n.5 (1st Cir. 2007) (noting "serious concerns" where a plaintiff had sought and was granted leave to file a memorandum after the close of the summary judgment record and instead submitted novel arguments).

Here, PRASA submits new evidence outside of the standardized summary judgment process, a process specifically designed to permit litigants to clearly accept or dispute assertions of fact and cited evidence such that the Court may rule on a clean record. Submitting novel evidence at this late stage, unrelated to the Court's requested clarifications and identified errors, thereby circumvents this rigorous and orderly process. Thus, for the purposes of the pending motion for summary judgment, the Court confines itself to ruling on the record of material facts as articulated by the parties' statements of fact, with the narrow exception of permitting the clarifications to exhibit numbers and translations specifically requested by the Court.

## B.   Statement of Material Facts[7]

In this case, PRASA filed a motion for summary judgment within which it included a statement of material and uncontested facts. *PRASA's Second Summ. J. Mot.*, Section IV ¶¶ 1-28 (DSMF). Similarly, Ms. Cebollero's response included her

---

[7]      District of Puerto Rico Local Rule 56 instructs parties to submit supporting, opposing, and reply material facts, in each case, as "separate" statements. D.P.R. LOC. R. 56(a)-(c). In the present motion sequence, the parties did not submit separate statements but instead included their statements of fact and responsive facts as subsections within their motions. The Court has thus designated the relevant subsections of the parties' respective motions according to the commonly used shorthands: Defendant's Statement of Material Fact (DSMF); Plaintiff's Response to Defendant's Statement of Material Fact (PRDMSF); Plaintiff's Statement of Additional Material Fact (PSAMF); Defendant's Reply to Defendant's Statement of Material Fact (DRDSMF); Defendant's Response to Plaintiff's Statement of Material Fact (DRPSAMF); Plaintiff's Sur-reply to Defendant's Statement of Material Fact (PSDSMF); and Plaintiff's Sur-reply to Plaintiff's Statement of Additional Material Fact (PSPSAMF).

answers to PRASA's statement of material facts, *Pl.'s Second Summ. J. Opp'n*, Section IV.A ¶¶ 9, (1)–(28) (PRDSMF), and an additional set of her own uncontroverted material facts. *Id.*, Section IV.B ¶¶ 10, (A)-(Y) (PSAMF). PRASA's reply contains both its replies to Ms. Cebollero's answers to its assertions of fact, *PRASA's Second Summ. J. Reply* at Sections II.B-D (DRDSMF), as well as its answers to Plaintiff's asserted additional facts. *Id.* at Section II.E (DRPSMF). Finally, in her sur-reply, Ms. Cebollero submits further responses to PRASA's assertions of material fact, *Pl.'s Second Summ. J. Sur-reply*, Section II ¶¶ 5-21 (PSDSMF), and also responds to PRASA's answers to her asserted additional facts. *Id.*, Section III ¶¶ 22-41; Section IV ¶¶ 42-44 (PSPSAMF).

## 1.    The Parties

PRASA, a public corporation statutorily created by 22 L.P.R § 141 *et seq.*, provides water and sewer services for Puerto Rico, including a residential wastewater treatment plant in the Puerto Nuevo area.[8]  DSMF ¶ 1; PRDSMF ¶ 1.

Natalia Cebollero-Bertrán is a former resident of the Villa Nevarez neighborhood in San Juan, Puerto Rico; Ms. Cebollero ceased living in Villa Nevarez on July 29, 2020 when her husband was relocated to a military base in Princeton, New Jersey, but remains owner of the property.[9]  DSMF ¶ 22; PRDSMF ¶ 22; PSAMF

---

[8]    Ms. Cebollero responds to PRASA's asserted statement of fact by arguing this statement is a matter of law, not fact, and as such it need not be accepted or denied.  PRDSMF ¶ 1.  In the alternative, she accepts it.  *Id.*  Plaintiff provides no basis for her claim that an organic statute which by its facial terms creates a government entity is a matter of law; the Court thus deems this asserted fact admitted.

[9]    As previously noted, PRASA did not object to Ms. Cebollero's asserted ownership of the Villa Nevarez property on the original summary judgment record; however, in its post-oral argument filings, it challenges her ownership interest based on novel evidence.  *See PRASA's Compliance Mot.* at 7-9.  As explained, the Court's request for clarification of deficiencies in the original pleadings was not an

¶ B; DRPSAMF at 12.[10]  Ms. Cebollero's residential property at issue in this suit is located at the coordinates 18.398646, -66.067767, also identified as 1017 18th Street in Villa Nevarez, and the manholes related to the alleged sewage overflows are located east of Ms. Cebollero's property near the Buena Vista Creek.  PSAMF ¶ A; DRPSAMF at 12.

### 2. 2015 Consent Decree[11] between PRASA and EPA

EPA enforced its authority over PRASA pursuant to the CWA and obtained a court-approved Consent Decree (2015 Consent Decree) from the United States District Court for the District of Puerto Rico in case number 15-cv-002283 (JAG).[12]  DSMF ¶ 2; PRDSMF ¶ 2.

Several provisions of the 2015 Consent Decree are applicable to the alleged sanitary sewer overflows (SSOs) underlying this case.  Specifically, Section IX applies to the Puerto Nuevo Regional Wastewater Treatment Plant and sewer system, while

---

invitation to submit new arguments and thus, for the purposes of the present motions, the Court accepts Ms. Cebollero's ownership interest in the Villa Nevarez property as uncontroverted.

[10]    PRASA states the additional facts which it does not dispute in a single unenumerated paragraph on page twelve of its reply.  *PRASA's Summ. J. Reply* at 12.  Thus, the Court denotes an undisputed statement of additional fact by citing this page of PRASA's reply.

[11]    Both parties refer to the Consent Decree between PRASA and EPA as the "2015 Consent Decree," despite it being entered in the District of Puerto Rico, Civil No. 15-2283 (JAG) on May 23, 2016.  *See, e.g.*, *PRASA's Second Summ. J. Mot.* at 2; *Pl.'s Summ. J. Sur-reply* at 15.  In the interest of consistency, the Court adopts the parties' preferred nomenclature.

[12]    Ms. Cebollero again asserts this statement need not be admitted or denied because it is a statement of law, while alternatively accepting it.  PRDSMF ¶ 2.  Facts include, *inter alia*, "tangible things, actual occurrences, and relationships."  *Fact*, BLACK'S LAW DICTIONARY (10th ed. 2014).  Here, the existence of the prior case filed in this District and PRASA's subsequent attachment of the 2015 Consent Decree, the authenticity of which Plaintiff does not dispute, leads the Court to conclude these events "actually occurred."  The Defendant's statement of fact is thus deemed admitted.

Section XVIII provides general requirements for overflows, spills, and releases from all PRASA facilities.[13]  DSMF ¶ 3; PRDSMF ¶ 3.

Section IX of the 2015 Consent Decree requires PRASA to implement a Sewer System Operation and Maintenance Plan (S2OMP) for the Puerto Nuevo Sanitary Sewer System.[14]  DSMF ¶ 4; PRDSMF ¶ 4.  The Puerto Nuevo S2OMP contains the processes and protocols necessary to evaluate and improve the performance of the sewer system connected to the Puerto Nuevo Residential Wastewater Treatment Plant, as well as specific directives on how to respond to overflows.[15]   DSMF ¶ 4; PRDSMF ¶ 4.

PRASA implemented a Spill Response and Cleanup Plan (SRCP) pursuant to the terms of 2015 Consent Decree, which summarized the actions PRASA would take in the event of SSOs, unauthorized releases, or combined sewer overflows (CSOs) which applied to all PRASA facilities.[16]  DSMF ¶ 5; PRDSMF ¶ 5.  Under the terms

---

[13]   Ms. Cebollero again argues this statement presents a statement of law that she need not admit or deny, while, in the alternative, accepting it.  PRDSMF ¶ 3.  Upon review of the Defendant's cited exhibits, DSMF ¶ 3 (citing *PRASA's Second Summ. J. Mot.*, Attach. 1, *Excerpt from 2015 Consent Decree: Section IX* ¶¶ 29-38 (*2015 Consent Decree Section IX*); Attach. 2, *Excerpt from 2015 Consent Decree: Section XVIII* ¶¶ 62-65 (*2015 Consent Decree Section XVIII*), the Court concludes that the referenced sections of the 2015 Consent Decree, on their face, apply to the systems as described by PRASA.  Plaintiff provided no legal basis to conclude that PRASA's description of the scope of these provisions, without asserting their legal effect or consequence, constitutes a statement of law and therefore, the Court deems the Defendant's statement admitted.

[14]   Ms. Cebollero argues this statement presents a statement of law that she need not admit or deny, while, in the alternative, accepting it.  PRDSMF ¶ 3.  For the same reasons stated in footnote 13, the Court deems the Defendant's statement admitted.

[15]   Once again, Ms. Cebollero contends this statement presents a statement of law that she need not admit or deny but, in the alternative, she accepts it.  PRDSMF ¶ 4.  For the reasons articulated in footnote 13, the Court deems the Defendant's statement admitted.

[16]   Ms. Cebollero does not dispute PRASA's statement regarding the issuance and scope of the SRCP; thus, the Court deems DSMF ¶ 5 admitted.  PRDSMF ¶ 5.  However, in DSMF ¶ 6, the Defendant continues to say that "PRASA also retained a specialized technical and scientific consulting firm to provide technical assistance in the development and implementation of the S2OMP for the

of the 2015 Consent Decree, PRASA is supposed to update the SRCP annually; however, it has not updated the SRCP since 2016.[17]  PSAMF ¶ X; DRPSAMF ¶ X.

Pursuant to the 2015 Consent Decree, EPA subjects PRASA to surprise inspections and other monitoring measures.  DSMF ¶ 26; PRDSMF ¶ 26.  PRASA is also subjected to stipulated penalties for failure to comply with its obligations under the 2015 Consent Decree.  DSMF ¶ 27; PRDSMF ¶ 27.

---

Puerto Nuevo sanitary RWWTP sewer service according to the 2015 [Consent Decree] with EPA and the U.S. Department of Justice."  DSMF ¶ 6 (citing *PRASA's Second Summ. J. Mot.*, Attach. 5, *2017 Consultant Cont.*; Attach. 6, *2018 Consultant Cont.*; Attach. 7, *2019 Consultant Cont.*; Attach. 8, *2020 Consultant Cont.*; Attach. 9, *2021 Consultant Cont.*; Attach. 10, *2022 Consultant Cont.*) (citations corrected to reflect ECF numeration)).  Ms. Cebollero denies DSMF ¶ 6, submitting that "[t]his is the first time that PRASA has proffered this argument, and the first time PRASA discloses these contracts."  PRDSMF ¶ 6.  PRASA concedes these contracts were not disclosed during discovery, but replies these contracts were publicly available and implicit in other disclosed materials, such as the S2OMP and Consulting Engineer Reports.  DRDSMF at 10-11; *PRASA's Compliance Mot.* at 2 n.1.  However, PRASA fails to indicate with precision where these materials purportedly support the specific statement of fact, other than emphasizing their existence and referencing the 2018 S2OMP.  *Id.*  On summary judgment, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment.  The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts."  D.P.R. LOC. R. 56(e); *accord Portugues-Santa v. B. Fernandez Hermanos, Inc.*, 614 F. Supp. 2d 221, 227 (D.P.R. 2009) (statements of material fact must be "supported by pin cites to admissible evidence") (citing D.P.R. LOC. R. 56(b), (c) & (e)).  For the reasons previously explained, the Court has determined that evidence not disclosed during discovery should be excluded from consideration pursuant to Federal Rule of Civil Procedure 37(c)(1) and PRASA has failed to provide pincites evidencing support for its statement of fact in other documents.  The Court thus declines to admit PRASA's proposed statement of fact.

[17]  In full, Ms. Cebollero submits "[a]s per the [2015] Consent Decree, PRASA is supposed to yearly update the SRCP, and yet it has not updated it since 2016."  PSAMF ¶ X (citing *Pl.'s Summ. J. Opp'n*, Attach. 4, *Taking of the Dep. of: Mr. Orlando Rodríguez-Hernández* at 28:13-25, 45:21-25.  PRASA admits this proposed fact from Plaintiff, adding that it is only obligated to update the SRCP yearly "if necessary" and citing section 8 of the SRCP, purportedly on page 21.  DRPSAMF ¶ X (citing *PRASA's Summ. J. Reply*, Attach. 9, *Spill Response and Cleanup Plan (SRCP) Submission* (*SRCP Excerpts*)).  PRASA's attached copy of the SRCP only includes an excerpt through Section 4.2.2, stopping on page 14.  *See generally SRCP Excerpts.* The Court is therefore unable to confirm PRASA's proposed qualification, and thus deems Plaintiff's statement of fact admitted in full.

### 3.    2017 Hurricanes and their Effects

On September 6, 2017, Puerto Rico was severely affected by Hurricane Irma, a Category 5 storm which damaged PRASA's water treatment facilities and other structures.  DSMF ¶ 7; PRDSMF ¶ 7.

Two weeks later, on September 20, 2017, Puerto Rico was struck by Hurricane María, a Category 4 storm which severely impacted PRASA's infrastructure across the island.  DSMF ¶ 8; PRDSMF ¶ 8.  Because of the flooding and loss of electricity, most of the island's water-supply and wastewater treatment plants and pumping stations were shut down; as a result, "[s]ewage waters contaminated the streets, rivers, and the sea, posing an immediate threat to the environment, public health, and safety."  DSMF ¶ 8; PRDSMF ¶ 8.  PRASA endeavored to promptly restore water and wastewater services.[18]  DSMF ¶ 8; PRDSMF ¶ 8.

---

[18]    PRASA further avers that on January 31, 2018, the U.S. Department of Justice (DOJ) Environmental Enforcement Section scheduled a meeting with PRASA's Executive President and EPA, to be held on February 16, 2018, for the purpose of "discuss[ing] PRASA's status of operations and compliance" in light of the destructive effect of the hurricanes. DSMF ¶ 9 (citing *PRASA's Second Summ. J. Mot.*, Attach. 12, *EPA Letter to PRASA*) (citation corrected). Ms. Cebollero denies this statement of fact, claiming "[t]his is the first time that PRASA has proffered this argument, and the first time PRASA discloses these communications and supposed meetings, which are not part of the record." PRDSMF ¶ 9.  In reply, PRASA insists that the effects of the hurricanes were public knowledge and submits that its reliance on the force majeure provision is referenced in other evidence provided to Plaintiff, such as the "bi-annual reports, expert witness reports, and PRASA's [Consulting Engineering Reports (CERs).]" DRDSMF at 4-5. Ms. Cebollero responds that PRASA "never raised as a defense the 'force majeure' consisting of the impact of the 2017 hurricanes" and that any implication of the same should be considered insufficient because PRASA never disclosed the cited exhibit during the discovery process. PSDSMF ¶ 9.  For the reasons previously explained, the Court concludes public availability and reference elsewhere does not satisfy PRASA's discovery obligations, *Est. of Rey*, 2020 U.S. Dist. LEXIS 141089, at *10, and thus excludes the evidence undisclosed during discovery for the purposes of the summary judgment motion pursuant to Federal Rule of Civil Procedure 37(c)(1).

Similarly, the Defendant avers that on June 29, 2018, PRASA's then-Executive Director of Environmental Compliance, Health, and Occupation wrote to EPA officials "referencing a phased approach to certain provisions of the 2015 [Consent Decree]. This approach was necessitated by PRASA invoking the force majeure protection under Section XXVII paragraph 107 of the CD, due to the successive impacts of Hurricanes Irma and María." DSMF ¶ 10 (citing *PRASA's Second Summ. J.*

### 4.    Sewer Overflows and Notice to PRASA

On September 25, October 17, November 3, and November 4 of 2018, Ms. Cebollero witnessed four separate overflow events from the sewer system at 10th Street in Villa Nevarez.[19]  DSMF ¶ 11; PRDSMF ¶ 11.  Further, in 2018, there was

---

*Mot.*, Attach. 13, *PRASA Letter to EPA*) (citation corrected).  Ms. Cebollero again denies and disputes this statement on the basis that PRASA had not previously disclosed this communication.  PRDSMF ¶ 10.  PRASA responds with the same publicly available and extrinsic reference arguments.  DRDSMF at 4-5.  For the reasons previously explained, the Court concludes Ms. Cebollero has the better argument in the dispute over this statement.  As the moving party, PRASA bears the burden of supporting its statements of fact with evidence in the record.  FED. R. CIV. P. 56(c)(1)(A).  Its failure to disclose its exhibits during discovery interferes with Ms. Cebollero's ability to respond to its claims, the fault for which lies squarely with PRASA.  As such, in the interest of fairness, the Court will not consider evidence which was not disclosed during the discovery period.  FED. R. CIV. P. 37(c)(1).

[19]    DSMF ¶ 11 states: "While PRASA was still assessing with the EPA the extensive damages to its facilities by Hurricanes Irma and Maria; and specifically, during the months of September, October, and November 2018, Plaintiff, witnessed four (4) overflows at the Villa Nevarez 10th street manhole. (Exhibit [15 at 24:19-21, 25:18-24, 48:8-20]). The overflows did not occur near Plaintiff's house which is located at 18th Street in Villa Nevarez. (See Exhibit [15 at 14:17-20])."  DSMF ¶ 11 (internal citations fixed by Court).  Ms. Cebollero denies this statement, submitting that the first sentence is an unsupported inference and the second sentence substantially untrue because, while the Villa Nevarez property is located on 18th Street, she often used 10th Street to access her property.  PRDSMF ¶ 11.  PRASA concedes that Plaintiff used 10th Street but reiterates that she does not live there and that the effects of the hurricanes on PRASA's infrastructure were common knowledge.  DRDSMF at 11 (citing *id.*, Attach. 3, *Fiscal Year 2019 Consulting Eng'r's Rep. for [PRASA]* at 4:39-42).  Ms. Cebollero replies that the overflows are central to her allegations, clarifies that the releases were observed from three manholes rather than just one, and asserts that she was entitled to deny the entire statements based on the unsupported premise that the release occurred while PRASA was assessing the impacts of the hurricanes with EPA.  PSDSMF ¶ 11.

The Court determines Ms. Cebollero's denial functions as a qualification, as she does not dispute the four release events observed in September, October, and November of 2018.  On review of the record, Ms. Cebollero testified in her deposition as to personally witnessing sewage discharges on September 25, October 17, November 3, and November 4 of 2018.  *See Mot. Submitting Translated Exs.* (ECF No. 123) (*PRASA's Translated Exs.*), Attach. 1, *Taking of the Dep. of Ms. Natalia Inés Cebollero-Bertrán* at 48:8-20 (*PRASA's Cebollero Translated Dep. Tr.*).  However, the Court agrees with Ms. Cebollero that the exhibit cited by PRASA does not support the other assertions in the statement that these releases occurred while PRASA assessed impacts with EPA, that they occurred from a single manhole, or that, despite living on 18th Street rather than 10th, that the releases did not occur "near Plaintiff's house."  The cited exhibits contain no details on the geographic relationship between the location of the sewage releases and Ms. Cebollero's residence.  Therefore, the Court will deem admitted the dates and occurrence of the four release events in September, October, and November 2018, but will exclude the other unsupported assertions within this statement.

an illegal discharge of diesel from Centro Médico that reached the creek near her home.[20]  PSAMF ¶ L; DRPSAMF ¶ L.

On October 1, 2018, PRASA employee Roberto Martinez attended a meeting at the community library in Villa Nevarez to discuss the SSOs occurring at the 10th Street of Villa Nevarez and met Ms. Cebollero at that meeting.  PSAMF ¶ I; DRPSAMF at 12.  At that meeting, members of the Villa Nevarez community notified Mr. Martinez of continuing overflows.[21]  PSAMF ¶ J; DRPSAMF ¶ J.  Ms. Cebollero

---

[20]     PRASA does not object to this statement of fact but submits it "is unrelated to the facts alleged in the complaint and does not in any way negate PRASA's diligent prosecution of the Villa Nevarez SSOs."  DRPSAMF ¶ L.  At the summary judgment stage, a "court views the facts and draws all reasonable inferences in favor of the nonmoving party," *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 (1st Cir. 2011), but disregards "[c]onclusory allegations, improbable inferences, acrimonious invective, or rank speculation."  *Mancini v. City of Providence ex rel. Lombardi*, 909 F.3d 32, 38 (1st Cir. 2018) (quoting *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010)).  PRASA's contentions about relevance and its legal defense exceed the scope of "facts" and will be addressed, as necessary, in the Discussion section; the Court thus deems the fact admitted in full.

[21]     Ms. Cebollero states, in full, that "[i]n the meeting, the members of the Villa Nevarez community expressed to Roberto Martinez their complaints about the continuing overflows, and that the overflows were even clogging their sanitary toilets, causing sewage to spill even inside people's homes."  PSAMF ¶ J (citing *Pl.'s Summ. J. Opp'n*, Attach. 6, *Taking of the Dep. of Ms. Natalia Inés Cebollero-Bertrán* at 39-40 (*Pl.'s Cebollero Dep. Tr.*); *see also Mot. Submitting Translated Exs.* (ECF No. 142) (*Pl.'s Translated Exs.*), Attach. 2, *Taking of the Dep. of Ms. Natalia Inés Cebollero-Bertrán* at 39-40 (*Pl.'s Cebollero Translated Dep. Tr.*)).  PRASA objects to this statement on hearsay grounds, positing statements of fact cannot be based on "evidence that is inadmissible at trial."  DRPSAMF ¶ J (citing, e.g., *Vázquez v. López-Rosario*, 134 F.3d 28, 33 (1st Cir. 1998)).  However, Ms. Cebollero submits that this fact proves that PRASA was on notice of sewage overflows in the area, rather than seeking to prove the truth of the fact asserted.  *Pl.'s Summ. J. Opp'n* at 4.  In the District of Puerto Rico, statements of material fact must be "supported by pin cites to *admissible* evidence."  *See, e.g.*, *Portugues-Santa*, 614 F. Supp. 2d at 227 (citing P.R. LOC. R. 56(b), (c) & (e)) (emphasis added by Court).  The First Circuit has consistently supported the principle that statements offered for the purpose of establishing notice, rather than truth, are non-hearsay and thus admissible.  *See, e.g.*, *Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 346 (1st Cir. 1998) (hearsay rule does not bar out-of-court statement offered to prove notice); *Tuli v. Brigham & Women's Hosp.*, 656 F.3d 33, 41-43 (1st Cir. 2011) (out-of-court statements were permissibly introduced as non-hearsay because they "remained relevant for purposes of showing notice"); *Franchina v. City of Providence*, 881 F.3d 32, 50 (1st Cir. 2018).  The Court thus admits this proposed statement of fact with the clarification that the statements placed Mr. Martinez on notice of continuing overflows.

personally informed Mr. Martinez of sewer overflows in the 10th Street area at this meeting on October 1, 2018.[22]  PRDSMF ¶ 12; PSAMF ¶ K; DRPSAMF at 12.

On December 31, 2018, Plaintiff sent PRASA a notice of intent to sue, alleging seven overflow events from May to November 2019 at 10th Street in Villa Nevarez. DSMF ¶ 13; PRDSMF ¶ 13.  PRASA responded to the notice of intent on March 1, 2019, stating that the suit should be precluded by the 2015 Consent Decree which required PRASA to implement comprehensive measures to the entire Puerto Nuevo Regional Wastewater Treatment Plant.  DSMF ¶ 14; PRDSMF ¶ 14.  Ms. Cebollero filed her complaint in this Court on April 29, 2019.  DSMF ¶ 16; PRDSMF ¶ 16.

---

[22]    PRASA avers: "During the overflow events instead of quickly reporting them to PRASA for corrective action, plaintiff preferred to take photographs and videos of the overflows.  Plaintiff admitted that she did not notify PRASA for correction. (Exhibit [15 at 42:19-22])."  DSMF ¶ 12 (emphasis in original) (citation corrected).  Ms. Cebollero denies this statement, submitting that "[s]he amply testified that she notified the SSOs personally to Roberto Martinez of PRASA" and citing her deposition transcript.  PRDSMF ¶ 12 (citing *Pl.'s Cebollero Dep. Tr.* at 42:21-23, 44:14-16, 66:13-20; 68:24-25; 17:1-9; *see also Pl.'s Cebollero Translated Dep. Tr.* at 42, 44, 66, 68).  PRASA concedes that she reported some SSOs to PRASA engineer Mr. Martinez, but argues "it is no less true that said report occurred after the fact and during a meeting at the Lions Club."  DRDSMF at 12.  Ms. Cebollero replies by reiterating her position that she informed Mr. Martinez on October 1, 2018 and further disputes the statement's assertion that she "preferred" to "take photographs and videos" as unsupported by the record.  PSDSMF ¶ 12.

On review, the Court concludes PRASA's claim that Ms. Cebollero "preferred to take photographs and videos" and unqualified statement that "she did not notify PRASA for correction" are unsupported.  Ms. Cebollero's deposition reflects she notified PRASA on October 1, 2018, explaining "[s]he reported the overflow event, right, along with the previous information, right, because [she] did not have documentation to show evidence to the engineer, but [she] did verbalize an ongoing situation that was taking place on street 10, specifically during rain events."  *Pl.'s Corrected Translations,* Attach. 2, *Taking of the Dep. of Ms. Natalia Inés Cebollero-Bertrán* at 33-34 (*Corrected Cebollero Dep. Tr.*).  While PRASA contends their statement remains true insofar as the notification was made after the fact, their blanket statement that "Plaintiff admitted that she did not notify PRASA for correction" has been repudiated by the record.  Further, Ms. Cebollero submitted the fact that she "personally complained to Roberto Martinez about the SSOs in the 10th Street area" in PSAMF ¶ K, which PRASA admitted.  *See* DRPSAMF at 12.  Thus, the Court revises the statement to reflect the information in the record that Ms. Cebollero notified Mr. Martinez of the SSOs at the meeting on October 1, 2018.

### 5.    PRASA's Remedial Efforts

On April 22, 2019, PRASA conducted an inspection of several sewer lines in the Villa Nevarez system and performed a flushing of the Guttenberg Street manhole.[23]   DSMF ¶ 15.

Then, on May 17, 2019, PRASA added the location in Villa Nevarez identified by Plaintiff as a new Area of Concern location pursuant to the criteria listed in Section XII of the 2015 Consent Decree.   DSMF ¶ 17; PRDSMF ¶ 17.   At that time, PRASA notified EPA of its addition and sent a copy of the notice to Plaintiff's counsel.   DSMF ¶ 17; PRDSMF ¶ 17.   For each of the Areas of Concern, the status of compliance with the requirements of the 2015 Consent Decree is documented in the Bi-annual and Annual reports.    DSMF ¶ 18; PRDSMF ¶ 18.

After being added as Areas of Concern, PRASA inspected the sewer system at 10th Street, Gutenberg Street and Galileo Street in Villa Nevarez on the following dates in 2019: June 25, July 29, August 23, September 18, November 10, and December 10.[24]  DSMF ¶¶ 19, 21.  Also, in July 2019, PRASA performed a mechanical

---

[23]     PRASA avers: "On April 22, 2019, PRASA conducted a TV inspection of several sewer lines in the Villa Nevarez system including the lines and manholes. Also, a flushing was performed at the Guttenberg Street manhole. (See Rod Rodder report attached as Exhibit [16])."  DSMF ¶ 15.  Ms. Cebollero denies the statement, submitting PRASA has not previously proffered this argument and this communication was not disclosed or previously included in the record.  PRDSMF ¶ 15.  PRASA rejects Plaintiff's position, pointing out the exhibit was previously submitted as Attachment 5 to Docket No. 43.  DRDSMF at 5.  Ms. Cebollero concedes the exhibit is included on the record but argues it does not support the averment.  PSDSMF ¶ 15.  The Court's review of the Rod Rodder report notes it encompasses an inspection of the sanitary pipe system in Villa Nevarez and describes a flushing of the system at "Gutenberg and Foulton Streets."  *PRASA's Translated Exs.*, Attach. 2, *Rod Rodder Rep.* Based on this record, the Court deems the statement admitted in full.

[24]     PRASA avers: "PRASA scheduled the sewer system at streets 10 to Gutenberg and Galileo in Villa Nevare[z] for a monthly basis inspection and monitoring when the same were added to the areas of concern in the S2OMP. (Exhibit [19] Excerpts of 2019 Annual report at Appendix I, status of areas of concern at page 1-5)."  DSMF ¶ 19.  Ms. Cebollero contests the statement as not previously disclosed.

rodding cleaning in Villa Nevarez, focused on 10th Street to Guttenberg Street, which included some of the areas complained of by the Plaintiff.[25]  DSMF ¶ 20.

PRASA conducted eleven programmed inspections of the Area of Concern of Villa Nevarez 10th Street, Guttenberg Street and Galileo Street, in 2020; specifically, on January 21, February 6, March 5, May 18, June 29, July 13, August 10, September

---

PRDSMF ¶ 19.  PRASA responds that the information was shared with Plaintiff's counsel via email on April 1, 2024, as part of the discovery requests.  DRDSMF at 6 (citing *id.*, Attach. 1, *PRASA Email to Pl.*).  Ms. Cebollero concedes the information had been shared during discovery but maintains it was provided on April 16, 2024, rather than April 1, 2024.  PSDSMF ¶ 19.

Upon review of the attachments cited in support, the Court concludes PRASA disclosed the evidence during the discovery period and that the cited exhibit largely supports PRASA's statement.  The cited exhibit notes "PRASA shall inspect and monitor the sewer system at this area on a monthly basis" and records inspections performed in the area of "Villa Nevarez-Street #10, Gutemberg and Galileo" on June 25, July 29, August 23, September 18, November 10, and December 10 of 2019.  *PRASA's Second Summ. J. Mot.*, Attach. 19, *2019 Annual Rep. App. I* at 3.  Notably, there was no inspection performed in October 2019, making PRASA's averment regarding monthly scheduling technically inaccurate.  However, PRASA notes these six dates of inspection in DSMF ¶ 21 and cites to the same exhibit, which Plaintiff acknowledges she received but argues should be excluded as improperly numbered.  PSDSMF ¶ 21.  Therefore, the Court revises the statement to reflect the language of the exhibit but overrules Plaintiff's objection and deems the fact admitted as revised.

[25]     PRASA submits: "On July 2019, PRASA performed a mechanical rodding cleaning in Villa Nevarez Residential Development. The work focused on streets 10 to Gutenberg, that included some of the areas complained of by Plaintiff. (Exhibit [20] 2019 Annual report S2OMP Excerpt at page 3-14)."  DSMF ¶ 20.  Ms. Cebollero again denies the statement as undisclosed during discovery.  PRDSMF ¶ 20.  As with the previous statement, PRASA responds that the information was provided to Plaintiff's counsel on April 1, 2024 within the discovery period.  DRDSMF at 7 (citing *PRASA Email to Pl.*).  Ms. Cebollero concedes that the cited document was provided on April 16, 2024, but insists that neither the cited exhibit nor any other exhibit attached to PRASA's summary judgment motion supports this averment.  PSDSMF ¶ 20.  The Court determines that Attachment 20 to PRASA's motion for summary judgment states that, in July 2019, "PRASA performed mechanical rodding in Villa Nevarez Residential Development. The work focused on streets 10 to Gutenberg."  *PRASA's Summ J. Mot.*, Attach. 20, *2019 Annual Rep. Exec. Summ.* at 3-14.  Based on this evidence, the Court deems the statement of fact admitted in full.

9, October 6, November 18, and December 14.[26, 27]  DSMF ¶ 23.  PRASA conducted twelve additional inspections of the Area of Concern in both 2021 and 2022, respectively.[28]  DSMF ¶¶ 24, 25. Plaintiff's expert concluded:

> [The Villa Nevarez SSOs] are real, unresolved for decades, not formal-methodically investigated and attended, no effective engineering or administrative controls were in place or in plan or budgeted, best practices are not implemented and there was no evidence of enforcement actions to correct this specific situation, restore and maintain the chemical, physical and biological integrity of the Buena Vista Creek that is a tributary of Rio Piedras and Estuarine Bay of San Juan, a USA impaired water body, to comply with Clean Water Act goals in 33 U.S.C 1251(a) and Water Quality Standards.

---

[26]     PRASA states: "PRASA has kept conducting programed inspections to the area of concern of Villa Nevarez Street #10, Guttenberg and Galileo, as part of its diligent prosecution obligations in the CD. During the year 2020, PRASA conducted eleven (11) inspections of said area. Specifically on January 21, February 6, March 5, May 18, June 29, July 13, August 10, September 9, October 6, November 18, and December 14. (See Exhibit [21], Excerpts of 2020 Annual Report Appendix I page 1-4)." DSMF ¶ 23 (citation corrected).  As above, Ms. Cebollero responds that this document was never produced during discovery, PRDSMF ¶ 23, to which PRASA avers it was provided via email on April 1, 2024.  DRDSMF at 7 (citing *PRASA Email to Pl.*).  Ms. Cebollero concedes the information was provided.  PSDSMF ¶ 23.  In Attachment 21 to PRASA's motion for summary judgment, the 2020 Annual Report indeed lists the dates of inspection stated by PRASA as applicable to "Villa Nevarez-Street #10, Gutemberg and Galileo."  *PRASA's Summ J. Mot.*, Attach. 21, *2020 Annual Rep. Exec. Summ.* at I-4.  Based on this evidence, which Plaintiff concedes was provided during the discovery period, the Court admits this statement in full.

[27]     In DSMF ¶¶ 23-28, PRASA colors its statements of fact with the additional implications regarding the diligent prosecution of the 2015 Consent Decree.  *See, e.g.*, DSMF ¶ 23 ("as part of its diligent prosecution obligations in the [2015 Consent Decree]"); DSMF ¶¶ 24, 25 ("as part of its diligent prosecution of the [2015 Consent Decree].)"  On summary judgment, the Court does not accept "conclusory allegations."  *Mancini*, 909 F.3d at 38 (quoting *Ahern*, 629 F.3d at 54).  As diligent prosecution is a legal defense to a citizen suit, the Court does not accept PRASA's statements that its actions prove diligent prosecution as fact and will instead address this theory in its discussion of law.

[28]     Similar to the footnote 26, Ms. Cebollero disputes these statements of fact as not provided during the discovery period.  PRDSMF ¶¶ 24, 25.  In each case, PRASA responds that the documents were provided via email on April 1, 2024, DRDSMF at 8-9 (citing *PRASA Email to Pl.*), to which Ms. Cebollero replies the exhibit should be nonetheless excluded as misnumbered.  PSDSMF ¶ 24, 25.  In its review of the record, Attachment 22 to its motion for summary judgment lists the dates of inspections in 2021 as PRASA recites and Attachment 23 recites the list of inspections in 2022. *PRASA's Summ J. Mot.*, Attach. 22, *2021 Annual Rep. Exec. Summ.* at I-4-I-5; Attach. 23, *2022 Annual Rep. Exec. Summ.* at G-4.  For the same reasons explained in Footnote 26, the Court deems these statements of fact admitted in full.

PSAMF ¶ C.[29]

In her report, Ms. Siberón wrote a series of guideline questions to analyze the data and documentation provided by PRASA as proof of its compliance with the Consent Decree in ending the unauthorized SSOs in the Villa Nevarez area, to demonstrate that the problem of the ongoing SSOs persisted, that they occurred in both wet and dry conditions and not due to the Buena Vista Creek overflow, and that the problem was not permanently solved.[30]   PSAMF ¶ T.

---

[29]     PRASA objects to this statement of fact, alleging "it is based on 'conclusory allegations, improbable inferences, and unsupported speculation'" and citing First Circuit caselaw holding "[w]here an expert present 'nothing but conclusions — no facts, no hint of an inferential process, no discussion of hypotheses considered and rejected,' such testimony will be insufficient to defeat a motion for summary judgment." DRPSAMF ¶ C (quoting *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 92 (1st Cir.1993)).   Ms. Cebollero's sur-reply emphasizes Ms. Siberón's "ample experience" as an environmental engineer and asserts the conclusions were "derived by the examination of PRASA's documents" and "are based on evidence and logical inferences." *Pls.' Summ. J. Sur-reply* at 16-18.

    PRASA offers no concrete examples of why Ms. Siberón's testimony is unreliable or why her conclusions are unsupported by the evidence. The Court's review of the record shows Ms. Siberón provided a clear statement of her qualifications in her attached report, including her education, licenses and certifications, training, twenty-eight years of experience, and professional memberships. *Pl.'s Second Summ. J. Opp'n*, Attach. 1, *Taking of the Dep. of Ms. Geannette M. Siberón-Gonzalez* at 179-81 (*Siberón Dep. Tr. and Exs.*). Ms. Siberón continues to explain the documents she reviewed to reach her conclusions, which included, inter alia, communications between PRASA, EPA, and the Plaintiff; PRASA's SRCP and NPDES permit; visual inspection reports and customer complaints; PRASA's contractor's reports; PRASA's notifications to EPA and Villa Nevarez inspection reports; photographs of the alleged events, and public news articles regarding Villa Nevarez overflow events. *Id.* at 182, 219-24. She detailed her initial assessment and the subsequent investigation undertaken to confirm Plaintiff's allegations, *id.* at 188-90, 194-95, explained the applicable law and terms of the 2015 Consent Decree, *id.* at 196-97, 209, and identified flaws in the data she was provided by PRASA. *Id.* at 199-200. She continued to review PRASA's investigations of the SSOs, including root cause analysis, and considered potential causes of the SSOs and proposed remedial actions. *Id.* at 200, 203-05, 210-11. Finally, she compared all this information against "PRASA's allegations that [the] problem is attended" to reach her conclusions that PRASA's actions have been inadequate, explaining the lacking evidence that PRASA has remedied the overflow issues. *Id.* at 212 (capitalization altered). In light of the robust description of her methodology and the basis for her conclusions, the Court concludes Ms. Siberón's testimony, as cited by Ms. Cebollero in support of her statement of fact, is not "nothing but conclusions — no facts, no hint of an inferential process" as decried by the First Circuit in *Hayes*, 8 F.3d 88, and thus deems the proposed fact admitted in full.

[30]     Ms. Cebollero supports her statement of fact by citing Ms. Siberón's deposition and report, *Siberón Dep. Tr. and Exs.* at 152:15-21, 188-90; *see also Pl.'s Siberón Translated Dep. Tr.* at 152, and her own deposition at page 49, lines 4-8. However, page 49 was not included in the attached excerpts of Ms. Cebollero's deposition transcript, *see, generally, Pl.'s Cebollero Dep. Tr.*, nor did Plaintiff provide

In response to reports of unauthorized SSOs, PRASA does not always respond and sometimes responds days or weeks after the event, contrary to the SRCP's provisions.[31]   PSAMF ¶¶ D, E; DRPSAMF ¶¶ D, E.

---

page 49 in its remedial submission of translated exhibits as requested by the Court.  *See, generally, Corrected Cebollero Dep. Tr.*  Unable to consult Ms. Cebollero's deposition, the Court thus determines whether the citation to Ms. Siberón's deposition and report supports the statement of fact.

PRASA objects to the proposed statement by arguing that Ms. Siberón "is disguising as methodology a series of guide questions which she answered with incomplete information," and that Ms. Cebollero based "some or much of the information she provided . . . on assumptions and she has no real knowledge of some of the facts."  DRPSAMF ¶ T (citing *PRASA's Summ. J. Reply*, Attach. 8, *Taking of the Dep. of Ms. Natalia Inés Cebollero-Bertrán* at 47-53 (*PRASA's Reply Cebollero Dep. Tr.*); *see also Mot. Submitting Translated Exs.*, Attach. 3, *Taking of the Dep. of Ms. Natalia Inés Cebollero-Bertrán* at 47-53 (ECF No. 149) (*PRASA's Reply Cebollero Translated Dep. Tr.*)).  On the Court's review, Ms. Siberón's expert report indeed states the proffered statement of fact.  *Siberón Dep. Tr. and Exs.* at 188-90.  As explained in footnote 29, the Court has determined Ms. Siberón reliable and her conclusions well-supported, and thus will follow the First Circuit's directive that, on summary judgment, "courts must be cautious—except when defects are obvious on the face of a proffer—not to exclude debatable scientific evidence without affording the proponent of the evidence adequate opportunity to defend its admissibility," *Cortes-Irizarry v. Corporación Insular de Seguros*, 111 F.3d 184, 188 (1st Cir. 1997).  Further, PRASA's cited portion of Ms. Cebollero's deposition only refers to assumptions regarding overflow incidents in other areas, which are not the basis of this case or the disputed statement of fact, and also cuts off Ms. Cebollero mid-sentence, adding to the difficulty of evaluating the effect and relevance of Ms. Cebollero's statements.  *PRASA's Reply Cebollero Translated Dep. Tr.* at 47-53.  Viewing all facts and drawing all reasonable inferences in favor of the nonmoving party, *Ophthalmic Surgeons, Ltd.*, 632 F.3d at 35, the Court concludes PRASA's objection does not contradict Plaintiff's statement of fact and deems the fact admitted in full.

[31]   Ms. Cebollero submits that either PRASA fails to respond entirely or else responds days or weeks after the event, "[w]henever there is an unauthorized SSO reported."  PSAMF ¶ D (citing *Siberón Dep. Tr. and Exs.* at 80:3-23, 81:14-20; *see also Mot. Submitting Translated Exs.*, Attach. 1, *Taking of the Dep. of Ms. Geannette M. Siberón-Gonzalez* at 80-81 (*Pl.'s Siberón Translated Dep. Tr.*)).  PRASA denies this statement, pointing out Ms. Siberón based her conclusion "on information obtained by Ms. Cebollero from third parties."  DRPSAMF ¶¶ D, E.  As an initial matter, the Court concludes this objection does not justify excluding Ms. Cebollero's proposed fact, as First Circuit precedent clearly permits reliance on hearsay statements in forming an expert opinion.  *See United States v. Pérez-Vásquez*, 6 F.4th 180, 198 (1st Cir. 2021) ("'properly qualified experts whose work is based on reliable principles and methods may rely on inadmissible hearsay evidence in forming an expert opinion' as long as they 'relay[] that opinion, once formed, through their own testimony'" (quoting *United States v. Sandoval*, 6 F.4th 63, 86 (1st Cir. 2021)).

However, in reviewing Ms. Cebollero's citation in support of her proposed fact, the Court notes Ms. Siberón's deposition does not state PRASA failed to timely respond "whenever there is an unauthorized SSO reported," as Plaintiff submits.  Rather, her deposition states "[i]n these inspections, well, in many, Aqueducts, either didn't respond and visited the site, or when they visited the site they arrived several days later and not the. . . no, in 24 hours."  *Pl.'s Corrected Translations*, Attach. 1, *Taking of the Dep. of Ms. Ms. Geannette M. Siberón-Gonzalez* at 80 (*Corrected Siberón Dep. Tr.*); *see also Siberón Dep. Tr. and Exs.* at 186 ("As informed to me by Ms. Cebollero, some Villa Nevarez residents reported that PRASA did not respond to all the overflows events, and in the very few

PRASA personnel had difficulties notifying EPA of overflow events due to apparent problems with PRASA's communication systems; for this reason, they failed to report SSOs to EPA.[32]  PSAMF ¶ F.  PRASA's documentation does not show any SSO records demonstrating that it responded on the same day or within almost a twenty-four-hour timeframe as required by the 2015 Consent Decree, which mandates notification to EPA including information gathered during the event inspection.  *Id.*

Root cause information is essential to define the corrective and preventive actions to correct the release and is thus required to be included in notifications to EPA, as normally part of any SRCP following best practices and methods of incidents investigations.[33, 34]  PSAMF ¶ U.  PRASA's SRCP complies with such best practices

---

occasions that they did arrive to the field, were days later when the reported overflows were over").  In contrast, PRASA's assertion is confirmed by the statement of PRASA engineer José Martí, who testified that PRASA responded to a June 12, 2020 report with an inspection on June 13, 2020, within 24 hours of the report.  *See Pl.'s Second Summ. J. Opp'n*, Attach. 2, *Taking of the Dep. of Eng. José Martí-Carvajal* at 81:1-3 (*Martí Dep. Tr.*).  The Court thus qualifies the statement of fact to reflect that PRASA did not fail to timely respond to every reported SSO event.

[32]   Ms. Cebollero supports her statement by citing Ms. Siberón's report.  *Siberón Dep. Tr. and Exs.* at 186.  PRASA objects to this statement of fact on the ground that "it is based on Ms. Siberón's unsupported conclusions and inferences based on information obtained by Ms. Cebollero from third parties who are unrelated to PRASA."  DRPSAMF ¶ F.  As discussed in footnote 29, Ms. Siberón's expert testimony is well-supported and logical, and experts are permitted to rely on hearsay evidence to form their conclusions.  The Court thus admits the statement in full.

[33]   PRASA admits this statement of fact, while adding that its SRCP "complies with the best practices and methods as formulated in this supplemental response."  DRPSAMF ¶ U.  Plaintiff does not address this qualification in her sur-reply and the Court thus deems the fact, as qualified by PRASA, admitted in full.

[34]   Ms. Cebollero also submits that "[t]he evidence shows that PRASA is not promptly responding and implementing interim measures, containment, mitigation, notifications to public and EPA. And cleaned-up to reduce public nuisance."  PSAMF ¶ W (citing *Siberón Dep. Tr. and Exs.* at 30, 41, 56-57).  PRASA objects to this fact, arguing it should be excluded as a conclusory assertion about ultimate legal issues.  DRPSAMF ¶ W.  On the Court's review, the pages of Ms. Siberón's report cited by Plaintiff do not support this statement of fact.  These pages discuss root cause investigation and analysis and include photos of the alleged overflows.  *Siberón Dep. Tr. and Exs.* at 194, 205, 220-21.  This does not

and methods. DRPSAMF ¶ U. PRASA does not conduct root cause analysis, because it stated that "[the root cause analysis is] not required by law. PSAMF ¶ V; DRPSAMF at 12.

PRASA's actions did not eliminate the unauthorized SSOs and did not include 10th Street.[35] PSAMF ¶ M. The objective of the Consent Decree and the National Pollutant Discharge Elimination System (NPDES) permit is to end the unauthorized SSOs, which are violative of the Consent Decree, the permit, and the CWA, but were ongoing and unsolved by 2018 and 2019.[36] PSAMF ¶ N. The information provided

_____

support Plaintiff's contentions regarding prompt response and measures taken, nor is it a reference to public nuisance. The Court takes seriously its obligation at summary judgment to exclude conclusory allegations, *Mancini*, 909 F.3d at 38 (quoting *Ahern*, 629 F.3d at 54), including the First Circuit's instruction that "summary judgment cannot be defeated by an expert's conclusory assertion about ultimate legal issues." *Bowen v. Manchester*, 966 F.2d 13, 18 n. 16 (1st Cir. 1992). The Court declines to admit Plaintiff's proposed fact.

[35]    In support, Ms. Cebollero cites Ms. Siberón's deposition and report. *Siberón Dep. Tr. and Exs.* at 111:8-23; *see also Corrected Siberón Dep. Tr.* at 111. PRASA denies this statement of fact, again asserting Ms. Siberón cited statement is an unsupported, conclusory assertion and thus should be excluded at summary judgment. DRPSAMF ¶ M. She clearly articulated the basis for her conclusion at deposition, as shown in the colloquy "Q. What is the specific defect in the sewer system you were able to confirm as unresolved, which has remained so for decades? A. Sanitary sewage management has not been eliminated . . .. this has been ongoing throughout the years it has not been stopped; it has not been resolved. If you look, there is proof from 2019, [] and then you see it has not been resolved." *Pl.'s Siberón Translated Dep. Tr.* at 111. The evidence she relied on to form her opinion, including PRASA's own documents, are listed in her report. *See Siberón Dep. Tr. and Exs.* at 182. For the reasons explained above, including in footnote 29, the Court accepts Ms. Siberón's expert opinions for the purposes of this motion as based on her experience and expertise, and thus deems the statement admitted.

[36]    In support, Ms. Cebollero cites Ms. Siberón's deposition testimony. *Siberón Dep. Tr. and Exhs*, at 111:1-25; *see also Corrected Siberón Dep. Tr.* at 111. PRASA "agrees with the assertions about the objective of the [2015 Consent Decree] and NPDES permits" and "also admits that some SSOs occurred during years 2018 and 2019." DRPSAMF ¶ N. However, PRASA nonetheless objects to the statement of facts based on the "unsupported speculations" of Ms. Siberón. *Id.* (citing *PRASA's Summ. J. Mot. Reply*, Attach. 5, *Taking of the Dep. of Ms. Geannette M. Siberón-Gonzalez* at 11:7-12 (*PRASA's Siberón Dep. Tr.*); *see also Mot. Submitting Translated Exs.*, Attach. 2, *Taking of the Dep. of Ms. Geannette M. Siberón-Gonzalez* at 11 (ECF No. 149) (*PRASA's Siberón Translated Dep. Tr.*). In this exchange, Ms. Siberón answers questions the support for her conclusion that PRASA has not reached the goal of eliminating unauthorized SSOs; she explains that PRASA has not provided statistical evidence of an increase or decrease in SSOs, such that she cannot conclude they have achieved the goal of the 2015 Consent Decree. *PRASA's Siberón Translated Dep. Tr.* at 11. The Court concludes this exchange does

to Ms. Cebollero by PRASA did not demonstrate that it took corrective actions or implemented any projects to end the SSOs and, further, indicated PRASA conducted no post-remedial investigation with root cause analysis which could prevent more SSOs as required by the 2015 Consent Decree.[37]  PSAMF ¶ P.

---

not disprove Ms. Cebollero's statement of fact, which does not take a position on whether SSOs have increased or decreased but merely were ongoing in 2018 and 2019, and further evidence in Ms. Siberón's report explains the basis for her conclusion that SSOs occurred in 2018 and 2019.  *See Siberón Dep. Tr. and Exs.* at 55-60.  For the reasons articulated in footnote 29, and because the cited portion of the transcript does not definitely prove PRASA's assertion that the statement is false, the Court deems this statement admitted.

[37]    Ms. Cebollero again supports this statement of fact with testimonial evidence from Ms. Siberón's deposition.  *Siberón Dep. Tr. and Exs.*, at 118; *see also Corrected Siberón Dep. Tr.* at 118.  PRASA disputes this statement, submitting Ms. Siberón "did not review PRASA's S2OMP which reflect PRASA's status of compliance with the CD requirements for the areas of concern."  DRPSAMF ¶ P.  The statement of fact does not reference the S2OMPs, and further, Ms. Siberón's report clearly establishes the documents she relies on to form her conclusion.  *See Siberón Dep. Tr. and Exs.* at 182.  Additionally, the fact is qualified by "information provided by PRASA" and Ms. Siberón's report clearly states that PRASA did not provide copies of the Sanitary Sewer Overflows Prevention Plan for inclusion in her report.  *See Siberón Dep. Tr. and Exs.* at 204.  For the reasons explained in footnote 29, the Court deems this fact admitted.

However, Ms. Cebollero further asserts "[t]he implementation of protocols to respond to unauthorized SSOs does not comply with the best practices as per the Sanitary System Operation and Maintenance Plan [S2OMP]."  PSAMF ¶ O (citing *Siberón Dep. Tr. and Exs.* at 117:1-20; *see also Corrected Siberón Dep. Tr.* at 117).  PRASA again objects on the basis that Ms. Siberón did not review PRASA's S2OMP.  DRPSAMF ¶ O (citing *PRASA's Siberón Dep. Tr.* at 12-13).  On review, the Court concludes PRASA correctly points out that the S2OMPs are not listed in the "Information Considered" section of Ms. Siberón's report, nor the additional "Information Considered in the Opinion" section.  *PRASA's Siberón Dep. Tr.* at 12-13.  Without stating that she reviewed the best practices described in the S2OMPs, the Court cannot see how Ms. Siberón could have reasonably concluded that PRASA's action "does not comply with the best practices as per the [S2OMP]," as asserted by Plaintiff.  The Court thus declines to admit this fact.

Ms. Cebollero also contends "[t]here is a glaring absence of specific actions under Capital Infrastructure Project 5 years Master Plan, funds allocations in budget, or designated project targeting the elimination of SSOs of reference in Villa Nevarez."  PSAMF ¶ Q (citing *Siberón Dep. Tr. and Exs*, at 125:1-8, 185; *see also Corrected Siberón Dep. Tr.* at 125).  PRASA objects to this statement, directing the Court to its stated initiatives to comply with CWA parameters for wastewater treatment plant discharges and to manage and reduce combined sewer overflows, as articulated in its Five Year Strategic Plan: 2021-2025.  DRPSAMF ¶ Q (citing *PRASA's Summ. J. Reply*, Attach. 6, *Five Year Strategic Plan: 2021-2025* at 125).  PRASA objects to this statement, directing the Court to its stated initiatives to comply with CWA parameters for wastewater treatment plant discharges and to manage and reduce combined sewer overflows, as articulated in its Five Year Strategic Plan: 2021-2025.  DRPSAMF ¶ Q (citing *PRASA's Summ. J. Reply*, Attach. 6, *Five Year Strategic Plan: 2021-2025* at 19-20).  On review, the Court agrees that the Five Year Strategic Plan includes designated projects to address the SSOs in the Villa Nevarez area, including "complete reconnaissance and sanitary sewer cleaning for wastewater pipes of less than 30-inch diameters in high priority areas by June 2021 within the [Puerto Nuevo Wastewater Treatment Plan (PNWWTP)]."  *Five Year Strategic Plan: 2021-2025* at 20.  The Court concludes PRASA has sufficiently supported its

In response to the filing of the complaint, PRASA added 10th Street in Villa Nevarez to the Consent Decree as an Area of Concern in May 2019 but did not include evidence of the evaluations or any corrective action or meetings with the community to discuss the final and corrective actions, engineering assessments results, and mitigation plans.[38]   PSAMF ¶ R.   PRASA did not perform or retain services for scheduled preventive maintenance and monitoring and the engineering studies completed by consulting engineering firm CMA did not cover Villa Nevarez.   *Id.*   The visual inspections and maintenance records have significant deficiencies and the failure in data quality and integrity.   PRASA had a gap of compliance with the CWA and the inclusion of 10th Street in Villa Nevarez as an Area of Concern has not resolved the situation.   *Id.*   No evidence of payment of automatic fines for noncompliance was presented and most of the records indicate preventive action was neither implemented nor coordinated.   *Id.*

---

denial of Ms. Cebollero's assertion of "a glaring absence" of such projects and excludes this proposed fact from the summary judgment record.

[38]   Ms. Cebollero supports her statement of fact by citing Ms. Siberón's expert report.   *Siberón Dep. Tr. and Exs.* at 192.   PRASA disputes this statement of fact on the ground that Ms. Siberón did not review the S2OMP to determine PRASA's compliance with the 2015 Consent Decree's requirements for Areas of Concern.   DSPSAMF ¶ R (citing *PRASA's Siberón Dep. Tr.* at 12-13).   As discussed in footnote 3737, Ms. Siberón's report explains the documents she relies on to form her conclusion and clearly states that PRASA did not provide a copy of the S2OMP for inclusion in her report.   *See Siberón Dep. Tr. and Exs.* at 182, 204.   The Court therefore does not find her lack of review of the S2OMP fatal to this statement of fact.   Further, PRASA avers "[i]t should be added that PRASA invoked the force majeure clause to avoid the payment of fines."   DSPSAMF ¶ R.   PRASA provides no citation for this statement and, as explained in footnote 18, the evidence cited in support of DSMF ¶¶ 9 and 10 have been excluded pursuant to Federal Rule of Civil Procedure 37(c)(1) as not disclosed during discovery. District of Puerto Rico Local Rule 56 instructs "the reply shall support each denial or qualification by a record citation."   D.P.R. LOC. R. 56(d).   Based on PRASA's failure to comply with the terms of this rule, the Court declines to admit the Defendant's proposed qualification.

### 6.    Effects of Sewage Overflows

The unauthorized SSOs enter the stormwater sewer system at the manhole located on 10th Street and affect the Buena Vista Creek through the storm sewer.[39] PSAMF ¶ G.  The unauthorized SSOs happening at 10th Street and elsewhere in the community had an impact on Buena Vista creek and risked environmental harm to the exposed population.[40]  PSAMF ¶ H.

---

[39]    Ms. Cebollero supports her statement of fact by citing statements from Ms. Siberón's deposition.  *Siberón Dep. Tr. and Exs.* at 92:1-23; *see also Corrected Siberón Dep. Tr.* at 92.  PRASA objects to this statement of fact, arguing that Ms. Siberón bases her conclusion "on the knowledge of the Villa Nevarez Sewer System she acquired as a child while riding her bicycle around the area." DRPSAMF ¶ G (citing *PRASA's Siberón Dep. Tr.* at 93:1-16, 94:3-7; *see also PRASA's Siberón Translated Dep. Tr.* at 93-94).  Ms. Cebollero responds that Ms. Siberón testified rather that her prior knowledge "allowed her to identify the site to conduct her inspection for her report and testimony," not that she relied on this knowledge to form her conclusion.  *Pl.'s Summ. J. Sur-reply* at 22-23.

The Court's review of Ms. Siberón's deposition transcript resolves this dispute in Plaintiff's favor.  Ms. Siberón testified that she relied on her prior knowledge of the area in determining where to inspect.  *See PRASA's Siberón Translated Dep. Tr.* at 94 ("Q. Should I understand that your opinion is based on what you observed there when you were little, when you lived there? A. The knowledge I developed when I was little in order to go see where to inspect").  Ms. Siberón's deposition further explains that she reached her conclusion based on photographs of the discharge events, aerial pictures, and her visual inspection in the field.  *See Corrected Siberón Dep. Tr.* at 92.  The Court concludes her expert opinion is not based only on the knowledge of the area she acquired as a child, as PRASA asserts, and thus deems the statement admitted in full.

[40]    PRASA denies this proposed fact, arguing Ms. Siberón failed to provide her risk assessment methodology or to explain her conclusions during deposition.  DRPSAMF ¶ H (citing *PRASA's Siberón Dep. Tr.* at 93:1-94:25, 103:1-104:11; *see also PRASA's Siberón Translated Dep. Tr.* at 103:1-104:11). Ms. Cebollero responds that Ms. Siberón did apply an accepted risk assessment methodology and did not believe it necessary to prepare a separate report.  *Pl.'s Summ. J. Sur-reply* at 23.  Ms. Siberón's deposition explains that she conducted a risk assessment analysis and that "the basis is all the evidence . . . that PRASA provided."  *PRASA's Siberón Translated Dep. Tr.* at 106.  She explained that she "identified what the health risks are, documented and evidence from the different scenarios; which scenarios are the ones that will be observed; what the level of, in other words, if there can be exposure, in terms of distance and those affected, what they call 'receptors'; and then what the probability and the frequency in which that may be occurring."  *Id.* at 104-05.  Her attached report further articulates her basis for identifying risks posed by the SSOs to the creek and human population.  *See Siberón Dep. Tr. and Exs,* at 198, 208.  In light of the First Circuit's directive that, on summary judgment, "courts must be cautious -- except when defects are obvious on the face of a proffer -- not to exclude debatable scientific evidence without affording the proponent of the evidence adequate opportunity to defend its admissibility," *Cortes-Irizarry,* 111 F.3d at 188, and to view all facts in favor of the nonmovant, *Ophthalmic Surgeons, Ltd.,* 632 F.3d at 35, the Court deems the fact admitted.

### 7.    Modification to the 2015 Consent Decree

On March 22, 2024, a First Modification of the 2015 Consent Decree was filed in civil case 15-2283 (JAG).[41]  DSMF ¶ 28.  The 2015 Consent Decree was modified because of PRASA's continued non-compliance with its terms and conditions due to force majeure events.[42]  PSAMF ¶ S; DRPSAMF ¶ S.  EPA and PRASA agreed to modify the 2015 Consent Decree after an extensive evaluation of the condition of PRASA's finances and infrastructure.  DRPSAMF ¶ S.

## IV.    STANDING CHALLENGE RAISED VIA PRASA'S MOTION IN LIMINE

### A.    The Parties' Positions

#### 1.    PRASA's Motion in Limine

PRASA asserts that, for the purposes of the present suit, Ms. Cebollero must demonstrate "not injury to the environment, but injury to the plaintiff," and argues "Plaintiff has no evidence to support her alleged standing to sue under the citizen[] suit provision of the CWA."  *PRASA's Mot. in Lim.* at 2-3 (capitalization corrected) (emphasis removed).  In contesting Ms. Cebollero's standing to bring a citizen suit,

---

[41]    Ms. Cebollero's only objection to this statement of fact is its framing "[a]s part of EPA's diligent prosecution of the 2015 [Consent Decree] obligations."  PRDSMF ¶ 28.  As previously discussed, the Court does not admit this allegation about actions constituting diligent prosecution legal conclusions as beyond the scope of material facts and unsupported by the record.  The Court deems the rest of the statement admitted in full.

[42]    PRASA admits its inability to comply with deadlines and goals of the 2015 Consent Decree, but asserts these failures were due to force majeure events.  DRPSAMF ¶ S.  It also adds that "[a]fter extensive evaluation of PRASA's fragile economic and infrastructure, the EPA and PRASA agreed to modify the [2015 Consent Decree]."  *Id* (citing *PRASA's Summ. J. Reply*, Attach. 7, *First Modification of Consent Decree*).  Plaintiff does not address this qualification in her sur-reply; the Court thus deems the fact, along with the qualification, admitted.  *See, generally, Pl.'s Summ. J. Sur-reply; see also* D.P.R. Loc. R. 56(e) ("Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted").

PRASA addresses each of the three elements of Article III standing: injury in fact, causation, and redressability.

First, PRASA avers Ms. Cebollero "no longer resides near the affected area" such that "she cannot personally experience the effects of the alleged pollution." *Id.* at 3. PRASA argues Plaintiff therefore fails to establish "a present injury which is not conjectural or hypothetical." *Id.* at 3 & n.2 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883-89 (1990)) (emphasis removed). "A plaintiff cannot base standing on past exposure to harm without demonstrating present injury," PRASA writes, submitting that "[a] plaintiff must continue to be affected by the challenged action to maintain standing throughout the litigation." *Id.* at 3 n.2 (emphasis removed). By relocating her primary residence, PRASA argues Ms. Cebollero "effectively terminated her connection to the alleged harm, thereby extinguishing her ability to demonstrate a present case or controversy." *Id.* (citing, e.g., *Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49 (1987)). PRASA insists that any legal interest as a property owner in the affected area would be insufficient "to satisfy the requirement for a concrete and particularized injury that is present, not speculative." *Id.* at 4 (emphasis removed). Further, PRASA says, Ms. Cebollero has submitted no "expert testimony to support her claims of aesthetic damage." *Id.*

Next, PRASA extends its argument to the causation element of the standing analysis, claiming that "[t]he plaintiff's absence from the affected area undermines any claim of direct causation." *Id.* Further, PRASA submits Plaintiff's expert report "simply assumes that the sewage overflows on Villa Nevarez 10th Street affected the

plaintiff's property located at Villa Nevarez 18th street." *Id.* at 4 (citing *id.*, Attach. 1, *Pro. Env't Eng'r Rep.* at 3) (emphasis removed). "By omitting the critical analysis of the geographical relationship between the pollution source and the plaintiff's property, and failing to provide a scientifically supported methodology for the conclusions," PRASA argues the expert's opinions are "speculative, inadmissible and non-existent with respect to causation." *Id.* at 5.

Finally, PRASA asserts that "the Consent Decree between PRASA and EPA effectively precludes Ms. Cebollero from establishing the requisite redressability for standing," by providing "a comprehensive approach and resolution of the alleged environmental violations, including the imposition of stipulated penalties and the implementation of corrective measures." *Id.* (emphasis removed). Allowing Ms. Cebollero to pursue independent relief, PRASA says, would "undermine the authority of the EPA," "create unnecessary duplication of efforts," "lead to inconsistent and potentially conflicting results," and insists further that "awarding civil penalties to the Plaintiff would constitute a windfall and would serve no legitimate public purpose." *Id.* at 5-6.

Based on the foregoing, PRASA requests the Court "find that the Plaintiff lacks standing to pursue this action and order the dismissal of the complaint."[43] *Id.* at 6 (capitalization corrected).

---

[43]    PRASA's motion in limine continues to contest the admissibility of Ms. Siberon's testimony and report pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 n.7 (1993), *PRASA's Mot. in Lim.* at 6-13, as well as to seek the exclusion of "factual witnesses," *id.* at 14-16, and of photographs, videos, and other evidence. *Id.* at 16-17. However, as previously explained, the Court dismissed these evidentiary challenges without prejudice in its September 6, 2024 Status Order, instructing PRASA that it would be allowed to refile its motion on these issues, if necessary, after the rescheduling of trial. *Status Order* at 2.

### 2.    Ms. Cebollero's Opposition

Ms. Cebollero contests PRASA's arguments refuting her standing, describing them as "plainly speculative" and asserting that she has standing to bring her claim under the CWA's definition of "citizen." *Pl.'s Mot. in Lim. Opp'n* ¶ 3.

She avers first that PRASA does not dispute that, despite currently residing in New Jersey, she continues to own the property at 1072 18th Street in Villa Nevarez "close to where the concerned manholes where the [sanitary sewer overflows (SSOs)] alleged in the complaint are located" and, "[b]y the time the 33 U.S.C. §1365(b)(1)(A) Notice was sent, Plaintiff was living in her dwelling located at 1072 of 18th Street [and] . . .. [t]he overflows were not only affecting Plaintiff, but most members of the community as well." *Id.* ¶ 4.  In response to the overflows, Ms. Cebollero notes that she joined a community task force, notified PRASA of the overflows occurring on 10th Street, and discussed the issue with Mr. Martinez, PRASA's Regional Metro Director, on October 1, 2018.  *Id.*  She submits she "has been a member of the Villa Nevarez community for many years, and was deeply affected by the overflows for at least[] the years 2018, 2019, and 2020, before she had to relocate due to her husband['s] military duties." *Id.* ¶ 6.  Continuing, Ms. Cebollero contends "she is still a property owner of a residence close to the overflowing manholes of concern and right behind the Buena Vista Creek which was affected by the overflows," which she claims is sufficient to satisfy the injury in fact element of constitutional standing.  *Id.* ¶ 8 (emphasis omitted).

Ms. Cebollero also argues that the CWA's citizen suit provision "allows 'any citizen' to commence a civil action against individuals or entities alleged to be in

violation of the Act." *Id.* ¶ 7 (citing *Johnson v. 3M*, 563 F. Supp. 3d 1253 (N.D. Ga. 2021); *Puget Soundkeeper All. v. Tacoma Metals, Inc.*, 2008 U.S. Dist. LEXIS 60741 (W.D. Wash. 2008)). She submits this broad definition extends to "property owners who are directly affected by environmental issues such as contamination, as long as they meet the standing requirements of showing an injury which is actual or imminent, causally connected to the defendant's conduct, and likely to be redressed by a favorable court decision." *Id.* (citing, e.g., *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).

Turning to PRASA's challenge that she has not satisfied the causation element, Ms. Cebollero contends her injury may be fairly traced to PRASA for its failure to control the overflows, which she avers "continued unabated for hours, even for days[,] and the raw sewage was affecting the Buena Vista Creek which flows right next to the backyard of her property." *Id.* ¶ 9. Continuing to the redressability element, Ms. Cebollero submits that holding PRASA to the terms and applicable penalties of the 2015 Consent Decree would redress her injuries. *Id.* ¶ 10.

Finally, Ms. Cebollero responds directly to PRASA's assertion that her relocation undermines her standing to bring suit. She notes that the Supreme Court nowhere mandated a continuous physical presence to have Article III standing in *Lujan v. Defenders of Wildlife*, 504 U.S. at 561, and quotes a recent Supreme Court decision explaining injury in fact as "the plaintiff must show a predictable chain of events leading from the government action to the asserted injury—in other words, that the government action has caused or likely will cause injury in fact to the

plaintiff." *Id.* ¶ 11 (quoting *Food & Drug Admin. v. All. for Hippocratic Med.,* 602 U.S. 367, 385 (2024)) (citation corrected and pincite added) (cleaned up) (emphasis removed).  Ms. Cebollero continues that the live controversy requirement does not demand a plaintiff remain in the affected area; rather, she says, "[t]he key is whether she can show a continuing, present adverse effect or a credible threat of imminent harm resulting from the defendant's actions." *Id.* ¶ 12.  In the present case, Ms. Cebollero submits she meets this bar because her property is located adjacent to the affected Buena Vista Creek, "the overflows from 2018 and 2019 affected her, personally, [and] the potential for more overflows affects her in her property." *Id.*  In support, she cites Supreme Court caselaw granting standing for "various types of injuries, including procedural and associational injuries, which may not require the plaintiff's physical presence in the affected area." *Id.* (citing *Gill v. Whitford*, 585 U.S. 48 (2018); *Babbitt v. UFW Nat'l Union*, 442 U.S. 289 (1979)).

### 3.    PRASA's Motion in Compliance and Opposition to Plaintiff's Motion to Amend

In submissions subsequent to oral argument, PRASA supplemented its standing challenge and expanded upon its arguments in support of its diligent prosecution defense.  First, in its motion in compliance with the Court's order, PRASA asserts that, because Ms. Cebollero no longer resides at the affected property, her standing to bring her claim hinges solely on property ownership.  *PRASA's Compliance Mot.* at 7.  Ownership near an affected area alone is not sufficient, PRASA argues, claiming a plaintiff must "establish how their ownership has led to actual, imminent, and particularized harm—whether through economic loss,

property devaluation, or environmental degradation that directly impacts their land." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1991); *Laidlaw*, 528 U.S. 167). Further, PRASA asserts that standing must be maintained throughout the litigation process. *Id.* at 7 n.5 (citing *Laidlaw*, 528 U.S. 167; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)). In Ms. Cebollero's case, PRASA contends, she no longer resides near the allegedly affected area and thus her claims have been mooted because her personal interest no longer exists and she has not shown she has a credible intent to return. *Id.* at 8-9 & n.8 (citing *Laidlaw*, 528 U.S. at 184; *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 68 n.22 (1997); *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)). PRASA also presents novel arguments, based on evidence not previously in the record, that Ms. Cebollero in fact does not have an ownership interest in the Villa Nevarez property, but that the property is owned exclusively by her husband. *Id.* at 8-9.

Next, PRASA returns to its invocation of the diligent prosecution defense, averring the Court is entitled to independently determine whether PRASA's and EPA's actions in this case satisfy the diligent prosecution bar, rather than deferring to an agency's interpretation, pursuant to *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). *Id.* at 12. PRASA reasserts its arguments that the diligent prosecution bar applies to Plaintiff's CWA citizen suit because there was a prior federal consent decree involving compliance obligations, stipulated penalties, and ongoing oversight. *Id.* at 13-14. Citing portions of the 2019 and 2020 CERs not previously in the record, PRASA contends that it was "protected [] from penalties

relating to sanitary sewage overflows" from March 1, 2018 until August 31, 2019, *id.* at 15 (citing *id.*, Attach. 9, *Fiscal Year 2019 [CER] for [PRASA]*, and from March 1, 2019 to August 31, 2020. *Id.* (citing *id.*, Attach. 10, *Fiscal Year 2020 [CER] for [PRASA]* (citation corrected)).[44] PRASA continues that PRASA responded to Ms. Cebollero's notice of intent by adding the identified areas to the "Areas of Concern" addressed in the 2015 Consent Decree, evidencing ongoing enforcement compliance. *Id.* at 16. This evidence, PRASA says, demonstrates the 2015 Consent Decree was being enforced in response to Plaintiff's claims and thus her citizen suit is barred by diligent prosecution. *Id.*

Separately, in its opposition to Ms. Cebollero's motion to amend her complaint, PRASA elaborates further on its standing challenge, arguing that the amended complaint "suffers from the same fundamental deficiencies, failing to establish standing and lacking sufficient factual allegations to support a viable claim." *PRASA's Am. Compl. Opp'n* at 3. First, PRASA points out that Ms. Cebollero's assertion that "her alleged injuries fall within the zone of interests the Clean Water Act was designed to protect," while relevant to prudential standing to bring a claim under this particular statute, is inapposite to establishing Article III standing. *Id.* at 7-8 (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014)). Second, PRASA contends the injury claimed in her amended complaint remain inadequate to prove standing despite being filed after the parties proceeded

---

[44] PRASA misnumbers its cited attachments as Exhibits 8 and 9, respectively. On ECF, the 2019 CER is Attachment 9 and the 2020 CER is Attachment 10 to PRASA's motion in compliance. The Court corrects these citations in this order for the purpose of accuracy.

with discovery, supporting its position by addressing particular allegations in the amended complaint. *Id.* at 8.

Beginning with Ms. Cebollero's claim that "it was noticed that sewage discharges occurred near Ms. Cebollero's home at the following GPS coordinates . . .. It was also noticed that these coordinates originated foul smells in her property's backyard and that these discharges were recurring and continuing at the time of the Notice," *id.* (quoting *Am. Compl.* ¶ 13), PRASA argues the allegation "lacks a clear observer, timeframe, or basis in personal knowledge, rendering it speculative and insufficient" and adds that "there is no causal link between PRASA and the alleged foul odors, nor any factual support, such as testing or official reports, to substantiate the claim." *Id.* at 8-9. PRASA continues by contesting Ms. Cebollero's claims of, inter alia, an "invasion of a legally protected interest," that the discharges "exposed her and her children to diseases, foul odors, and other health threats," that her property was "injuriously affected . . . causing her property to be less enjoyable due to foul odors" and continues to be so affected, that her "aesthetic or recreational interests" have been affected, and that her property is "less enjoyable," in each case asserting Ms. Cebollero's claims are speculative and present legal conclusions, not factual allegations. *Id.* at 9-15 (quoting *Am Compl.* ¶¶ 14-21).

PRASA insists a plaintiff "must maintain a personal stake in the outcome throughout the litigation or the controversy becomes moot and unjusticiable despite the court's initial retention of subject matter jurisdiction." *Id.* at 16 (citing *Matos v. Clinton Sch. Dist.*, 367 F.3d 68, 71 (1st Cir. 2004)). Distinguishing the concepts of

standing and mootness, PRASA quotes the First Circuit's explanation of mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Id.* at 16-17 (quoting *Becker v. Fed. Election Comm'n*, 230 F.3d 381, 387 n.3 (1st Cir. 2000)).  If a party no longer has a legally cognizable interest in the case's outcome, PRASA avers, a court must dismiss the case as moot.  *Id.* at 17 (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

### 4. Ms. Cebollero's Response to PRASA's Motion in Compliance

In response to PRASA's motion in compliance, Ms. Cebollero argues, in relevant part, that the CWA citizen suit provision permits lawsuits by "property owners who are directly affected by environmental issues such as contamination" who are able to establish their standing to bring suit.  *Pl.'s Compliance Resp.* ¶ 3.  Quoting the Supreme Court, Plaintiff avers "environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity."  *Id.* (quoting *Laidlaw*, 528 U.S. at 181 (in turn quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)) (citation corrected)).  An injury is concrete even if not physical or economic, Ms. Cebollero continues, pointing out that "proximity to environmental harm, economic loss, and personal injury establish a direct stake in the outcome."  *Id.* ¶ 5 (collecting federal cases outside the First Circuit) (emphasis removed).

42

Further, Plaintiff says, "[s]tanding does not require continuous residence"; rather, "[c]ourts have recognized economic harm and property devaluation caused by pollution as ongoing injuries that satisfy this requirement." *Id.* ¶ 6 (citing *Babbitt*, 442 U.S. 289) (emphasis removed). "If the Plaintiffs reside somewhere else, it does not automatically extinguish their standing," she insists, averring "[t]he key is whether they can show a continuing, present adverse effect or a credible threat of imminent harm resulting from the defendant's actions." *Id.* (citing *Babbitt*, 442 U.S. 289). Here, Ms. Cebollero argues she has demonstrated "ongoing contamination" and "PRASA's historical pattern of noncompliance," thereby satisfying her burden of proving a likelihood of continued harm. *Id.* ¶ 7 (citing *Borough of Upper Saddle River v. Rockland Cnty. Sewer Dist. # 1*, 16 F. Supp. 3d 294 (S.D.N.Y. 2014)) (emphasis removed). Ms. Cebollero supports her position by collecting federal cases in which courts concluded respective plaintiffs had successfully established their standing to bring suit. *Id.* ¶¶ 8-9 (citing, e.g., *Little Hocking Water Ass'n v. E.I. du Pont de Nemours & Co.*, 91 F. Supp. 3d 940 (S.D. Ohio, 2015); *Ohio Valley Env't Coal. v. Foal Coal Co., LLC*, 274 F. Supp. 3d 378 (S.D. W.Va., 2017); *S. Utah Wilderness All. v. United States DOI*, No. 2:23-CV-00804-TC-DBP, 2025 U.S. Dist. LEXIS 20644 (D. Utah Feb. 4, 2025)). Ms. Cebollero asserts "whether the Plaintiffs are or [are] not residents of their property do[es] not undermine their ability to establish an ongoing injury for standing purposes," averring "[n]owhere in the Supreme Court['s] decision in *Lujan* [does] the Court mandate[] that a Plaintiff maintain a continuous physical

43

presence in the affected area to have Article III standing." *Id.* ¶ 10 (emphasis removed).

Turning to the causation prong of the standing inquiry, Ms. Cebollero avers that the standard does not require absolute certainty but rather "a reasonable inference that the defendant's conduct contributed to the harm." *Id.* ¶ 11 (citing *Massachusetts v. EPA*, 549 U.S. 497 (2007)) (emphasis removed). Here, Ms. Cebollero asserts she personally witnessed and documented the sewage overflows and reported them to EPA. *Id.* Further, she says, the proximity of the overflowing manholes, located less than ten feet from Buena Vista Creek in Villa Nevarez, create a reasonable inference of causation, and PRASA has presented no alternative explanations that would break the causal chain. *Id.* Thus, Ms. Cebollero concludes she has shown her alleged injury is fairly traceable to the Defendant's conduct. *Id.* ¶ 12.

Finally, Ms. Cebollero insists her requested relief would redress her alleged harm. She directs the Court to *Laidlaw*, which held that, to be redressable, a property's value need not be restored completely, but only partially. *Id.* ¶ 13. Here, Plaintiff submits, an order from the Court compelling compliance with the CWA would reduce ongoing harm by preventing further environmental damage and corresponding property devaluation. *Id.*

### B. Legal Standard for Standing Challenge at Summary Judgment Stage

Article III of the United States Constitution restricts federal courts to hearing only "Cases" or "Controversies." U.S. CONST. art. III, § 2. To establish that there is

44

a justiciable case or controversy, a plaintiff must have standing to obtain the relief sought. *See Lujan*, 504 U.S. at 560. "Standing is a threshold issue in every federal case." *Me. Springs, LLC*, 2015 U.S. Dist. LEXIS 33259, at *12 (citing *Pagan*, 448 F.3d at 26) (stating that "[a] federal court must satisfy itself as to its jurisdiction, including a plaintiff's Article III standing to sue, before addressing his particular claims"). "To satisfy the 'irreducible constitutional minimum of standing,' Plaintiff must show (1) that they have suffered an injury in fact, (2) that the injury is fairly traceable to the [Defendant]'s allegedly unlawful actions, and (3) that 'it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Nulankeyutmonen Nkihtaqmikon v. Impson*, 503 F.3d 18, 26 (1st Cir. 2007) (quoting *Lujan*, 504 U.S. at 560-61).

According to the Supreme Court, an "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations, footnote, and quotation marks omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Me. Springs, LLC*, 2015 U.S. Dist. LEXIS 33259, at *13 (quoting *Lujan*, 504 U.S. at 561).

As a preliminary matter, and as the Court noted at oral argument, PRASA raises its standing arguments within a nominal motion in limine and yet asks the Court to dismiss Ms. Cebollero's complaint. *See PRASA's Mot. in Lim.* at 2-6. A motion in limine is an atypical vehicle for such a request; as the Supreme Court has explained, "standing generally is a matter dealt with at the earliest stages of

litigation, usually on the pleadings." *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 115 n.31 (1979). As such, standing challenges are typically brought as a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *See, e.g., Wiener v. MIB Grp., Inc.,* 86 F.4th 76, 82 n.8 (1st Cir. 2023) (recharacterizing the defendant's standing challenge pursuant to Rule 12(b)(6) as instead properly brought under Rule 12(b)(1)); *Mun. of San Sebastian v. Puerto Rico*, 89 F. Supp. 3d 266, 273 (D.P.R. 2015) ("A motion to dismiss for lack of standing is properly understood as a challenge to the reviewing court's subject-matter jurisdiction"); *Me. Ass'n of Interdependent Neighborhoods v. Comm'r, Me. Dep't of Hum. Servs.*, 747 F. Supp. 88, 91 (D. Me. 1990) ("The [defendant]'s motion to dismiss for lack of standing is an issue of subject matter jurisdiction . . . and thus it is properly made pursuant to Fed. R. Civ. P. 12(b)(1)") (internal citations omitted).

Here, PRASA challenges Ms. Cebollero's standing via a motion in limine filed after its motion for summary judgment. *Compare PRASA's Second Summ. J. Mot.* (filed May 31, 2024) *with PRASA's Mot. in Lim.* (filed August 2, 2024). The First Circuit has addressed such a scenario, explaining that "[t]o establish the[] elements of standing at the summary judgment stage of a proceeding, a plaintiff cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts which for purposes of the summary judgment motion will be taken to be true." *Libertad v. Welch*, 53 F.3d 428, 436 (1st Cir. 1995) (citing *Lujan*, 504 U.S. at 561); *accord Suárez-Torres v. Panaderia y Resposteria España, Inc.*, 988 F.3d 542, 550 (1st Cir. 2021)).

### C.    Discussion

As PRASA correctly asserts, Plaintiff bears the burden of establishing that she satisfies the three elements of standing: injury in fact, causation, and redressability. *See Nulankeyutmonen Nkihtaqmikon*, 503 F.3d at 26 (citing *Lujan*, 504 U.S. at 560-61). PRASA also correctly recites that "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Laidlaw*, 528 U.S. at 189.

In her amended complaint, Ms. Cebollero alleges several distinct injuries. First, she claims the sewage discharges "exposed her and her children to diseases, foul odors, and other health threats." *Am. Compl.* ¶ 15. She adds that "Plaintiff's property is injuriously affected by the PRASA raw sewage spills . . ., causing her property to be less enjoyable due to the foul odors." *Id.* ¶ 16. Next, Ms. Cebollero avers that she "is an arborist with an aesthetic or recreational interest in leisurely walking or using the creek and the Rio Piedras River" and that "the aesthetic and recreational values of the area will be lessened by the challenged activity of dumping raw sewage into the creek." *Id.* ¶ 17. She continues that she "would like to use the sidewalks free of raw sewage," *id.* ¶ 18, that she "is entitled to enjoy the Buena Vista Creek without the discharges and spills that degrade the quality of the waters of the river," *id.* ¶ 19, and that "she could not walk in or near the creek, and not even walk in her neighborhood, feeling that she was walking on the eggshells of deadly pathogens." *Id.* ¶ 20. Although she acknowledges that "[o]n July 29, 2020, Plaintiff had to relocate to New Jersey," she insists "her property continues to be injuriously affected." *Id.* ¶ 21.

PRASA argues "[a] mere legal interest in the affected area without demonstrated harm is insufficient" because it fails to establish "a concrete and particularized injury that is present, not speculative." *PRASA's Mot. in Lim.* at 3-4 (emphasis omitted). PRASA's arguments implicate the doctrines of prudential and constitutional standing, as well as the distinct concept of mootness. The Court addresses each in turn.

### 1. Standing

As the District of Puerto Rico previously explained, in the context of a different CWA citizen suit against PRASA no less:

> "Standing consists of both a constitutional aspect and a prudential aspect. The constitutional dimension derives from the requirement that federal courts can act only upon a justiciable case or controversy. U.S. CONST. art. III." *Dubois v. United States Dept. of Agriculture*, 102 F.3d 1273, 1280-1281 (1st Cir. 1996). If a plaintiff lacks the aforementioned constitutional standing to bring the matter before the court, the Court lacks subject matter jurisdiction to decide the merits of the case.
>
> . . . .
>
> The [prudential standing] doctrine has been described as follows:
>
>> "The general prohibition on a litigant's raising another person's legal rights, the rule barring the adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone interest protected by the law invoked."

*P.R. Campers' Ass'n v. P.R. Aqueduct & Sewer Auth.*, 219 F. Supp. 2d 201, 209, 213 (D.P.R. 2002) (for the latter, quoting *Devlin v. Scardelletti*, 536 U.S. 1, 7 (2002)).

### a. Prudential Standing

Beginning with prudential standing, the Court does not doubt that Ms. Cebollero's claim satisfies the statutory requirements to bring a CWA citizen suit

pursuant to 33 U.S.C. § 1365(a)(1). As an initial matter, the Court agrees with Ms. Cebollero that the statutory text of the CWA does not contemplate restricting citizen suits to only those able to prove local residence; to the contrary, the statute broadly defines "citizen" for the purposes of the citizen suit provision as "a person or persons having an interest which is or may be adversely affected." 33 U.S.C. § 1365(g). The question for this Court, then, is not whether Ms. Cebollero has proven her current residence in the allegedly affected area, but, rather, whether the record at the time of filing her complaint confirms Ms. Cebollero's personal interest which is or may be adversely affected, as is required for her to have a cause of action under the CWA.

Furthermore, the Supreme Court has ruled unequivocally that "[t]he [CWA] . . . authorizes private plaintiffs to sue to enforce its requirements." *Sackett v. EPA*, 598 U.S. 651, 661 (2023). As the First Circuit explained in its resolution of prior appeal in this case, "Congress enacted the CWA with the goal of 'restor[ing] and maintain[ing] the chemical, physical, and biological integrity of the Nation's waters," *Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 67 (1st Cir. 2021), and specifically allowed citizen suits for the "central purpose of permitting citizens to abate pollution when the government cannot or will not command compliance." *Id.* (quoting *Gwaltney*, 484 U.S. at 62). Here, Ms. Cebollero alleged that PRASA adversely affected her interests by causing "raw sewage coming from the point source . . . [to be] dumped in the creek that runs through her property's backyard." *Am. Compl.* ¶ 15. Her claim is thus specific to her and falls squarely within the zone of interests intended to be protected by 33 U.S.C. § 1365(a)(1).

### b.    Constitutional Standing

To establish constitutional standing, a plaintiff must establish (1) an injury in fact, (2) that is fairly traceable to the Defendant's allegedly unlawful actions, and (3) that it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision. *Nulankeyutmonen Nkihtaqmikon*, 503 F.3d at 26. Here, PRASA challenges Ms. Cebollero's standing on all three prongs.

### i.    Injury in Fact

Ms. Cebollero's amended complaint plainly alleges actual harms suffered from the sewage overflows at the time of bringing her case—to wit, that "raw sewage . . . is dumped in the creek that runs through her property's backyard . . . and expose[s] her and her children to diseases, foul odors, and other health threats," that her "property is injuriously affected by the PRASA raw sewage spills . . ., causing her property to be less enjoyable due to the foul odors," and that "she has used the affected area, walked in the creek, and is a person for whom the aesthetic and recreational values of the area will be lessened by the challenged activity of dumping raw sewage into the creek." *Am. Compl.* ¶¶ 15-20.

PRASA's arguments that Ms. Cebollero failed to adequately allege an injury in fact for the purposes of standing because the risk of future overflows is merely speculative is not supported by the caselaw on 33 U.S.C. § 1365(a)(1). PRASA's emphasis on current harm and citation to *Gwaltney of Smithfield v. Chesapeake Bay Foundation*, 484 U.S. 49, implicates the Supreme Court's discussion of the present tense language of the CWA citizen suit provision, which only permits suit from "'a

person . . . having an interest which is or may be adversely affected' by the defendant's violations of the Act." *See Gwaltney*, 484 U.S. at 59 (citing 33 U.S.C. § 1365(g)). While PRASA is correct that the *Gwaltney* Court found the CWA citizen suit provision only provides recourse for continuing violations, PRASA's argument fails to recognize the ultimate conclusion of the *Gwaltney* Court, which held that, for a court to dismiss a suit predicated on previous violations, "[t]he defendant must demonstrate that it is '*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Gwaltney*, 484 U.S. at 66 (quoting *United States v. Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203 (1968) (emphasis in original)).

Here, Ms. Cebollero presented evidence that the sewage overflows affected her interests as a resident of Villa Nevarez, and the evidence presented by PRASA does not make it "absolutely clear" that future overflows will not occur. *Id.* The Court thus concludes Ms. Cebollero established standing to bring her claim based on actual injury at the time of filing. *See Murthy v. Missouri*, 603 U.S. 43, 92 (2024) ("'real and immediate threat of repeated injury' that existed *at the time [the plaintiff] sued*") (emphasis supplied); *see also Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) (recognizing "the longstanding principle that 'the jurisdiction of the Court depends upon the state of things at the time of the action brought'") (quoting *Mullen v. Torrance*, 22 U.S. 537, 539 (1824)). Thus, in accordance with this well-established precedent, the Court concludes Ms. Cebollero had pleaded a cognizable injury in fact at the commencement of her suit for the purposes of standing.

### ii.    Causation

Relatedly, PRASA asserts that Ms. Cebollero's relocation undermines her ability to establish PRASA caused her injury, and further that her expert witness's report fails to prove a geographical relationship between the sewage overflows and Plaintiff's property. *PRASA's Mot. in Lim.* at 4. Ms. Cebollero contests this position, claiming that PRASA's failure to control the sewage system resulted in her asserted injuries. *Pl.'s Mot. in Lim. Opp'n* ¶ 9.

As above, the Court concludes Ms. Cebollero has the better argument. Ms. Cebollero's subsequent relocation does not change the fact that, at the time of filing, she had suffered injuries from the discharge of raw sewage to the street and Buena Vista Creek, which the complaint attributes to "three sewage manholes located in the vicinity of on the GPS coordinates of 18° 23' 56.22" N and 66° 4' 1.81"" and to "PRASA sewage manholes in the nearby *Centro Médico* area." *Am. Compl.* ¶ 13 (Plaintiff's emphasis). PRASA's control over the sewage system permits a reasonable inference that Ms. Cebollero's injuries may be fairly traced to PRASA's conduct.

Further, while PRASA complains that Ms. Cebollero's expert's report does not contain scientific evidence proving a geographic connection between the sewage discharges and her property, Ms. Siberón's report, in the portion attached by PRASA itself to its motion in limine, in fact analyzes the geographic relationship between the sewage overflows and Ms. Cebollero's property:

### IV.    Sanitary Sewer Overflows Location

Sanitary sewers in the 10th street at Villa Nevarez Development in San Juan, Puerto Rico. The three sewer manholes are located on the GPS coordinates of 18° 23' 56.22" N and 66° 4' 1.81" W, at

> the 10th Street of the Villa Nevarez community, which overflow
> with sewage onto the street and into the adjacent rainwater storm
> drain that collects the raw sewage and take[s it] directly into the
> Buena Vista Creek, a tributary of the Puerto Nuevo River.  The
> storm drain takes the sewage into the Buena Vista Creek at the
> GPS location of  56.04" N, 66° 4' 3" W.  Satellite photos of the area
> of concern [are] included in the <u>Appendix B</u>.

*Pro. Env't Eng'r Rep.* at 3 (emphasis and formatting in original).  On a challenge to standing brought at the summary judgment stage of a proceeding, the Court takes as true specific facts set forth by admissible evidence, such as an expert report.  *See Libertad*, 53 F.3d at 436.  The Court thus concludes Ms. Cebollero sufficiently demonstrated a factual basis for the Court to reasonably infer, at the summary judgment stage, that her injuries may be fairly traced to PRASA.

### iii.    Redressability

PRASA also argues Ms. Cebollero's alleged harms would not be redressed by a favorable decision, arguing that the 2015 Consent Decree between PRASA and EPA governs the resolution of the alleged violations.  *PRASA's Mot. in Lim.* at 5-6.  Ms. Cebollero responds that her requested relief seeks enforcement of the effluent limits set by the CWA and the Consent Decree, PRASA's violations of which have not been penalized as indicated under the terms of the 2015 Consent Decree; such enforcement, she alleges, would mitigate her injuries.  *Pl.'s Mot. in Lim. Opp'n* ¶ 10.

In a related case, the Court previously wrote on the effect of a consent decree:

> while a consent decree represents a step in the right direction, it is not
> a 'cure-all', for further action—in addition to the entry of the consent
> decree—is required such that said document comes to life and serves its
> purpose, in this case: to implement corrective actions to right PRASA's
> failure to abide by the CWA.

*Reyes-Muñoz v. P.R. Aqueduct & Sewer Auth.*, No. 19-2131 (SCC), 2021 U.S. Dist. LEXIS 157930, at *11 (D.P.R. Aug. 19, 2021) (citing *Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 74-75 (1st Cir. 2021)).

Considering redressability in the context of CWA citizen suits, other federal courts have recognized the deterrent value of injunctive relief and the imposition of civil penalties on future violations. *See, e.g.*, *Laidlaw*, 528 U.S. at 185 ("We have recognized on numerous occasions that 'all civil penalties have some deterrent effect.' More specifically, Congress has found that civil penalties in [CWA] cases do more than promote immediate compliance by limiting the defendant's economic incentive to delay its attainment of permit limits; they also deter future violations") (internal citations omitted). Courts have granted the remedy of civil penalties as redressing potential for injury even when the polluter had constructed a facility to mitigate the unlawful discharges. *Work v. Tyson Foods, Inc.*, 720 F. Supp. 132 (W.D. Ark. 1989), *aff'd in relevant part* 921 F.2d 1394 (8th Cir. 1990).

Here, Ms. Cebollero alleges that PRASA has "offered no evidence that EPA was diligently prosecuting any action addressing the specific violations raised in the 60 day letter and is therefore not diligently prosecuting any action against PRASA with respect to the specific discharges raised in this complaint." *Am. Compl.* ¶ 29. PRASA argues that Ms. Cebollero's requested relief would be duplicative with the terms of the 2015 Consent Decree. *PRASA's Mot. in Lim.* at 5-6.

The record confirms that Ms. Cebollero notified EPA of the violations sixty days prior to filing her lawsuit as required by 33 U.S.C. § 1365. DSMF ¶ 13; PRDSMF

¶ 13.  EPA did not exercise its primary enforcement jurisdiction by opening an investigation to address these violations; instead, they responded that the citizen suit was precluded by the 2015 Consent Decree.  DSMF ¶ 14; PRDSMF ¶ 14.  However, Ms. Cebollero presents evidence that, despite being notified of the SSOs, PRASA failed to take actions sufficient to stop the sewage overflows in Villa Nevarez or ameliorate her alleged harms.  *See, e.g.*, PSAMF ¶ M (citing *Pl.'s Siberón Translated Dep. Tr.* at 111 (""Q. What is the specific defect in the sewer system you were able to confirm as unresolved, which has remained so for decades?  A. Sanitary sewage management has not been eliminated . . .. this has been ongoing throughout the years it has not been stopped; it has not been resolved. If you look, there is proof from 2019, [] and then you see it has not been resolved")).  Based on the well-recognized deterrent effect of civil penalties on future violations and Ms. Cebollero's allegations that EPA has not penalized PRASA for the events underlying this dispute, the Court reasonably infers that Ms. Cebollero's requested relief is not redundant to EPA action and would serve to mitigate the risk of future violations and in so doing, ameliorate her alleged harms.

Finally, PRASA's contention that civil penalties would constitute a windfall to Plaintiff, *PRASA's Mot. in Lim.* at 5-6, misunderstands the applicable law.  As the District Court of Puerto Rico has previously written, "[i]f a private citizen who commences a civil action against an entity alleged to be in violation of an NPDES permit in fact prevails in such an action, 'the court may order injunctive relief and/or impose civil penalties payable to the United States Treasury. § 1365(a).'"  *P.R.*

*Campers' Ass'n*, 219 F. Supp. 2d at 211 (quoting *Gwaltney*, 484 U.S. at 53).  Thus, any civil penalties would be paid to the United States, not Ms. Cebollero herself.  Based on the foregoing, the Court concludes that Ms. Cebollero satisfied her burden of demonstrating, at the time of filing her complaint, that her requested relief would redress the injuries alleged in her complaint.

Having determined Ms. Cebollero had standing at the commencement of her suit, the Court turns to consider whether her claim pursuant to the CWA was rendered moot by her relocation to New Jersey.

### 2.    Mootness

In its motion in compliance, PRASA reframes its challenge to Plaintiff's personal interest in this case as one of mootness based on Ms. Cebollero's subsequent relocation to New Jersey in July of 2020.  *See, e.g.*, *PRASA's Compliance Mot.* at 7. The Supreme Court has explained that the requisite personal interest for federal jurisdiction "must continue throughout [the case's] existence."  *Laidlaw*, 528 U.S. at 189.

To this Court's knowledge, the First Circuit has not confronted whether relocation during the pendency of a lawsuit renders a claim moot; however, other federal courts which have reached the question have concluded a plaintiff's relocation may affect their ability to maintain a claim.  *Cf. Brown v. D.C. Hous. Auth.*, Civil Action No. 16-1771 (ABJ), 2017 U.S. Dist. LEXIS 82593, at *6 (D.D.C. May 31, 2017) (concluding "[the plaintiff's] relocation to New York renders this suit moot because plaintiff is no longer a tenant in public housing for which DCHA is responsible"); *D.C.*

*v. Oakdale Joint Unified Sch. Dist.*, No. 1:11-cv-01112-AWI-DLB, 2012 U.S. Dist. LEXIS 9283, at *21 (E.D. Cal. Jan. 25, 2012) ("The *actual* act that mooted the controversy – Plaintiffs' relocation to another district – was committed by Plaintiffs, not Defendants.  Therefore, Plaintiffs must show the act of relocating was somehow induced by Defendants.  That was not done here.  Thus, insofar as the Court is concerned, Plaintiffs left OJUSD of their own volition; mootness was not forced upon them by the actions of Defendants.  Accordingly, the Court finds Plaintiffs have not shown a present case or controversy under the second cause of action, and the second cause of action shall be dismissed as moot").

The question of mootness based on relocation is particularly relevant here, where the statute is designed to provide recourse for prospective violations only to "'a person . . . having an interest which is or may be adversely affected' by the defendant's violations of the Act." *See Gwaltney*, 484 U.S. at 59 (citing 33 U.S.C. § 1365(g)).  The Court thus considers Ms. Cebollero's alleged injuries to determine whether her asserted interests have been undermined by her subsequent relocation.

The first legal injury asserted in the amended complaint is that the alleged sewage discharges "exposed her and her children to diseases, foul odors, and other health threats." *Am. Compl.* ¶ 15.  This injury necessarily relies on her, and her children's, presence in Villa Nevarez; by virtue of her family's relocation to New Jersey, Ms. Cebollero and her children are no longer threatened with exposure to diseases or foul odors as a result of any prospective sewage overflows.  Considering claims of geographically-distant harms in *Lujan*, the Supreme Court noted that

57

"[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lujan*, 504 U.S. at 564 (quoting *Lyons*, 461 U.S. at 102).  Ms. Cebollero has neither argued nor presented any evidence to support a conclusion that she or her children remain exposed following their relocation to New Jersey, or that they continue to suffer adverse health effects from their prior exposure.

The *Lujan* Court continued in dicta that even a professed intent to return to an affected area, sworn by affidavit, "is simply not enough" for a finding of justiciable injury, explaining that "[s]uch 'some day' intentions -- without any description of concrete plans, or indeed even any specification of *when* the some day will be -- do not support a finding of the 'actual or imminent' injury that our cases require."  *Id.* (emphasis in original).  Notably, despite discussion of this issue at the February 21, 2025 oral argument, the record in this case lacks any argument or evidence, through affidavit or otherwise, that Ms. Cebollero intends to return to the Villa Nevarez property some day, let alone at a specific day, in the future.  Without any basis to conclude this claim of injury remains ongoing or imminent, the Court thus concludes that Ms. Cebollero's alleged injury of exposure to "diseases, foul odors, and other health threats" has been mooted by her subsequent relocation.

Next, Plaintiff alleges her "property is injuriously affected by the PRASA raw sewage spills . . ., causing her property to be less enjoyable due to the foul odors." *Am. Compl.* ¶ 16.  This claim, added in Ms. Cebollero's amended complaint, warrants a brief recitation of the context and events giving rise to the amendment.  At oral

argument, the Court noted Ms. Cebollero only alleged "Plaintiff's property is injuriously affected" within the state law nuisance claim of her original complaint, *Compl.* ¶ 30, and, further, compared this language to that of the *Reyes-Muñoz* complaint, in which the plaintiffs, represented by the same counsel as Ms. Cebollero, assert in no unclear terms that "[a]s a result of the sewage discharges described in this complaint and in Plaintiffs' Notice, the Plaintiffs have suffered an injury in fact, namely, loss of value of their property where the sewage spills occur." *Compl.*, No. 3:19-cv-01412-JAW (ECF No. 1).

Based on the apparently deficient allegation in Ms. Cebollero's complaint, the Court asked Plaintiff's counsel to clarify, for the purposes of determining standing, whether Ms. Cebollero alleges property value diminution as an injury relevant to her CWA citizen suit claim. Ms. Cebollero sought leave to amend her complaint to address this issue, *Pl.'s Mot. to Amend*, and purported to do so by filing an amended complaint; in her amended complaint, Plaintiff added the allegation that "her property is injuriously affected by the PRASA raw sewage spills" to the injuries claimed under the CWA cause of action and adding further language clarifying that the injurious effect is to "caus[e] her property to be less enjoyable due to the foul odors." *Am. Compl.* ¶ 16.

The Court notes that Ms. Cebollero's response to PRASA's motion in compliance references "property devaluation" in the context of economic harm twice. *See Pl.'s Compliance Resp.* at 4 ("Courts have recognized economic harm and property devaluation caused by pollution as ongoing injuries that satisfy this requirement")

(citing *Babbitt*, 442 U.S. 289); *id.* at 7 ("a court order compelling PRASA to comply with the Clean Water Act would reduce ongoing environmental harm, preventing further property devaluation"). However, the amended complaint at no point asserts the theory of economic harm via property devaluation in clear terms, only that Ms. Cebollero's "property is injuriously affected by the PRASA raw sewage spills . . ., causing her property to be less enjoyable due to the foul odors." *Am. Compl.* ¶ 16.

Plaintiff's failure to plainly allege property value diminution in her amended complaint, despite explicit discussion of the issue at oral argument and the Court granting permission to amend the complaint, suggests one of two conclusions. First, Ms. Cebollero may have concluded that she could not ethically assert the injury of diminished property value because such an allegation would not be justified by the facts. Second, if Ms. Cebollero could have made the same assertion made by the *Reyes* plaintiffs but nonetheless chose not to do so, Plaintiff may be using her claim as a test case to challenge whether the unique circumstances here—where a plaintiff suffered loss of enjoyment but, subsequent to filing her claim, voluntarily relocated for unrelated reasons—can state a viable claim. Whatever Ms. Cebollero's reasoning, her failure to plainly assert diminution of property value as her injury is fatal to her claim under current law.

The First Circuit has consistently held that, on summary judgment, courts are constrained to consider legal theories that have been adequately pleaded. In *Martinez v. Petrenko*, 792 F.3d 173 (1st Cir. 2015), the First Circuit considered a litigant's presentation of a novel theory for the first time in response to a motion for

summary judgment and concluded that "nothing in [*Bacou Dalloz USA, Inc. v. Continental Polymers, Inc.*, 344 F.3d 22 (1st Cir. 2003)], though, suggests that a district court need look for facts in support of a theory that was not even pleaded. Such a rule would effectively require all litigants to engage in discovery based not on what was pleaded but also on what might have been pleaded. We reject such a requirement." *Martinez*, 792 F.3d at 180; *see also Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) ("It simply will not do for a plaintiff to fail to plead with adequate specificity facts to support a . . . claim, all-the-while hoping to play that card if her initial hand is a dud"); *accord Calvi v. Knox Cnty.*, 470 F.3d 422, 431 (1st Cir. 2006) (a plaintiff is "not entitled to raise new and unadvertised theories of liability for the first time in opposition to a motion for summary judgment"); *see also Segrain v. Duffy*, 118 F.4th 45, 71 (1st Cir. 2024) ("[I]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones") (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)). Ms. Cebollero has not plainly asserted economic harm as her injury in this case, nor has she presented any evidence from which the Court could conclude the economic value of the Villa Nevarez property has declined as a result of PRASA's alleged SSOs.

Based on the plain language of the amended complaint, the Court understands Ms. Cebollero's alleged injury to be not an economic injury to her ownership interest, but the loss of enjoyment of the Villa Nevarez property based on the odors associated with the sewage overflows. Similar to the exposure to odors and health threats

described above, loss of enjoyment based on odor is an injury derived from her physical presence at the Villa Nevarez property. Ms. Cebollero does not dispute that she has moved from Villa Nevarez nearly five years ago, DSMF ¶ 22; PRDSMF ¶ 22, and has presented no evidence to support the conclusion that she continues to use or enjoy the Villa Nevarez property subsequent to her relocation. The Court thus concludes her allegation of injury through lost enjoyment of the property has been mooted by her relocation to New Jersey.

The Court reaches the same conclusion regarding Ms. Cebollero's asserted injury to her "aesthetic or recreational interest in leisurely walking or using the creek and the Rio Piedras River," *Am. Compl.* ¶ 17, which similarly requires her physical presence in Villa Nevarez. For the reasons already explained, a personal interest tied to her physical presence in Villa Nevarez was severed by her relocation to New Jersey. Put differently, no evidence in the record supports the conclusion that Ms. Cebollero's "aesthetic or recreational interest" now exists given the hundreds of miles and ocean between her and the affected area. The same can be said of her asserted right "to use the sidewalks free of raw sewage." *Id.* ¶ 18. The record contains no evidence indicating she has done so in the approximately five years since her relocation to New Jersey in July of 2020, or that the threat of future sewage discharges is the impediment actually preventing her from doing so. Similar to the Eastern District of California Court's analysis in *D.C. v. Oakdale Joint Unified School District*, "[t]he *actual* act that mooted the controversy, Plaintiff['s] relocation to another district – was committed by Plaintiffs, not Defendants." *Oakdale Joint Unified Sch. Dist.*, 2012

U.S. Dist. LEXIS 9283, at *21.  The Court thus reaches the same conclusion that "Plaintiff[] ha[s] not shown a present case or controversy."  *Id.*

In sum, the Court concludes that, despite having standing to bring her claim at the time she filed her complaint, Ms. Cebollero's asserted injuries on her CWA citizen suit claim no longer present a live dispute based on her subsequent relocation and, as such, dismisses this claim for lack of jurisdiction based on mootness.  Based on this conclusion, the Court need not consider whether Ms. Cebollero has established her alleged injuries are fairly traceable to PRASA or would be redressed by her requested relief.

To be clear, the Court does not mean to suggest that a plaintiff must be a current resident of an affected area to bring a CWA citizen suit.  The Court's holding is particular to the facts of Ms. Cebollero's case, where her theories of legal injury are inherently connected to her presence in an area from which she has subsequently voluntarily relocated for unrelated reasons, and without any evidence in the record to support the conclusion she imminently intends to return, Plaintiff lacks a continuing personal interest affected by the allegedly continuing CWA violations.  As the Supreme Court explained in *Laidlaw*:

> Standing doctrine functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake.  In contrast, by the time mootness is an issue, the case has been brought and litigated, often (as here) for years.  To abandon the case at an advanced stage may prove more wasteful than frugal.  This argument from sunk costs does not license courts to retain jurisdiction over cases in which one or both of the parties plainly lacks a continuing interest[.]

*Laidlaw*, 528 U.S. at 191-92. "'Federal courts are courts of limited jurisdiction.' Thus, jurisdictional boundaries must be scrupulously observed." *Calvary Chapel of Bangor v. Mills*, 984 F.3d 21, 30 (1st Cir. 2020) (quoting *Rhode Island v. EPA*, 378 F.3d 19, 22 (1st Cir. 2004)).  In the absence of a continuing interest, the Court is compelled to follow the Supreme Court's directive and to dismiss Ms. Cebollero's CWA citizen suit.

## V.    MOTION FOR SUMMARY JUDGMENT

Based on the foregoing, the Court does not reach the merits of PRASA's motion for summary judgment on Ms. Cebollero's CWA citizen suit, as this claim has been determined to have been mooted by her subsequent relocation to New Jersey.

However, the Court must address the related claims brought pursuant to state law.  PRASA does not contemplate the state law claims explicitly in its motion for summary judgment or motion in limine; however, it nonetheless requests the Court "order[] the dismissal of the complaint in its entirety." *PRASA's Second Summ. J. Mot.* at 24; *see also PRASA's Mot. in Lim.* at 2 (arguing Ms. Cebollero's "inability to establish the requisite injury-in-fact for Standing under the Clean Water Act's citizen suit provision," but later asking the Court "to find that the Plaintiff lacks Standing to pursue this action and order the dismissal of the complaint") (PRASA's capitalization).

"As a general principle, the unfavorable disposition of a Plaintiff's federal claim at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state law claims." *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995); *accord United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) ("Certainly, if the federal claims are

64

dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well"). In this case, a trial date has not been set and, though extensively litigated, the dispute has thus far centered on the legal defense of the diligent prosecution bar to Ms. Cebollero's CWA citizen suit rather than the facts of Ms. Cebollero's alleged injuries. The Court thus dismisses without prejudice Ms. Cebollero's state law claims. *Accord Surcco v. Prasa*, 157 F. Supp. 2d 160, 170 (D.P.R. 2001) (granting the defendant's motion to dismiss a CWA citizen suit based on the diligent prosecution bar and then dismissing without prejudice state law claims for lack of supplemental jurisdiction).

## VI.   CONCLUSION

The Court GRANTS Puerto Rico Aqueduct & Sewer Authority Motion in Limine to Exclude Evidence and Arguments Relating to Plaintiff's Lack of Standing (ECF No. 156) in *Cebollero-Bertrán v. Puerto Rico Aqueduct & Sewer Authority*, No. 3:19-cv-01412-JAW and thus ORDERS the Clerk of Court to enter judgment in favor of PRASA and against Natalia Cebollero-Bertrán.

The Court further DISMISSES without prejudice Puerto Rico Aqueduct & Sewer Authority Motion for Summary Judgment (ECF No. 118) in *Cebollero-Bertrán v. Puerto Rico Aqueduct & Sewer Authority*, No. 3:19-cv-01412-JAW, as moot.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 30th day of July, 2025